**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO, *et al.*,

        *Plaintiffs*,

        *vs.*

SOCIAL SECURITY ADMINISTRATION,
*et al.*,

        *Defendants*.

Civil Action No. 1:25-cv-00596

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND/OR 5 U.S.C. § 705 STAY**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

    I.    SSA and its Collection of Personal Data. ........................................................ 3

    II.   DOGE and its Campaign Against Federal Agencies. ....................................... 5

    III.  DOGE's Takeover of SSA. .............................................................................. 7

    IV.  Effects on Plaintiffs' Members. ...................................................................... 10

PROCEDURAL BACKGROUND ...................................................................................... 12

ARGUMENT .................................................................................................................... 13

    I.    Plaintiffs Are Likely to Succeed on the Merits. ............................................ 14

        A. Defendants' actions violate the Privacy Act. ........................................ 14

        B. Defendants' actions violate the Social Security Act, Tax Reform Act of 1976, and applicable regulations ............................................................... 16

        C. Defendants' actions are arbitrary and capricious. ................................. 18

        D. DOGE is acting ultra vires. ................................................................... 20

    II.   Plaintiffs Are Suffering Immediate, Irreparable Harm. ................................. 21

        A. Plaintiffs' members are irreparably harmed by DOGE's ongoing, illegal access to their sensitive information. ................................................................. 21

        B. Plaintiffs' members are irreparably harmed by the now-increased risk that their information is more easily accessible by bad actors. ......................................... 23

    III.  The Balance of Equities and Public Interest Both Favor an Injunction. ...................... 25

RELIEF REQUESTED ...................................................................................................... 25

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. et al. v. Dep't of Lab. et al.*, No. CV 25-0339 (D.D.C. Feb. 12, 2025) ............................................................................7

*Am. Fed'n of Tchrs. v. Bessent*, No. CV DLB-25-0430, 2025 WL 582063 (D. Md. Feb. 24, 2025) …………………………………………………………….. 14, 16, 22

*Armstrong v. Exec. Off. of the Pres.*, 90 F.3d 553 (D.C. Cir. 1996). ...............................................20

*Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020).....................................13, 20

*Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184 (4th Cir. 2013)……………………………25

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ...........................19, 20

*Doe v. Chao*, 540 U.S. 614 (2004) .....................................................................................15

*Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988) .............................................................15

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) .................................................18

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)...........................................18

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) .......................................................23

*Havemann v. Astrue*, No. CIV. ELH-10-1498, 2012 WL 4378143 (D. Md. Sept. 24, 2012) ................................................................................................................17, 23

*Havemann v. Colvin*, 537 F. App'x 142 (4th Cir. 2013) .................................................17, 23

*HIAS, Inc. v. Trump*, 415 F. Supp. 3d 669 (D. Md. 2020)..............................................25

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) .................................13

*In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517 (4th Cir. 2003) .............................13

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019).................23

*Jimenez-Cedillo v. Sessions*, 885 F.3d 292 (4th Cir. 2018).............................................18

*Judicial Watch, Inc. v. Soc. Sec. Admin.*, 701 F.3d 379 (D.C. Cir. 2012) .....................................16

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330 (4th Cir. 2021).......................25

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).....18, 19

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197 (4th Cir. 2019) ................................................................................21

*Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157 (2004) ...................................17

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-CV-333, 2025 WL 573764 (D. Md. Feb. 21, 2025) ................................................................................27

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 597959 (D.D.C. Feb. 25, 2025) ................................................................................27

*New York v. Trump*, No. 25 CIV. 1144, 2025 WL 435411 (S.D.N.Y. Feb. 8, 2025) ...................24

*New York v. Trump*, No. 25-cv-01144, 2025 WL 573771 (S.D.N.Y., Feb. 21, 2025) .............14, 23

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................................25

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ................................................................27

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................................25

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ................................................................................25

*Sierra Club v. Dep't of Interior*, 889 F.3d 260 (4th Cir. 2018) ................................................................................19

*U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275 (4th Cir. 2006) ................................................................................

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) ...........13

*United States v. Lawson*, No. 23-4137, 2025 WL 422397 (4th Cir. Feb. 7, 2025) ........................24

*United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013) ................................................................................13

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ................................................................................13

**Constitutional Provisions**

U.S. Const. Art. II, § 2, cl.2 ................................................................................ 12

**Statutes**

44 U.S.C. § 2201 ................................................................................ 20

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ................................................................................ *passim*

Federal Information Security Modernization Act of 2014, 44 U.S.C. § 3551 *et seq.* ................... 12

Privacy Act, 5 U.S.C. § 552a ................................................................................. 12, 15

Social Security Act, 42 U.S.C. § 1306 ................................................................... 12,

Tax Reform Act, 26 U.S.C. § 6103 ............................................................. 12, 16, 17

Tax Reform Act, 26 U.S.C. § 7213A .......................................................................... 12

Privacy Act, Pub. L. No 93-579, 88 Stat. 1896 (1974) ……………………………………………23

Social Security Act, Pub. L. No. 74-271, 49 Stat. 620 (1935) ……………………………………1

## Rules

20 C.F.R. § 401.140 ...............................................................................................17

20 C.F.R. § 401.25 .................................................................................................15

71 Fed. Reg. 1810 (Jan. 11, 2006) ......................................................................... 4

71 Fed. Reg. 1826 (Jan. 11, 2006) ...................................................................... 4, 5

71 Fed. Reg. 1830 (Jan. 11, 2006 ........................................................................... 5

72 Fed. Reg. 69723 (Dec. 10, 2007) ....................................................................... 5

78 Fed. Reg. 40542 (July 5, 2013).............................................................................

83 Fed. Reg. 31250 (July 3, 2018)..............................................................................

83 Fed. Reg. 31251 (July 3, 2018)..............................................................................

83 Fed. Reg. 54969 (Nov. 1, 2018).......................................................................... 5

89 Fed. Reg. 14554 (Feb. 27, 2024) ..........................................................................

89 Fed. Reg. 825 (Jan 5, 2024) ...................................................................................

Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025)……………………………………… 5, 20

Off. of Mgmt. & Bdgt., Exec. Off. of Pres., Guidelines, 40 Fed. Reg. 28948, 28953 (July 9, 1975…………………………………………………………………………………………………...15

## Other Authorities

Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payment System*, N.Y. Times (Feb. 1, 2025), https://perma.cc/YGR9-2J65.................................................6

Charlie Warzel et al., *DOGE has 'God Mode' Access to Government Data*, The Atlantic (Feb. 19, 2025), https://perma.cc/2RH3-CYXK ...............................................................

Chelsea Cirruzzo  Kelly Hooper, *How HHS gets DOGE'd*, Politico (Feb. 10, 2025), https://perma.cc/N772-EKFF.......................................................................................7

Clare Duffy, *Why those reports of DOGE using AI have experts worried about 'massive risk'*, CNN (Mar. 4, 2025), https://perma.cc/29VX-EGZ2 ...............................................

Cong.  Off., *Social Security*, https://perma.cc/D29K-YSFF (last visited Mar. 7, 2025).....3

Dan Diamond et al., *DOGE broadens sweep of federal agencies, gains access to health payment systems*, Wash. Post (Feb. 5, 2025), https://perma.cc/398V-QY7Y ............................7

Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://perma.cc/69SF-YJTL.................................................................................................5

Elon Musk (@elonmusk), X (Feb. 11, 2025, 1:23 AM ET), https://perma.cc/R6YD-5KY9 ...........

Emily Davies & Faiz Siddiqui, *GSA engineering lead resigns over DOGE ally's request for access,* Wash. Post (Feb. 18, 2025), https://perma.cc/E2X9-3VST ........................................

Eric Katz, *DOGE enters NOAA, accesses IT systems and removes the top HR official*, Gov't Exec. (Feb. 5, 2025), https://perma.cc/5DFK-NUTU ......................................................

E-Verify, *Social Security Administration Resumes E-Verify Operations,* https://perma.cc/G7YS-7BL9 (last visited Mar. 7, 2025)……………………………………..3

*Full Transcript of President Trump's Speech to Congress,* N.Y. Times (March 4, 2025), https://perma.cc/AT4N-WRDY ....................................................................................6

Jason Leopold, *DOGE-Backed Halt at CFPB Comes Amid Musk's Plans for 'X' Digital Wallet*, Bloomberg Law (Feb. 10, 2025), https://perma.cc/9356-2UFN......................................

Jeff Stein et al., *Musk's DOGE seeks access to personal taxpayer data, raising alarm at IRS*, Wash. Post (Feb. 9, 2025), https://perma.cc/GJ38-S2M2 ......................................................6

Jennifer Bendery, *Elon Musk's DOGE Posts Classified Data On Its New Website*, HuffPost (Feb 14, 2025), https://perma.cc/9KSL-KLUT .........................................................7

Jesse Coburn, *DOGE Gains Access to Confidential Records on Housing Discrimination, Medical Details — Even Domestic Violence*, ProPublica (Feb 26, 2025), https://perma.cc/E33L-2ACL.................................................................................................7

Kaitlan Collins & Tierney Sneed, *White House reveals who DOGE acting administrator is*, CNN Politics (Feb. 25, 2025), https://perma.cc/F8VY-TEPF.................................................6

Kate Sullivan & Tami Luhby, *Trump suggests he's open to cuts to Medicare and Social Security after attacking primary rivals over the issue*, CNN (Mar. 11, 2024), https://perma.cc/83AG-2QZ3 ........................................................................

Katelyn Polantz et al., *How an arcane Treasury Department office became ground zero in the war over federal spending*, CNN (Feb. 1, 2025), https://perma.cc/U5VF-RWE7................6

Laura Meckler et al., *Trump Preps Order to Dismantle Education Dept. as DOGE Probes Data*, Wash. Post (Feb. 3, 2025), https://perma.cc/PP8N-NCD7 ...............................................7

Lisa Rein et al., *DOGE is driving Social Security cuts and will make mistakes, acting head says privately*, Wash. Post (Mar. 6, 2025), https://perma.cc/FYY3-QGRR.....................12

Lisa Rein et al., *Top Social Security official exits after clash with Musk's DOGE over data*, Wash. Post (Feb. 17, 2025), https://perma.cc/4R9L-BM9T ..................................................

Makena Kelly, *DOGE Is Now Inside the Consumer Financial Protection Bureau*, Wired (Feb. 7, 2025), https://perma.cc/9YP7-EA57 ....................................................................

Marisa Kabas, *The Curious Case of Leland Dudek*, The Handbasket (Feb. 20, 2025), https://perma.cc/D2UN-QMYE................................................................................

Michael Sainato, *Doge staffers enter NOAA headquarters and incite reports of cuts and threats*, The Guardian (Feb. 4, 2025), https://perma.cc/W4WP-MHRV ......................................

Soc. Sec. Admin., *Fact Sheet*, https://perma.cc/595S-B36F (last visited Mar. 7, 2025)............3

Soc. Sec. Admin, *Form SSA-1 | Information You Need To Apply For Retirement Benefits or Medicare*, https://perma.cc/CPH7-Y97F (last visited Mar. 7, 2025)..............................4

Soc. Sec. Admin., *Help America Vote Verification (HAVV) Transactions by State*, https://perma.cc/99ZK-AL3F (last visited Mar. 7, 2025) ………………………...…………3

Soc. Sec. Admin., *Medical Evidence* (July 29, 2022), https://perma.cc/D5EY-GHE8

Soc. Sec. Admin., *Medicare*, https://perma.cc/X7DL-FT5X (last visited Mar. 7, 2025)............3

Soc. Sec. Admin., *SSA-1-BK, Application for Retirement Insurance Benefits*, https://perma.cc/Y85T-GFLC, (last visited Mar. 7, 2025)……………………………………..4

Soc. Sec. Admin., *SSA-16, Application for Disability Insurance Benefits*, https://perma.cc/93GV-C5K6 (last visited Mar. 7, 2025)……………………………….. 4

Soc. Sec. Admin., *Social Security Programs in the United States*, https://perma.cc/KAL3-GL9C (last visited Mar. 7, 2025) ......................................................................3

Soc. Sec. Admin., *Understanding Supplemental Security Income (SSI) and Eligibility for Other Government and state Programs*, https://perma.cc/33CT-GJZL (last visited Mar. 7, 2025).....3

Soc. Sec. Admin., Press Release, *Social Security and OIG Partner for National Slam the Scam Day* (Mar. 6, 2025), https://perma.cc/YH3F-8YLE ............................................................

Soc. Sec. Admin., Priv. Program, *SSA's Commitment to Protecting Privacy through Compliance*, https://perma.cc/RU63-89MC (last visited Feb. 21, 2025). ...................................4

Vittoria Elliott et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, Wired (Feb. 4, 2025), https://perma.cc/6U6Z-3CK4 ........................6

Will Steakin et al., *DOGE Data Release Criticized By Intel Community; Trump Admin Says It's Public Data*, ABC News (Feb. 16, 2025), https://perma.cc/HZ72-W9M8 ..................7

## INTRODUCTION

For almost 90 years, the Social Security Administration ("SSA") has worked "for the general welfare" of this country.[1] SSA, charged with administering many of the largest federal benefits programs and supporting those of other agencies, relies on the public to provide sensitive, personally identifying information like physical addresses, dates of birth, and detailed financial, medical, and employment information. As a result, SSA systems contain the sensitive data of hundreds of millions of people, whether they received a Social Security number at birth (as most Americans do), are employed, hold a driver's license, hold money in a bank account, or receive benefits from government programs.  In the words of one of Plaintiff's member, "SSA knows basically everything about us." Ex. G, Somo Decl., at PLFS-034 ¶ 7.

Plaintiffs' members and the general public—including senior citizens, children who have lost parents, and people with disabilities—submit this data to SSA knowing that, were the information to fall into the wrong hands, it could be used to perpetrate financial fraud (including identity theft) or to target individuals, including government critics. They do so anyway because they expect SSA and the federal government to use their information only for the purposes for which it was collected. SSA has earned that confidence through its longstanding commitment to data privacy and strict compliance with federal laws limiting who can access such information—including and especially within the government—and in what circumstances they can do so. Congress enacted several of those laws in response to the Nixon administration's abuse of private, personally identifiable information held by the government—representing an effort to repair that breach of the public trust and a renewed commitment by government agencies and departments to safeguard the sensitive data they store.

---

[1] Social Security Act, Pub. L. No. 74-271, 49 Stat. 620 (1935).

No longer. As soon as he took office, President Trump created a Department of Government Efficiency comprised of the new U.S. DOGE Service and U.S. DOGE Service Temporary Organization (collectively, "DOGE"). DOGE, a White House entity led by tech billionaire Elon Musk, now runs roughshod over agencies across the Executive Branch. It seeks, seizes, and misuses the personal data of hundreds of millions of Americans, doing so without regard for the myriad laws passed by Congress to protect against exactly this type of abuse.

DOGE's playbook is well established. First, a handful of DOGE personnel enter the agency. They immediately demand, and are eventually granted, near-total access to a wealth of sensitive information systems. They then enter those complex systems, operating without oversight and proceeding without regard for privacy protocols, agency-specific intricacies, or applicable legal requirements.

DOGE has now arrived at SSA, where—with assistance from the agency's new leadership—it demanded immediate carte blanche access to SSA's hypersensitive and delicate information systems, pushed out anyone who stood in its way, and secured extensive access to the private data of millions. Plaintiffs and their nearly eight million members are paying the price.

Such unfettered access to sensitive data by a White House entity is unprecedented and illegal. Both DOGE's seizure of SSA information systems and the agency's enabling of that seizure violate myriad laws, including the Privacy Act, the Social Security Act, and the Tax Reform Act of 1976. Defendants' actions are also arbitrary and capricious. And DOGE, in purporting to direct those actions, is acting *ultra vires*.

Plaintiffs are unions and organizations representing senior citizens and everyday Americans who have worked and paid into Social Security throughout their lives. Now in retirement, Plaintiffs' members depend on Social Security and other government benefits to

survive. To receive these benefits, Plaintiffs' members provide highly sensitive personal information to SSA.

DOGE's unauthorized access to this data invades the privacy of millions of Plaintiffs' members and drastically heightens the risk that their data will be exposed to outside scammers or otherwise misused. Given the grave harms Defendants continue to inflict on Plaintiffs and their members, this Court should provide immediate relief until it can consider the full merits here.

## FACTUAL BACKGROUND

### I.    <u>SSA and its Collection of Personal Data.</u>

SSA is the nation's largest benefit-paying agency and oversees essential programs, including Old-Age, Survivors, and Disability Insurance ("OASDI" or "Social Security") and Supplemental Security Income ("SSI").[2] SSA also helps administer programs run by other agencies, including Medicare, Medicaid, SNAP, eVerify, and the Help America Vote Act.[3]  The agency distributes over $1.5 trillion each year to its beneficiaries, most of whom are retired senior citizens, but many have a qualifying disability or are the spouse, former spouse, or child of someone qualified for SSA benefits.[4]

To effectuate its own and other agencies' programs, SSA collects and stores among the most sensitive information a person may have. Along with names, birth dates, driver's license

---

[2] *See* Cong. Bdgt.Off., *Social Security*, https://perma.cc/D29K-YSFF (last visited Mar. 7, 2025); Soc. Sec. Admin., *Social Security Programs in the United States*, https://perma.cc/KAL3-GL9C (last visited Mar. 7, 2025).
[3] Soc. Sec. Admin., *Medicare*, https://perma.cc/X7DL-FT5X (last visited Mar. 7, 2025); Soc. Sec. Admin., *Understanding Supplemental Security Income (SSI) and Eligibility for Other Government and state Programs*, https://perma.cc/33CT-GJZL (last visited Mar. 7, 2025); E-Verify, *Social Security Administration Resumes E-Verify Operations*, https://perma.cc/G7YS-7BL9 (last visited Mar. 7, 2025); Soc. Sec. Admin, *Help America Vote Verification (HAVV) Transactions by State*, https://perma.cc/99ZK-AL3F (last visited Mar. 7, 2025).
[4] Soc. Sec. Admin., *Fact Sheet*, https://perma.cc/595S-B36F (last visited Mar. 7, 2025).

numbers, and addresses—already sensitive information that, when combined, is often used by malicious actors to commit serious fraud—that information includes Social Security numbers ("SSNs"); bank accounts, credit cards, and other financial data; employment and wage histories; citizenship, immigration, and naturalization records; and healthcare records documenting things like hospitalizations, addiction treatment, medical diagnoses, and disabilities.[5]

Both SSA and Congress understand the importance of keeping this information confidential. The first regulation SSA published, in 1937, included a "commitment to the public to safeguard the personal information [people] entrust" to SSA.[6] The agency's website advertises that SSA maintains "the highest level of privacy protections possible."[7] And SSA is bound by laws—including the Privacy Act of 1974, the Social Security Act, and the Internal Revenue Code—that restrict the use and disclosure of data held by SSA. In particular, the Privacy Act requires agencies to publish System of Records Notices ("SORNs") in the Federal Register to inform the public about how they collect and maintain personal information. The SORNs for SSA's Master Beneficiary Record, SORN No. 60-0090,[8] and SSI Record, SORN No. 60-0103,[9] files—

---

[5] *See* Soc. Sec. Admin, *Form SSA-1 | Information You Need To Apply For Retirement Benefits or Medicare*, https://perma.cc/CPH7-Y97F (last visited Mar. 7, 2025); Soc. Sec. Admin., *Medical Evidence* (July 29, 2022), https://perma.cc/D5EY-GHE8; 71 Fed. Reg. 1810 (Jan. 11, 2006); 71 Fed. Reg. 1826 (Jan. 11, 2006); *see,e.g.*, Soc. Sec. Admin., *SSA-1-BK, Application for Retirement Insurance Benefits*, https://perma.cc/Y85T-GFLC, (last visited Mar. 7, 2025); Soc. Sec. Admin., *SSA-16, Application for Disability Insurance Benefits*, https://perma.cc/93GV-C5K6 (last visited Mar. 7, 2025).

[6] Soc. Sec. Admin., Priv. Program, *SSA's Commitment to Protecting Privacy through Compliance*, https://perma.cc/RU63-89MC (last visited Feb. 21, 2025).

[7] *Id.*

[8] *See* 71 Fed. Reg. 1826 (Jan. 11, 2006); 72 Fed. Reg. 69723 (Dec. 10, 2007); 78 Fed. Reg. 40542 (July 5, 2013); 83 Fed. Reg. 31250 (July 3, 2018); 83 Fed. Reg. 31251 (July 3, 2018); 83 Fed. Reg. 54969 (Nov. 1, 2018); 89 Fed. Reg. 825 (Jan 5, 2024); 89 Fed. Reg. 14554 (Feb. 27, 2024).

[9] *See* 71 Fed. Reg. 1830 (Jan. 11, 2006); 72 Fed. Reg. 69723 (Dec. 10, 2007); 83 Fed. Reg. 31250 (July 3, 2018); 83 Fed. Reg. 31251 (July 3, 2018); 83 Fed. Reg. 54969 (Nov. 1, 2018); 89 Fed. Reg. 825 (Jan 5, 2024); 89 Fed. Reg. 14554 (Feb. 27, 2024).

record systems that contain data such as names, dates of birth, earnings histories, citizenship statuses, banking information, and medical histories, among other sensitive information—permit the disclosure of certain data to the Department of Treasury for the collection of Social Security taxes, *see* 71 Fed. Reg. 1827 (Jan. 11, 2006), or to respond to federal, state, and local agencies after a data breach, *see* 72 Fed. Reg. 69723 (Dec. 10, 2007). But the SORNs permit disclosure to the Office of the President only for the purpose of responding to an inquiry made by "[an] individual or from a third party on [the individual's] behalf." 71 Fed. Reg. 1827; 71 Fed. Reg. 831.

## II. <u>DOGE and its Campaign Against Federal Agencies.</u>

On November 12, 2024, then-President-Elect Trump announced his intent to create a "Department of Government Efficiency."[10] President-Elect Trump explained that DOGE would "provide advice and guidance from outside of Government" to the White House and Office of Management & Budget and would help "pave the way" for his administration to "dismantle," "slash," and "restructure" federal programs and services.[11]

Immediately upon taking the oath of office, President Trump did just that. Executive Order 14158, titled "Establishing and Implementing the President's 'Department of Government Efficiency'" ("the E.O."), reorganized and renamed the United States Digital Service as the United States DOGE Service in the Executive Office of the President; established the role of the U.S. DOGE Service Administrator in the Executive Office of the President (reporting to the White House Chief of Staff); and created within U.S. DOGE Service a temporary organization known as "the U.S. DOGE Service Temporary Organization." Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025).

---

[10] *See* Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://perma.cc/69SF-YJTL.
[11] *Id.*

While the White House has represented to the public that Amy Gleason is the current DOGE Administrator,[12] President Trump has repeatedly confirmed that DOGE is being "headed by Elon Musk."[13] Through DOGE, Musk oversees a cross-agency infiltration campaign with the goal of re-working entire agencies to his will. DOGE henchmen have sought, and in most instances obtained, unprecedented access to information systems at federal agencies including the Department of Treasury[14] (and the Internal Revenue Service, a Treasury sub-agency[15]), the Consumer Financial Protection Bureau,[16] the General Services Administration,[17] USAID,[18] OPM,[19] the Department of the National Oceanic and Atmospheric Administration,[20] and the

---

[12] Kaitlan Collins & Tierney Sneed, *White House reveals who DOGE acting administrator is*, CNN Politics (Feb. 25, 2025), https://perma.cc/F8VY-TEPF.

[13] *See Full Transcript of President Trump's Speech to Congress,* N.Y. Times (March 4, 2025), https://perma.cc/AT4N-WRDY ("I have created the brand new Department of Government Efficiency. DOGE . . . . [w]hich is headed by Elon Musk.").

[14] Katelyn Polantz et al., *How an arcane Treasury Department office became ground zero in the war over federal spending*, CNN (Feb. 1, 2025), https://perma.cc/U5VF-RWE7; Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payment System*, N.Y. Times (Feb. 1, 2025), https://perma.cc/YGR9-2J65; Vittoria Elliott et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, Wired (Feb. 4, 2025), https://perma.cc/6U6Z-3CK4.

[15] Jeff Stein et al., *Musk's DOGE seeks access to personal taxpayer data, raising alarm at IRS*, Wash. Post (Feb. 9, 2025), https://perma.cc/GJ38-S2M2.

[16] Makena Kelly, *DOGE Is Now Inside the Consumer Financial Protection Bureau*, Wired (Feb. 7, 2025), https://perma.cc/9YP7-EA57; Jason Leopold, *DOGE-Backed Halt at CFPB Comes Amid Musk's Plans for 'X' Digital Wallet*, Bloomberg Law (Feb. 10, 2025), https://perma.cc/9356-2UFN.

[17] Emily Davies & Faiz Siddiqui, *GSA engineering lead resigns over DOGE ally's request for access,* Wash. Post (Feb. 18, 2025), https://perma.cc/E2X9-3VST.

[18] Charlie Warzel et al., *DOGE has 'God Mode' Access to Government Data*, The Atlantic (Feb. 19, 2025), https://perma.cc/2RH3-CYXK ("DOGE has acquired God-mode access across the entire digital system [at USAID].").

[19] Davies, *supra* note 17.

[20] Michael Sainato, *Doge staffers enter NOAA headquarters and incite reports of cuts and threats*, The Guardian (Feb. 4, 2025), https://perma.cc/W4WP-MHRV; Eric Katz, *DOGE enters NOAA, accesses IT systems and removes the top HR official*, Gov't Exec. (Feb. 5, 2025), https://perma.cc/5DFK-NUTU.

Departments of Education,[21] Labor,[22] Health and Human Services,[23] and Housing and Urban Development.[24] DOGE has not limited itself to unlawfully accessing and reviewing sensitive and protected information. On the contrary: it is publicly disclosing the data[25] and using artificial intelligence to mine it, despite experts warning that doing so creates "a massive risk of violating people's civil rights."[26]

### III.   DOGE's Takeover of SSA.

President Trump and Mr. Musk have long had their sights on the Social Security system.[27] In late January, they made their move. On January 30, a mid-level SSA employee named Leland Dudek called Tiffany Flick, then-acting Chief of Staff to the then-Acting Commissioner, and

---

[21] *See* Laura Meckler et al., *Trump Preps Order to Dismantle Education Dept. as DOGE Probes Data*, Wash. Post (Feb. 3, 2025), https://perma.cc/PP8N-NCD7 ("At least some DOGE staffers have gained access to multiple sensitive internal systems, the people said, including a financial aid dataset that contains the personal information for millions of students enrolled in the federal student aid program.").

[22] ECF No. 29-8, *Am. Fed'n of Lab. & Cong. of Indus. Orgs. et al. v. Dep't of Lab. et al.,* No. CV 25-0339 (JDB) (D.D.C. Feb. 12, 2025) (Ex. F, Decl. of Rushab Sanghvi ¶ 9).

[23] Chelsea Cirruzzo & Kelly Hooper, *How HHS gets DOGE'd*, Politico (Feb. 10, 2025), https://perma.cc/N772-EKFF; Dan Diamond et al., *DOGE broadens sweep of federal agencies, gains access to health payment systems*, Wash. Post (Feb. 5, 2025), https://perma.cc/398V-QY7Y.

[24] Jesse Coburn, *DOGE Gains Access to Confidential Records on Housing Discrimination, Medical Details — Even Domestic Violence*, ProPublica (Feb 26, 2025), https://perma.cc/E33L-2ACL.

[25] Jennifer Bendery, *Elon Musk's DOGE Posts Classified Data On Its New Website*, HuffPost (Feb 14, 2025), https://perma.cc/9KSL-KLUT; Will Steakin et al., *DOGE Data Release Criticized By Intel Community; Trump Admin Says It's Public Data*, ABC News (Feb. 16, 2025), https://perma.cc/HZ72-W9M8.

[26] Clare Duffy, *Why those reports of DOGE using AI have experts worried about 'massive risk'*, CNN (Mar. 4, 2025), https://perma.cc/29VX-EGZ2.

[27] *See, e.g.*, Kate Sullivan & Tami Luhby, *Trump suggests he's open to cuts to Medicare and Social Security after attacking primary rivals over the issue*, CNN (Mar. 11, 2024), https://perma.cc/83AG-2QZ3; Elon Musk (@elonmusk), X (Feb. 11, 2025, 1:23 AM ET), https://perma.cc/R6YD-5KY9 ("[T]he magnitude of the fraud in federal entitlements (Social Security, Medicare, Medicaid, Welfare, Disability, etc.) exceeds the combined sum of every private scam you've ever heard by FAR. It's not even close.").

informed her that (1) DOGE wanted immediate on-site access, and (2) at least two DOGE associates would be working at SSA. Ex. J, Flick Decl., at PLFS-051 ¶ 9. Mike Russo, the agency's new Chief Information Officer, arrived on-site the next day. *Id.* at PLFS-051 ¶ 11. Although Mr. Russo did not officially start until February 3, he immediately sought to bring in 22-year-old DOGE software engineer Akash Bobba. *Id.* at PLFS-052 ¶ 13.

"Challenges" with Mr. Bobba's background check delayed that effort. *Id.* On February 10, Acting SSA Commissioner Michelle King began receiving calls from agitated DOGE personnel (including advisor Steve Davis), Mr. Russo, and a series of staffers who misidentified themselves as being with the Presidential Personnel Office despite working out of OPM. *Id.* at PLFS-052 ¶ 14. Each call was part of a pressure campaign to immediately onboard Mr. Bobba and give him equipment and credentials by midnight that day. *Id.* SSA, forced to depart from standard practice, swore Mr. Bobba in by phone at around 9 p.m. *Id.* at PLFS-052 ¶ 16. Agency staff began rapidly training Mr. Bobba in response to DOGE demands that he be given access to SSA data systems to work on a "special project" for Mr. Russo. *See id.* at PLFS-054 ¶¶ 22-23.

Around the same time, Mr. Russo put together an internal team, which included Mr. Dudek, to respond to questions from DOGE. *Id.* at PLFS-052 ¶ 17. That team did not operate pursuant to the normal chain of command and refused to fully disclose to the Commissioner's Office the contours of its work. *Id.* at PLFS-053 ¶ 18. Mr. Russo seemed to be "reporting to DOGE." Ex. J, Flick Decl., at PLFS-054 ¶ 22. The questions DOGE and Mr. Russo's team raised within the agency focused on purported fraud, although their concerns were based on inaccurate or distorted understandings of SSA's data and programs. *Id.* at PLFS-053 ¶¶ 18-19.

In furtherance of this goose chase, DOGE insisted that Mr. Bobba be given access to highly sensitive SSA data systems. *See id.* at PLFS-054 ¶ 23. The agency, in keeping with standard

practice, worked with Mr. Bobba to understand what he needed and set up access through its usual "sandbox" approach. *Id.* at PLFS-054–PLFS-055 ¶ 26. The sandbox was meant to give Mr. Bobba limited access to sanitized and anonymized data in a system segregated from personalized information. *Id.* But technical difficulties with the sandbox led to a swift increase in antagonism from DOGE, which reached its pinnacle during the weekend of February 14.

Mr. Russo, with the blessing of the federal Chief Information Officer (a presidential appointee at the Office of Management and Budget), demanded SSA give Mr. Bobba full and offsite access to various SSA data systems, including their source code. *See id.* at PLFS-056 ¶ 36, PLFS-057 ¶ 39. Such access is job-dependent and extraordinarily rare: only a handful of highly skilled, highly trained experts at SSA have those permissions. *Id.* at PLFS-056 ¶ 37. It is even more rare, if not wholly unprecedented, to provide such access to someone working offsite. The access Mr. Russo and DOGE demanded would have allowed Mr. Bobba to view and export all data fields about hundreds of millions of Americans, including personally identifiable information. *See id.* at PLFS-056 ¶ 34. In some of the systems, it would have allowed Mr. Bobba to independently make changes to the code itself. *See id.* PLFS-056 ¶ 35.

The Acting Commissioner refused to grant this illegal and unprecedented access. Frustrated by DOGE's inability to access and weaponize SSA data, President Trump immediately named Mr. Dudek—then on administrative leave—as the new Acting Commissioner. [28] Rather than facilitate DOGE's unlawful activity, the Acting Commissioner's chief of staff immediately retired.

President Trump, Mr. Musk, and Mr. Russo got what they wanted. Since Mr. Dudek's elevation, DOGE officials have been able to access at least the following data systems:

---

[28] Marisa Kabas, *The Curious Case of Leland Dudek*, The Handbasket (Feb. 20, 2025), https://perma.cc/D2UN-QMYE; Lisa Rein et al., *Top Social Security official exits after clash with Musk's DOGE over data*, Wash. Post (Feb. 17, 2025), https://perma.cc/4R9L-BM9T.

- The Enterprise Data Warehouse, which houses SSA's master files and includes extensive information about anyone with a social security number (including names, names of spouses and dependents, work history, financial and banking information, immigration or citizenship status, and marital status);

- The Numident file, which contains information about the assignment of social security numbers; and

- The Master Beneficiary Record and SSI Record files, which contain detailed information (including medical data) about anyone who applies for or receives Social Security or SSI benefits.

*See* Ex. J, Flick Decl. at PLFS-056 ¶¶ 31-33.

Now under the control of Mr. Musk, Mr. Russo, and Mr. Dudek, SSA is allowing DOGE to help itself to the sensitive, protected data of millions.

## IV.    Effects on Plaintiffs' Members.

Plaintiffs the American Federation of State, County, and Municipal Employees ("AFSCME") and American Federation of Teachers ("AFT") are national labor associations and membership associations whose collective 3.2 million members include, among others, retired public service workers, teachers, and nurses. Am. Compl. ¶¶ 16, 18. Plaintiff Alliance for Retired Americans ("ARA") is a grassroots advocacy organization whose 4.4 million retiree members include former teachers, community leaders, and industrial, government, and construction workers. *Id.* ¶ 17. These hardworking Americans and retirees rely on SSA programs to survive. *See* Ex. A, Widger Decl., at PLFS-007 ¶ 24; Ex. B., Conard Decl., at PLFS-013 ¶ 6; Ex. C, Doe Decl., at PLFS-018 ¶ 10; Ex. D, Imperiale Decl., at PLFS-021 ¶ 8; Ex. E., Williams Decl., at PLFS-025 ¶ 8; Ex. F., Fiesta Decl., at PLFS-029 ¶ 15; Ex. G, Somo Decl., at PLFS-034 ¶ 6; Ex. H, Aguirre

Decl., at PLFS-042–PLFS-043 ¶ 8. And they have extensive private data on file with SSA, including both information received from SSA, such as Social Security Numbers, and shared with the agency by Plaintiffs' members in connection with receiving benefits—including detailed financial and medical data. *See* Ex. A, Widger Decl., at PLFS-004–PLFS-005 ¶¶ 9-12; Ex. B., Conard Decl., at PLFS-013 ¶ 7; Ex. C, Doe Decl., at PLFS-017 ¶ 5; Ex. D, Imperiale Decl., at PLFS-020–PLFS-021 ¶ 4; Ex. E., Williams Decl., at PLFS-023–PLFS-024 ¶ 4; PLFS-024 ¶ 6; Ex. F., Fiesta Decl., at PLFS-028 ¶ 9; Ex. G, Somo Decl., at PLFS-034 ¶ 7; Ex. H, Aguirre Decl., at PLFS-041 ¶ 8l; Ex. I, Gray Decl., at PLFS-046 ¶ 5.

The privacy of Plaintiffs' members was and continues to be invaded by DOGE's ongoing, unauthorized access to SSA information systems. *See* Ex. A, Widger Decl., at PLFS-005 ¶ 14, PLFS-006 ¶ 15, PLFS-010 ¶ 34; Ex. F, Fiesta Decl., at PLFS-031 ¶ 21; Ex. H, Aguirre Decl., at PLFS-042 ¶ 14. That violation is compounded by the attendant heightened risk of bad actors accessing that data. *See* Ex. A, Widger Decl., at PLFS-006 ¶ 15; Ex. F, Fiesta Decl., at PLFS-29 ¶ 13; Ex. H, Aguirre Decl., at PLFS-042 ¶¶ 13-14.[29] Moreover, with unauthorized, unchecked access to their data ongoing, Plaintiffs continue to suffer. In addition to the statutory harms described below, one AFSCME member is concerned about providing additional information to SSA to access benefits for which he is newly eligible. Ex. E, Williams Decl., at PLFS-024 ¶ 7. Some ARA members will likewise "alter the way that . . . [they] interact with SSA, making their receipt of government benefits more cumbersome." Ex. F, Fiesta Decl., at PLFS-030 ¶ 16. And one AFT retiree is checking his bank account and credit score more regularly, as he fears his information will be accessed by bad actors without detection. Ex. I, Gray Decl., at PLFS-046 ¶ 9. Plaintiffs' members also fear that DOGE personnel unfamiliar with complex SSA systems will

---

[29] *See supra*.

inadvertently delay their benefits or use their information as part of the administration's crusade to cut Social Security benefits. *See, e.g.,* Ex. A, Widger Decl., at PLFS-008 ¶ 26, PLFS-009 ¶ 29; Ex. C, Doe Decl., at PLFS-017–PLFS-018 ¶ 9.

Plaintiffs' members are trapped. As one ARA member put it, "[W]hat choice do I have? My ability to live is dependent on supplying information to the government, but I am deeply distressed about the threats I face from the breach of my sensitive information. I am in a Catch-22." Ex. G, Somo Decl., at PLFS-035 ¶ 12.

## PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on February 21, 2025, alleging violations of the Privacy Act, 5 U.S.C. § 552a; the Social Security Act, 42 U.S.C. § 1306; the Tax Reform Act, 26 U.S.C. §§ 6103, 7213A; the Federal Information Security Modernization Act of 2014 ("FISMA"), 44 U.S.C. §§ 3551-58, and the Administrative Procedure Act, 5 U.S.C. § 701, as well as the Appointments Clause of the U.S. Constitution, U.S. Const. Art. II, § 2, cl.2.

Since then, new facts have emerged that clarify the gravity of the situation and evidence worsening harm. Two days ago, the Washington Post reported that Defendant purported Acting Commissioner Dudek recently described DOGE as a group of "outsiders who are unfamiliar with [the] nuances of SSA programs." [30] Mr. Dudek told SSA staff and stakeholders that DOGE has taken full charge of SSA data and data security practices. In his words: "I am receiving decisions that are made without my input. I have to effectuate those decisions." [31] That account matches one newly provided by Tiffany Flick, former acting Chief of Staff to then-Acting Commissioner Michelle King, which explains in detail how DOGE descended upon SSA, the breadth of the access

---

[30] Lisa Rein et al., *DOGE is driving Social Security cuts and will make mistakes, acting head says privately*, Wash. Post (Mar. 6, 2025), https://perma.cc/FYY3-QGRR.
[31] *Id.*

it sought, and the strongarm tactics it used to secure that access. *See generally* Ex. J, Flick Decl. at PLFS-048–PLFS-060. Plaintiffs therefore seek emergency relief.

## ARGUMENT[32]

Granting a temporary restraining order or preliminary injunction can "protect the status quo," "prevent irreparable harm during the pendency of a lawsuit," and give the Court time to "render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). The substantive standard for granting a temporary restraining order is the same as for a preliminary injunction, *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 281 (4th Cir. 2006), or administrative stay pursuant to 5 U.S.C. § 705, *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 950 (D. Md. 2020) (citations omitted). In any of those three forms, preliminary relief is appropriate when plaintiffs show that: "(1) there is a likelihood of success on the merits; (2) there is a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). All four factors weigh in Plaintiffs' favor.

---

[32] For the reasons discussed below, Plaintiffs have standing to sue. An association may assert standing as the representative of its members where (1) "its members would have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). These factors are undoubtedly met here. First, as discussed below, Plaintiffs' members have been and continue to be harmed by the disclosure of their highly sensitive information to DOGE personnel. *Second*, among Plaintiffs' organizational goals is ensuring that their members have access to and are able to benefit from well run programs by SSA, making the privacy interests it seeks to protect via this lawsuit germane to its purpose. *See* Ex. A, Widger Decl., at PLFS-003–PLFS-004 ¶¶ 7–8; Ex. F, Fiesta Decl., at PLFS-027 ¶¶ 2–3; Ex. H, Aguirre Decl., at PLFS-039–PLFS-040 ¶ 3, PLFS-040–PLFS-041 ¶¶ 5–6. *Third*, the participation of individuals is unnecessary here, as the relief sought is equitable. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996).

## I.    <u>Plaintiffs Are Likely to Succeed on the Merits.</u>

Defendants' unlawful provision of access to, and accessing of, SSA data systems ("Defendants' actions") compromise the security of massive amounts of personally identifiable, sensitive, and confidential information about Plaintiffs' members. Those actions were undertaken without any regard for the attendant—and significant—security risks. And they are contrary to law in that they violate not only the Privacy Act, Administrative Procedure Act, Social Security Act, and Tax Revenue Act of 1976, but also SSA's own rules and regulations. Plaintiffs are therefore likely to succeed on the merits. *See, e.g.*, *Am. Fed'n of Tchrs. v. Bessent*, No. CV DLB-25-0430, 2025 WL 582063 at *9 (D. Md. Feb. 24, 2025) (finding that a similar Department of Education access policy likely violated both the APA and the Privacy Act); *New York v. Trump*, No. 25-cv-01144, 2025 WL 573771, at *14 (S.D.N.Y. Feb. 21, 2025) (finding that a similar Treasury Department policy likely violates the APA).[33]

### A.    <u>Defendants' actions violate the Privacy Act.</u>

SSA's maintenance of the public's personally identifiable information is governed by the Privacy Act of 1974, which protects against "invasion[s] of personal privacy" and requires federal agencies to "collect, maintain, use, or disseminate" records containing such information in a way that both (1) "assures that such action is for a necessary and lawful purpose" and (2) provides "adequate safeguards . . . to prevent misuses of such information." 5 U.S.C. §§ 552a(b), (b)(4). To that end, the Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records . . . to any person, or to another agency" absent written authorization from the

---

[33] The New York court held that the plaintiffs, a group of U.S. states, were unlikely to succeed on the merits of their Privacy Act claim because their "interest in the protection of [their] own financial data is not the type of interest the Privacy Act was enacted to protect." 2025 WL 573771, at *16. In so holding, the court emphasized that the Privacy Act "only protects information regarding *individuals*," not State governments. *Id.* at *15 (emphasis in original).

individual to whom the record pertains. 5 U.S.C. § 552a(b). The Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency." *Id.* § 552a(a)(4). "[D]isclosure" is liberally defined as "making a record about an individual available to . . . another party." 20 C.F.R. § 401.25. Disclosures may be "either the transfer of a record or the granting of access to a record." Off. of Mgmt. & Bdgt., Exec. Off. of Pres., Guidelines, 40 Fed. Reg. 28948, 28953 (July 9, 1975).

Defendants have granted DOGE officials nearly unlimited access to systems of records containing sensitive and personally identifiable information (including, as but a few examples, Social Security numbers, bank account information, and detailed medical records). Every system of records DOGE has captured is governed by a published SORN,[34] and DOGE's access is contrary to those documents. Consent was never requested or received, *see, e.g.*, Ex. I, Gray Decl., at PLFS-046 ¶ 7; Ex. G, Somo Decl., at PLFS-035 ¶ 10; Ex. C, Doe Decl., at PLFS-017 ¶ 6; Ex. B, Conard Decl., at PLFS-013–PLFS-014 ¶ 10; Ex. D, Imperiale Decl., at PLFS-021 ¶ 7; Ex. E, Williams Decl., at PLFS-024 ¶ 7, and none of the Privacy Act's enumerated exceptions to the general rule against disclosure apply, *see* 5 U.S.C. § 552a(b). There is thus no question that Defendants' actions constitute unlawful "disclosure" of "records" forbidden by the Act. *See Am. Fed'n of Tchrs. v. Bessent*, 2025 WL 582063, at *9.

The Administrative Procedure Act requires courts to enjoin unlawful final agency action when there is "no other adequate remedy" available. 5 U.S.C. §§ 704, 706(2)(A). That is the case here, where nothing absent an injunction will prevent Defendants' ongoing disclosure of and access to the data in question. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004) (noting that though the Privacy Act does not itself address standards governing equitable relief, the APA does); *Doe v.*

---

[34] *See supra* n. 8, n. 9.

*Stephens*, 851 F.2d 1457, 1460-61, 1463 (D.C. Cir. 1988) (violations of the Privacy Act can be remedied by injunctive relief under the APA). As with the Plaintiffs in *Am. Fed. of Teachers v. Bessent*, 2025 WL 582063, at *11, Plaintiffs have shown a likelihood of success on their Privacy Act claims.

      **B.**  **Defendants' actions violate the Social Security Act, Tax Reform Act of 1976, and applicable regulations.**

In addition to violating the Privacy Act, Defendants' actions also flout the Social Security Act, the Tax Reform Act of 1976 (also cited as the Internal Revenue Code), and SSA's own agency-specific rules and regulations.

*First*, SSA Defendants have and are disclosing tax return information in violation of Section 6103 of the Internal Revenue Code and Section 1306 of the Social Security Act. *See* 26 U.S.C. § 6103 ("Returns and return information shall be confidential."), 42 U.S.C. § 1306 ("No disclosure of any return or portion of a return . . . shall be made.").

The SSA databases DOGE has captured, including the EDW, contain tax return information, which is broadly defined to include "a taxpayer's identity, the nature[s], source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments." 26 U.S.C. § 6103; *see Judicial Watch, Inc. v. Soc. Sec. Admin.*, 701 F.3d 379 (D.C. Cir. 2012) (holding that certain data housed at SSA is "return information" protected from disclosure by 26 U.S.C. § 6103)*;* Ex. J, Flick Decl., at PLFS-049 ¶ 2.

Section 6103 enumerates limited circumstances in which individual tax reform information may be disclosed outside the agency. None are applicable here. Nor did the disclosure accord with the specific and rigorous procedures provided in Section 6103 for the limited circumstances in which individual tax return information may be made available to the President or White House

Office employees. 26 U.S.C. § 6103(g). Defendants' disclosure of mass return information contained in SSA systems to non-agency personnel, including DOGE, thus violates both the Internal Revenue Code and the Social Security Act.

**Second**, and alternately, Defendants' actions violate an SSA regulation establishing the "general principles" used to determine whether to permit disclosure of information in the absence of another legal requirement. That regulation requires the agency to follow FOIA principles and consider "whether the disclosure would result in a clearly unwarranted invasion of personal privacy." 20 C.F.R. § 401.140. In making that determination, to "insure uniform treatment in all situations," SSA considers (a) the "sensitivity of the information (e.g., whether individuals would suffer harm or embarrassment as a result of the disclosure)," (b) "public interest in the disclosure," (c) the "rights and expectations of individuals to have their personal information kept confidential," (d) the "public's interest in maintaining general standards of confidentiality of personal information," and (e) the "existence of safeguards against unauthorized redisclosure or use." *Id.*

Defendants did not engage in this assessment. To the contrary: when SSA personnel asked questions that could have informed that type of analysis, Defendants obfuscated or refused to respond. *See* Ex. J, Flick Decl., at PLFS-056 ¶¶ 36, 38, PLFS-057 ¶¶ 40, 43. Had they considered the mandatory factors listed above, they surely would have been required to take a different course. *Cf. Havemann v. Astrue*, No. CIV. ELH-10-1498, 2012 WL 4378143, at *6 (D. Md. Sept. 24, 2012), *aff'd sub nom. Havemann v. Colvin*, 537 F. App'x 142 (4th Cir. 2013) (noting the "significant privacy interest in the control of private information maintained in SSA's databases") (citations omitted); *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 166 (2004) ("There is special

reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course.")).

For the same reason as detailed above, this Court must set aside Defendants' actions as contrary to law pursuant to the APA.

## C. **Defendants' actions are arbitrary and capricious.**

Defendants' actions are also arbitrary and capricious. The law "requires agencies to examine relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). "Normally, an agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem . . . or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* For several reasons, Defendants' actions fail this standard.

***First***, despite suddenly throwing open the gates to the sensitive, personally identifying information of hundreds of millions of Americans, Defendants neither disclosed nor acknowledged a change in position. *See Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 298 (4th Cir. 2018) ("At a minimum, an agency must 'display awareness that it is changing position[s].'" (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)).  For decades, SSA has carefully guarded the information submitted to it, engraining into every employee the importance of data and information security practices. *See* Ex. J., Flick Decl., at PLFS-050–PLFS-051 ¶¶ 4-8. Now, under the control of Mr. Musk, Mr. Dudek, and Mr. Russo, the agency is unlawfully sharing the public's data without even acknowledging the seismic shift in agency policy. That renders Defendants' actions arbitrary and capricious. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

**Second**, Defendants are now sharing vast amounts of sensitive, personally identifying data about millions of Americans without any explanation as to why giving DOGE and its personnel such unfettered access is necessary. *See* Ex. J., Flick Dec., PLFS-057 ¶ 43. Nor have they accounted for, or even acknowledged, the serious risks their actions inflict on the American public, including Plaintiffs' members. *See supra*. Those risks are without doubt "important aspect[s] of the problem." *State Farm*, 463 U.S. at 43; *see also Sierra Club v. Dep't of Interior*, 889 F.3d 260 (4th Cir. 2018) ("[A]gency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made."). Defendants also have considered neither how SSA will be able to continue performing its essential work if sensitive data sets are compromised nor the work required to rebuild public trust in the agency. *See* Ex. J., Flick Dec., PLFS-059 ¶ 50 (noting the fragility of SSA systems).

**Third**, Defendants have acted without any recognition of the serious reliance interests of Americans, including millions of Plaintiffs' members,[35] engendered by SSA's repeated assurances—throughout its regulations, on its website, and even in one-on-one communications with everyday Americans—about the protections the agency uses to prevent the unauthorized disclosure of sensitive and personally identifying information. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (requiring consideration of reliance interests to survive arbitrary and capricious review). As but one example, an SSA employee explicitly told one member of Plaintiff AFT that his information "was going to be extremely confidential—that only

---

[35] *See* Ex. F, Fiesta Decl., at PLFS-028, ¶ 10; Ex. H, Aguirre Decl., at PLFS-041 ¶ 9; Ex. A, Widger Decl., at PLFS-005 ¶ 13; Ex. D Imperiale Decl., at PLFS-021 ¶ 7; Ex. B, Conard Decl., at PLFS-013-PLFS-14 ¶ 10; Ex. C, Doe Decl., at PLFS-017 ¶ 6; Ex. E, Williams Decl., at PLFS-024 ¶ 6; Ex. G, Somo Decl., at PLFS-035 ¶ 9.

specific, qualified people would have access to it." Ex. I, Gray Decl., at PLFS-046 ¶ 6. That assurance has gone out the window, with nary a thought for those who reasonably depended on it.

Nor have Defendants explained why they cannot adjust their approach to review of this data to account for these reliance interests, such as by following the standard agency practices of (1) allowing for appropriate onboarding and training of SSA employees, (2) assessing an individual's need to know with respect to each data system to which they seek access, and (3) maintaining reasonable restrictions on access to data. *Regents of the Univ. of Cal*, 591 at 33; *Casa de Maryland,* 486 F. Supp. 3d at 963 (finding "failure to consider an important policy alternative" rendered agency action arbitrary and capricious (internal citations omitted)).

### D.  **DOGE is acting ultra vires.**

By the President's own design, DOGE is a creature of Executive Order only and—unlike the U.S. Digital Service, whose vacant shell DOGE now inhabits—has no claim to statutorily derived authority. *See generally* Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025). DOGE's structure is unusual but unambiguous. Multiple White House officials have asserted that DOGE falls under the Presidential Records Act and is therefore not subject to FOIA. *See Armstrong v. Exec. Off. of the Pres.*, 90 F.3d 553, 556 (D.C. Cir. 1996). If that is the White House's position, then DOGE's "function" is definitionally limited "to advis[ing] or assist[ing] the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties" of that office. *See* 44 U.S.C. § 2201.

There is no question that DOGE has exceeded that limited authority here. *See* Ex. J, Flick Decl., at PLFS-052 ¶ 17, PLFS-053 ¶¶ 18, 20, PLFS-054 ¶ 22. The agency's purported head, Defendant Dudek, confirmed as much in a recent meeting with agency personnel and stakeholders.

Speaking about DOGE, Defendant Dudek said: "I am receiving decisions that that are made without my input. I have to effectuate those decisions."[36] He even acknowledged the brazen nature of DOGE's operation, saying, "Things are currently operating in a way I have never seen in government before."[37]

DOGE's actions at SSA are thus *ultra vires.* They are of no legal force or effect and should be immediately enjoined.

* * * * *

For any or all of these reasons, Plaintiffs are likely to succeed on the merits of this case.

**II.      Plaintiffs Are Suffering Immediate, Irreparable Harm.**

To show irreparable harm, a party must clearly show that it will suffer actual, imminent harm that "cannot be fully rectified" by a final judgment after trial. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks and citations omitted). Plaintiffs more than meet this standard.

**A. Plaintiffs' members are irreparably harmed by DOGE's ongoing, illegal access to their sensitive information.**

To start, Plaintiffs' members face ongoing harm from DOGE's unlawful access to SSA databases containing among the most sensitive personal data the government has—a harm that began "as soon as [DOGE] personnel gained access." Ex. A, Widger Decl., at PLFS-005 ¶ 14. That harm will continue until DOGE is blocked from SSA systems, forced to destroy any data it or its associates retain, and prohibited from re-entering SSA systems moving forward.

---

[36] *Supra* n. 30.
[37] *Id.*

As detailed above, *see supra* Section IV, Plaintiffs' members share information with SSA based on their understanding that the agency is both legally obligated and committed to keeping their data secure, and SSA systems contain an immense amount of their data. "Put simply," one ARA member explained, "SSA knows basically everything about us." Ex. G, Somo Decl., at PLFS-034 ¶ 7.

The Master Beneficiary Record, for example, contains information about each claimant who has applied for retirement, survivor, or disability benefits. To receive disability insurance, which some of Plaintiffs' members do, *see, e.g.*, Ex. D, Imperiale Decl., at PLFS-020–PLFS-021 ¶ 4; Ex. F, Fiesta Decl., at PLFS-030 ¶ 18, Ex. A, Widger Decl., at PLFS-004–PLFS-005 ¶ 10, members must submit extensive medical information, including details about the prescription and non-prescription medicines the applicant takes; lists of their healthcare providers and the medical conditions for which they were evaluated and treated, including mental health conditions; and other sensitive medical information, *see* Ex. A, Widger Decl., at PLFS-005 ¶ 11. Some of this information, including concerning "health conditions like HIV or other STDs," can result in stigma, social isolation, job loss, housing loss, and other harms." *Id.* at PLFS-005 ¶ 14.

The disclosure of this information to DOGE is an actual, ongoing harm to Plaintiffs' members, who did not consent to DOGE accessing their sensitive information and who face injury in the form of a privacy violation each day the department retains that access. As another judge in this district recently held, that harm cannot be rectified by money damages down the road. *Am. Fed'n of Teachers v. Bessent*, 2025 WL 582063 at *14 (citations omitted) ("The unauthorized disclosure of the plaintiffs' sensitive personal information to DOGE affiliates is irreparable harm that money damages cannot rectify.").

22

### B. Plaintiffs' members are irreparably harmed by the now-increased risk that their information is more easily accessible by bad actors.

For Plaintiffs' members, the disclosure of their information to DOGE is made more concerning by the attendant heightened risk of non-governmental bad actors accessing that sensitive, personally identifiable data.

SSA has in its systems "anything that a scammer would want to know, to do just about anything a scammer would want to do." Ex. G, Somo Decl., a PLFS-034 ¶ 7. As the agency itself acknowledges, "Social Security impersonation scams impact all age groups and remain one of the most common government imposter scams reported to the Federal Trade Commission."[38] The risks associated with unauthorized access to SSA data are widely known—including by this Court, which has previously described the "very real danger" to privacy "enabled by extensive publicly available data on individuals." *Havemann v. Astru*e, 2012 WL 4378143, at *11, *aff'd sub nom. Havemann v. Colvin*, 537 F. App'x 142. As the Fourth Circuit has explained, an "unscrupulous individual" armed with a person's SSN could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain the person's paycheck. *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993); *accord In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 56 (D.C. Cir. 2019) (noting, in a Privacy Act suit against OPM, that "[i]t hardly takes a criminal mastermind to imagine how such information could be used to commit identity theft.").

---

[38] Soc. Sec. Admin., Press Release, *Social Security and OIG Partner for National Slam the Scam Day* (Mar. 6, 2025), https://perma.cc/YH3F-8YLE; Privacy Act, Pub. L. No 93-579, 88 Stat. 1896 (1974) ("[T]he increasing use of computers and sophisticated information technology, while essential to the efficient operations of the Government, has greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information.").

Plaintiffs' risk of being targeted by such fraudsters increased meaningfully as soon as Defendants unlawfully shared their information, and it will increase every day their data remains unprotected. Ex. A, Widger Decl., at PLFS-006 ¶ 15 ("As soon as uncredentialed DOGE personnel accessed this data, it was compromised, making AFSCME members more apt targets for identity theft and other scams."); Ex. F, Fiesta Decl., at PLFS-029 ¶ 13 ("Granting DOGE unfettered access to this data immediately increased the risk that our members' sensitive information will be stolen or misused").

A court addressing DOGE's capture of sensitive information at another agency has already found that the "heightened risk that the systems in question will be more vulnerable than before to hacking" constitutes irreparable harm. *New York v. Trump,* No. 25 CIV. 1144, 2025 WL 435411, at *1 (S.D.N.Y. Feb. 8, 2025), modified, No. 25-CV-01144 (JAV), 2025 WL 455406 (S.D.N.Y. Feb. 11, 2025). Here, Plaintiffs' members are particularly vulnerable as senior citizens who are the "frequent target[s] of scammers." *See United States v. Lawson*, No. 23-4137, 2025 WL 422397, at *5 (4th Cir. Feb. 7, 2025). AFSCME members, for example, are "already flooded with phone calls and texts from scammers seeking to take advantage of their age and health conditions." Ex. A, Widger Decl., at PLFS-009 ¶ 30; *see* Ex. G, Somo Decl., at PLFS-034–PLFS-035 ¶ 8. Defendants' unlawful actions meaningfully increase the risk of these scammers gaining additional personally identifiable information about Plaintiffs' members and using that information to better disguise their malintent. As one ARA member who already frequently receives fraudulent messages purporting to be from her bank explained, "if these messages included more of my personal information, I'm not sure that I would be able to tell that they are fake." Ex. G, Somo Decl., at PLFS-034–PLFS-045, ¶ 8.

24

### III.    The Balance of Equities and Public Interest Both Favor an Injunction.

The final two factors, which address whether the balance of equities tips in a movant's favor and whether the injunction is in the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, both favor Plaintiffs.

The government cannot suffer harm from an injunction that merely ends an unlawful action because "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional" or which "merely ends an unlawful practice." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (internal quotation marks and citations omitted), *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws." *HIAS, Inc. v. Trump*, 415 F. Supp. 3d 669, 986 (D. Md. 2020) (internal quotation marks and citations omitted). "If anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013).

Defendants' actions violate numerous federal laws and will cause increasing harm to Plaintiffs' 7.7 million members as long as they are allowed to continue. Those members, along with countless similarly situated Americans, would benefit from the Court's grant of the relief requested herein.

### RELIEF REQUESTED

Plaintiffs pray that the Court enters an order restoring the status quo and requiring Defendants to take all action necessary to reverse the effects of their unlawful activity. Specifically, Plaintiffs seek a temporary restraining order, preliminary injunction, or 5 U.S.C. § 705 stay:

1.     Enjoining or staying the U.S. DOGE Service, U.S. DOGE Service Temporary Organization, and Defendants Musk and Gleason's (collectively, "DOGE Defendants") access, inspection, disclosure, or use of any information, including but not limited to return information, personally identifiable information, or non-anonymized information, that is contained in or obtained, derived, copied, or exported from SSA information systems and systems of record;

2.     Enjoining or staying all Defendants' access, inspection, disclosure, or use of any SSA information system or system of record, or data contained in or obtained, derived, copied, or exported therefrom, for any purpose other than those permitted by the Privacy Act, a published System of Records Notice, the Internal Revenue Code, and the Federal Information Security Modernization Act;

3.     Enjoining or staying DOGE Defendants' or purported Acting Commissioner Dudek's direction or control of access, inspection, disclosure, or use of any SSA information system or system of record, or data contained in or obtained, derived, copied, or exported therefrom, including but not limited to return information, personally identifiable information, and non-anonymized information;

4.     Directing all Defendants to file, within 24 hours of the issuance of any grant of injunctive relief, a notice confirming that DOGE Defendants no longer have access to SSA information systems or systems of record or any data contained in or obtained, derived, copied, or exported therefrom;

5.     Ordering DOGE Defendants to disgorge or delete all unlawfully obtained, disclosed, or accessed data, including but not limited to return information, personally identifiable information, or non-anonymized data, from any SSA information system or system of record they could not lawfully access prior to January 20, 2025;

26

6.    Prohibiting DOGE Defendants from installing any software on SSA devices, information systems, or systems of record and ordering that any software previously installed be removed; and

7.    Prohibiting DOGE Defendants from accessing, altering, or disclosing any SSA computer or software code. [39]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and enter a temporary restraining order, or, in the alternative, a preliminary injunction or administrative stay pursuant to 5 U.S.C. § 705.

---

[39] The Court should exercise its discretion to waive or set at $0 the security requirement of Fed. R. Civ. P. 65(c) because Defendants will face no monetary injury from any relief ordered by the Court. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) ("[T]he district court retains the discretion to set the bond amount as it sees fit or waive the security requirement." (citations omitted)). In similar cases, courts in this jurisdiction and others have determined bond unnecessary. *See, e.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-CV-333, 2025 WL 573764, at *29 (D. Md. Feb. 21, 2025) (setting a nominal bond of zero dollars); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 597959, at *18 (D.D.C. Feb. 25, 2025) (declining to set a bond).

Dated: March 7, 2025

Respectfully submitted,

*Alethea Anne Swift*

Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Karianne M. Jones[*+]
Robin F. Thurston[*+]
Emma R. Leibowitz[*+]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
kjones@democracyforward.org
rthurston@democracyforward.org
eleibowitz@democracyforward.org

*Counsel for Plaintiffs*

[*] Admission to this Court pending
[+] Admitted *pro hac vice*