# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO, *et al.*,

        *Plaintiffs*,

        *vs.*

SOCIAL SECURITY ADMINISTRATION,
*et al.*,

        *Defendants*.

Civil Action No. 1:25-cv-00596

---

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND/OR 5 U.S.C. § 705 STAY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.      Plaintiffs Adequately Allege Associational Standing. ............................................ 1

     A.    Plaintiffs' members' injuries are concrete and cognizable................................. 2

          1.   *Plaintiffs adequately allege a concrete injury to their privacy interests.* ....... 2

          2.   *Plaintiffs' members are also injured via exposure to risk of identity theft.*...... 4

          3.   *Plaintiffs' members are injured via disruption to life-sustaining benefits payments.* .............................................................................................. 6

     B.    Plaintiffs' members' injuries are fairly traceable to Defendants' actions............ 7

     C.    Plaintiffs' members need not participate individually......................................... 7

II.     Plaintiffs Challenge Final Agency Action.................................................................. 8

     A.    Plaintiffs identified the challenged agency action. ............................................. 8

     B.    Plaintiffs challenge an "agency action." ............................................................ 9

     C.    Defendants' action is final within the meaning of the APA. .............................. 9

III.    Plaintiffs Are Likely to Succeed on the Merits. ...................................................... 11

     A.    Injunctive relief is available.............................................................................. 11

     B.    Defendants violated the Privacy Act, Social Security Act, and Internal Revenue Code............................................................................................................... 11

     C.    Defendants' actions are arbitrary and capricious. ............................................ 13

     D.    Plaintiffs are likely to succeed on the merits of their *ultra vires* claim. ........... 14

IV.    Plaintiffs Suffer Immediate, Irreparable Harm. ..................................................... 14

V.     The Balance of Equities and Public Interest Both Favor an Injunction................ 15

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ............................................................10

*AFL-CIO et al. v. DOL et al.*, No. 1:25-cv-00339 (D.D.C. Feb. 6, 2025) ....................12

*Am. Fed'n of Tchrs. v. Bessent*, No. 8:25-cv-00430, 2025 WL 582063 (D. Md. Feb. 24, 2025) ..........................................................................................................*Passim*

*Ancient Coin Collectors Guild v. Dep't of Homeland Sec.*, 698 F.3d 171 (4th Cir. 2012)............14

*Army Corps of Eng'rs v. Hawkes Co.* 578 U.S. 590 (2016) ..........................................10

*Ass'n of Community Cancer Centers v. Azar*, 509 F. Supp. 3d 482 (D. Md. 2020)......................8

*Bennet v. Spear*, 520 U.S. 154 (1997).........................................................................10

*CREW v. U.S. DOGE Serv.*, No. 1:25-cv-0051 (D.D.C. Feb. 27, 2025)........................12

*Democratic Party of Virginia v. Brink*, 599 F. Supp. 3d 346 (E.D. Va. 2022) ................8

*Doe v. Chao*, 540 U.S. 614 (2004).............................................................................12

*Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988) .......................................................11

*Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017). ..................................4

*Earley v. Smoot*, 846 F. Supp. 451 (D. Md. 1994) .......................................................15

*Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222 (M.D. Pa. 2023)........................................4

*Fernandez v. RentGrow, Inc.*, 116 F.4th 288 (4th Cir. 2024) ....................................2, 8

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) ......................................................5

*Havemann v. Colvin*, 537 F. App'x 142 (4th Cir. 2013) .................................................3

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.* 48 F.4th 1236 (11th Cir. 2022).................4

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977) .......................1, 7

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019)...............4, 5

*Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627 (4th Cir. 2024)..........................................................................................................10

*Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180 (4th Cir. 1999) .....................10

*Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681 (D. Md. 2019)........................8

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330 (4th Cir. 2021)......................15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...............................................2, 8

*Mitchell v. Balt. Sun Co.*, 164 Md. App. 497 (Md. Ct. Spec. App. 2005)........................3

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197 (4th Cir. 2019) ..................14

*Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d. 665 (S.D.N.Y. 2009) ......................................................................................................8

*Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383 (D. Md. 2021) .......................................................................................................8

*Natl Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109 (2022)..........................................12

*Neal v. United States*, 599 F. Supp. 3d 270 (D. Md. 2022)....................................2, 3

*New York v. Dep't of Def.*, 913 F.3d 423 (4th Cir. 2019)........................................9, 10

*New York v. Trump*, No. 25-cv-01144, 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) ......4

*New York v. Trump,* 25-cv-1144, 2025 WL 435411 (S.D.N.Y. Feb. 8, 2025) ...............4

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004) .......................................9

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................15

*Radack v. Dep't of Just.*, 402 F. Supp. 99 (D.D.C. 2005)........................................11

*Sackett v. Envt'l Protection Agency*, 566 U.S. 120 (2012) ........................................11

*TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021)................................................2, 7

*United Food and Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996)............................................................................................................7

*Univ. of Calif. Student Assoc. v. Carter*, 1:25-cv-00354 (D.D.C. Feb. 16, 2025).........13

*Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008).......................11

*Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186 (4th Cir. 2013) .............................................................................................................9

*Walker v. Gambrell*, 647 F. Supp. 2d 529 (D. Md. 2009) .......................................13

**Statutes**

31 U.S.C. § 1535(a) .................................................................................................12

5 U.S.C. § 704.......................................................................................................11

5 U.S.C.  552a .......................................................................................................8

**Other Authorities**

Beatrice Nolan, *A 25-year-old staffer with Elon Musk's DOGE was accidentally given permission to edit a sensitive Treasury payments system*, Fortune (Feb. 13, 2025), https://perma.cc/P928-YZY2 ....................................................................................5

Eli Hager, *"The President Wanted It and I Did It": Recording Reveals Head of Social Security's Thoughts on DOGE and Trump*, ProPublica (Mar. 12, 2025), https://perma.cc/ZQ2Q-RUB9.........................................................................6, 12, 14

Jennifer Bendery, *Elon Musk's DOGE Posts Classified Data On Its New Website*, HuffPost (Feb 14, 2025), https://perma.cc/9KSL-KLUT ..................................................5

Restatement (Second) of Torts § 652B ..........................................................................3

Tami Luhby & Jeremy Herb, *'A disruptive effect': How slashing staff at the Social Security Administration is sparking fears the system could collapse*, CNN (Mar. 8, 2025), https://perma.cc/S397-XDRX.............................................................................6

Will Steakin et al., *DOGE Data Release Criticized By Intel Community; Trump Admin Says It's Public Data*, ABC News (Feb. 16, 2025), https://perma.cc/HZ72-W9M8...................5

## INTRODUCTION

Defendants don't dispute that they handed over millions of Americans' protected, personally identifiable information ("PII") to unnamed DOGE personnel. Instead, they ask the Court to ignore that reality and accept that "SSA has merely given a small, limited set of new employees access to data systems they need to perform the duties of their roles." Opp. At 26. That version ignores applicable law and is unsupported by the evidence, including Defendants' own.

Defendants' primary critique misstates Plaintiffs' argument: "that it's unlawful for one employee of a federal agency to share information with another authorized federal employee" to effectuate an Executive Order. Opp. at 1. That is not Plaintiffs' argument. Their argument, supported by the law and a recent decision by another judge of this Court, is that it is unlawful to share information with *unauthorized* persons, including federal employees. And the DOGE personnel relevant here are, indeed, unauthorized. Defendants may dress at least some of them up as "SSA employees" (despite referring to them in Defendants' brief as "USDS employees," Opp. at 9, 10). But they are representatives of an entity operating outside the bounds of law, and they report not to an "agency head" but to a Defendant seeking access to and control over vast amounts of personal data before the courts can catch up. Defendants' action is directly, concretely, and irreparably harming Plaintiffs' members, and will continue to do so until enjoined.

## ARGUMENT

### I.    Plaintiffs Adequately Allege Associational Standing.

An association may sue on behalf of members where "its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (cleaned up). Defendants argue that Plaintiffs have not established an injury-in-fact, partly because

they cannot show "public" disclosure; that their alleged injuries aren't fairly traceable to Defendants; and that individual members must participate. As another judge on this Court recently concluded in near-identical circumstances, they are wrong. *See Am. Fed'n of Tchrs. v. Bessent*, No. CV DLB-25-0430, 2025 WL 582063, at *9 & n.7 (D. Md. Feb. 24, 2025) [hereinafter, *AFT*].[1]

**A. Plaintiffs' members' injuries are concrete and cognizable.**

Plaintiffs go far beyond "summarily assert[ing] that their members 'have been and continue to be harmed by the disclosure of their highly sensitive information to DOGE personnel.'" Opp. at 8. Plaintiffs' members suffer three concrete, particularized, and actual or imminent injuries, including (1) an invasion of privacy akin to intrusion upon seclusion, (2) exposure to an increased and non-speculative risk of identity theft, and (3) an increased likelihood of disruption in benefit payments. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cognizable injuries are "concrete and particularized" and "actual or imminent").

*1.  Plaintiffs adequately allege a concrete injury to their privacy interests.*

Courts in this Circuit evaluate concreteness "by assessing whether [an injury] 'has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024) (quoting *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Plaintiffs easily meet this standard.

Plaintiffs' members' injuries are similar to the common-law tort of intrusion upon seclusion, which involves an "intentional intrusion upon the solitude or seclusion of another or her private affairs or concerns that would be highly offensive to a reasonable person." *See Neal v. United States*, 599 F. Supp. 3d 270, 306 (D. Md. 2022) (citation omitted); *accord* Restatement

---

[1] In *AFT*, Judge Boardman found that the plaintiffs had clearly shown they likely "suffered a concrete harm" and likely had standing because the records stored at OPM and the Department of Education (ED) contained their sensitive personal information and that the government improperly granted DOGE affiliates access systems housing it. *Id.* Judge Boardman also found that plaintiffs were not required to show it would be publicly disclosed. *Id.* at *6.

(Second) of Torts § 652B. "A legitimate expectation of privacy" is the "touchstone" of this tort, 599 F. Supp. 3d at 306 (quotation omitted); *Mitchell v. Balt. Sun Co.*, 164 Md. App. 497, 522 (Md. Ct. Spec. App. 2005). Plaintiffs "obvious[ly]" have that for "the information that the SSA has collected about them," *Havemann v. Colvin*, 537 F. App'x 142, 147 (4th Cir. 2013); *see also* TRO at 17, which includes information about their "private affairs or concerns," Restatement (Second) of Torts § 652B—such where they live, what benefits they receive, their medical histories, and their bank information, *see* Brief at 11 (citing declarations).

Indeed, Defendants' unauthorized disclosure of Plaintiffs' data is, as an objective matter, highly offensive. Highly offensive invasions may occur where a defendant "open[s a plaintiff's] private and personal mail, search[es] his safe or his wallet, [or] examin[es] his private bank account." *See* Restatement (Second) of Torts § 652B, cmt b. Defendants have pressed far beyond those bounds. In the words of one ARA member, SSA databases have "everything." Ex. G, Somo Decl., at PLFS-034 ¶ 7. That makes it "an 'unwanted intrusion into the home that marks intrusion upon seclusion.'" *AFT*, 2025 WL 582063, at *6 (citation omitted). That Plaintiffs' private data may not (yet) have been disclosed to non-government actors is irrelevant. As another member of this Court recently made clear: "[t]he disclosure to unauthorized government employees suffices." *Id.*

This harm is no "bare statutory violation." Opp. at 9. A quick review of Defendants' cases underscores that point. For example, Defendants cite *O'Leary* for the proposition that "[a]ccess to information—if unaccompanied by disclosure of that information—is not a cognizable intangible harm." Opp. at 10 (citing *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023)). But the *O'Leary* court—unlike Defendants—took care to distinguish between the torts of intrusion on seclusion and disclosure of private information. *Id.* at 245-46. Moreover, Defendants' claim that the *O'Leary* court "reject[ed] the plaintiffs' proposed analogy to the traditional tort of intrusion

upon seclusion because there was no 'unwanted intrusion into the home'" is misleading. Opp. at 10. The court rejected the analogy because O'Leary did not allege an increased risk of identity theft and "appear[ed] to rely on some abstract privacy interest in his SSN itself." *Id.* at 245. Here, Plaintiffs both allege an increased risk of identity theft and allege harm based on Defendants' unauthorized disclosure of massive amounts of sensitive information entrusted to SSA, including not just their full Social Security numbers but also their names and addresses, financial information, and medical histories, among other information. *See* Brief at 11 (citing declarations).

The remainder of Defendants' cases are inapplicable because the plaintiff didn't attempt to articulate a cognizable harm; the opinion addresses the tort of public disclosure (which Plaintiffs do not); or both. The *Dreher* plaintiff was "left with a statutory violation divorced from any real world effect" because he "[f]ail[ed] to identify either a common law analogue or a harm Congress sought to prevent." 856 F.3d 337, 346 (4th Cir. 2017). The *Hunstein* plaintiff, meanwhile, "identified no specific harm in his complaint" but subsequently "claim[ed] that the [defendant's] act caused him a concrete injury because it was analogous to the common-law tort of public disclosure." 48 F.4th 1236, 1240 (11th Cir. 2022). *Farst* does address intrusion upon seclusion but involved a private company's tracking of shopping activity and is therefore so distinguishable as to offer no support. *See* 700 F. Supp. 3d 222, 230–32 (M.D. Pa. 2023).

　　*2.  Plaintiffs' members are also injured via exposure to risk of identity theft.*

A "nonspeculative risk of identity theft" is a concrete, cognizable harm. *O'Leary*, 60 F. 4th at 243. An agency's "failure to adequately secure its databases" creates the sort of "substantial risk" that constitutes a "concrete, particularized, and actual injury" for Article III standing. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54–55 (D.C. Cir. 2019); *see New York v. Trump*, No. 25-cv-01144, 2025 WL 573771 at *12 (S.D.N.Y. Feb. 21, 2025) ("Courts have

routinely found" standing for equitable relief where "inadequate cybersecurity measures" risk disclosure of confidential information) (collecting cases).

Here, every time Defendants disclose data to DOGE or permit DOGE to retain it, the risks to Plaintiffs' members exponentially increase, especially because DOGE appears to be increasing its efforts to disrupt the secure storage of data without increasing its efforts to follow the law. *Compare* Russo Decl. ¶ 14 (stating that "Employee 7" was granted access to SSA systems on March 11), *with* Felix-Lawson Decl. ¶ 12 (noting that SSA has not yet finalized Employee 7's interagency detail agreement from DOL). Defendants' actions are surely "inadequate cybersecurity measures." *New York*, 2025 WL 573771 at *12 SSA's record systems house among the most sensitive PII available. *See* Brief at 11 (citing Declarations); *see also Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 56. The sensitive nature of that data is what led Congress to protect against its misuse, even within the government, and SSA to maintain the information in a highly secure fashion. *See* Ex. J, Flick Decl., at PLFS-056 ¶ 37 (explaining that SSA permits access only by a small number of credentialed individuals with specialized training). Yet, the public record is replete with examples of DOGE personnel at other agencies being reckless with sensitive information.[2] Because Defendants' actions "push the threatened injury of future identity theft beyond the speculative to the sufficiently imminent," *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017),[3] Plaintiffs have standing to seek relief for this injury.

---

[2] Jennifer Bendery, *Elon Musk's DOGE Posts Classified Data On Its New Website*, HuffPost (Feb 14, 2025), https://perma.cc/9KSL-KLUT; Will Steakin et al., *DOGE Data Release Criticized By Intel Community; Trump Admin Says It's Public Data*, ABC News (Feb. 16, 2025), https://perma.cc/HZ72-W9M8; Beatrice Nolan, *A 25-year-old staffer with Elon Musk's DOGE was accidentally given permission to edit a sensitive Treasury payments system*, Fortune (Feb. 13, 2025), https://perma.cc/P928-YZY2.

[3] The *Beck* court emphasized that, even after extensive discovery, the plaintiffs "uncovered no evidence that the information contained on [a] stolen laptop [was] accessed or misused or that they have suffered identity theft." *Beck*, 848 F.3d at 274. Nor did plaintiffs demonstrate "that the thief stole the laptop with the intent to steal their private

*3. Plaintiffs' members are injured via disruption to life-sustaining benefits payments.*

Nearly all Plaintiffs' retired members receive OASDI payments, and many AFSCME members also have children who receive disability benefits or survivor benefits administered by SSA. Am. Compl. ¶ 8; Ex. A, Widger Decl., at PLFS-003 ¶ 6; Ex. F. Fiesta Decl., at PLFS-028 ¶ 8; Ex. H, Aguirre Decl., at PLFS-041 ¶ 7. Plaintiffs' members rely on these programs to live, Brief at 10–12 (citing declarations), any disruption in their receipt of benefit payments would be catastrophic, *id.*, and Defendants' actions results in an increased likelihood of such disruption.

That is sufficient for Article III standing, and the public record continues to demonstrate the immediacy of that threat. Defendant Dudek recently admitted that he "doesn't know" whether DOGE's use of SSA data systems means the agency "is going to break something,"[4] sharing that "DOGE management" is "coming in from the outside" and is "unfamiliar with the nuances of [the] agency."[5] That lack of familiarity is causing problems. According to employees, SSA tech systems "seem to be crashing nearly every day, leading to more delays in serving beneficiaries."[6] The problem has gotten "much worse" and is "not the norm."[7]

Defendants may cast DOGE personnel as "SSA employees," but Defendant Dudek laid bare the truth: the individuals digging through the personally identifying information of millions are "DOGE kids" who he is "trying to get[] to be more thoughtful."[8] In the interim, delays in serving beneficiaries are likely happening. This is exactly the type of injury that allows Plaintiffs to pursue "forward-looking, injunctive relief." *TransUnion*, 594 U.S. at 524.

---

information." *Id.* Unlike the data theft at issue in *Beck*, Defendants' actions have hardly "fade[d] further into the past," rendering Plaintiffs' threatened injuries more speculative. *Id.* at 275.
[4] Eli Hager, *"The President Wanted It and I Did It": Recording Reveals Head of Social Security's Thoughts on DOGE and Trump*, ProPublica (Mar. 12, 2025), https://perma.cc/ZQ2Q-RUB9.
[5] Tami Luhby & Jeremy Herb, *'A disruptive effect': How slashing staff at the Social Security Administration is sparking fears the system could collapse*, CNN (Mar. 8, 2025), https://perma.cc/S397-XDRXXDRX.
[6] Hager, *supra* note 5.
[7] *Id.*
[8] *Id.*

**B.  Plaintiffs' members' injuries are fairly traceable to Defendants' actions.**

Defendants devote one paragraph to their argument that Plaintiffs fail to establish causation. Opp. at 11. While Plaintiffs allege three distinct harms, that paragraph addresses only one—and it misstates the alleged injury.[9] *See id.* To be clear: Plaintiffs allege that SSA's failure to adequately secure its databases creates an increased and non-speculative risk of identity theft. That alleged injury does not rely on the "speculative chain of possibilities" disavowed by *Clapper*. On the contrary: courts have found that plaintiffs have standing to seek injunctive relief where inadequate cybersecurity measures put their confidential information at risk of disclosure. *See, e.g.*, *New York*, 2025 WL 573771 at *12.

**C.  Plaintiffs' members need not participate individually.**

Defendants assert that individual participation is needed for Plaintiffs' Privacy Act claims. *See* Opp. at 12.[10] This prong of the associational standing test is a prudential one, focused on "administrative convenience and efficiency," rather than a formal inquiry into the "elements of a case or controversy within the meaning of the Constitution." *United Food and Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996). The Court should ignore Defendants' rigid—and incorrect—reading of it here.

To start, Plaintiffs seek injunctive relief under the APA; both the claim and relief generally do not require the participation of individual members. *See Kravitz*, 366 F. Supp. 3d at 741; *Ass'n of Community Cancer Centers v. Azar*, 509 F. Supp. 3d 482, 493 (D. Md. 2020). Plaintiffs' second,

---

[9] Defendants also misstate the alleged injury. *See* Opp. at 11 stating that "some of Plaintiffs' claims amount to an allegation that third-party bad actors will gain access to the members' sensitive information and abuse it"). (Plaintiffs therefore assume that Defendants do not challenge traceability with respect to Plaintiffs' privacy interests or the increased likelihood of disruption to life-sustaining benefits payments they now suffer).

[10] Defendants, in passing, imply that Plaintiffs' other requests for relief may also require their members' participation. *See* Opp. at 12. But because Plaintiffs' claims are of the kind that do not generally require individual participation, *see, e.g.*, *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 741 (D. Md. 2019) (individual participation not required for claims brought under APA nor Constitution's Enumeration Clause), and because the relief they seek is equitable, *Hunt*, 432 U.S. at 343, such is not the case.

standalone Privacy Act claim likewise does not require individual participation. Although the Privacy Act provides a pathway for damages suits that may require individual participation, 5 U.S.C. §§ 552a(g)(1)(D), (4), the relief Plaintiffs seek here is equitable, long-recognized as not requiring the participation by individual members. *Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 396 (D. Md. 2021) (internal quotation marks and citation omitted) (listing cases). And courts have repeatedly permitted groups asserting associational standing to challenge Privacy Act violations. *See, e.g.*, *AFT*, 2025 WL 582065, at *5; *Democratic Party of Virginia v. Brink*, 599 F. Supp. 3d 346, 353, 364 (E.D. Va. 2022); *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 672 (S.D.N.Y. 2009).

\* \* \*

A plaintiff must demonstrate standing "with the manner and degree of evidence" required at the relevant "stage[ ] of the litigation." *Fernandez*, 116 F.4th at 295 (quoting *Lujan*, 504 U.S. at 561). Plaintiffs have met their burden.

## II.    Plaintiffs Challenge Final Agency Actions.

### A.  Plaintiffs identified the challenged agency action.

Defendants argue that Plaintiffs fail to identify the agency action they challenge. *See* Opp. at 13. Not so. Plaintiffs clearly challenge the decision of "SSA and its acting officials" to "open[] [SSA] data systems to unauthorized personnel from [DOGE] in violation of applicable laws and with disregard for the privacy interests" of millions of Americans. Am. Compl. ¶ 2; *see id.* ¶¶ 86, 101, 114, 122; Brief at 14 (defining "Defendants' actions" as "Defendants' unlawful provision of access to, and accessing of, SSA data systems"). Defendants' asserted confusion as to whether "the alleged wrongful action is the provision of access to Mr. Bobba," Opp. at 14, both strains credulity and is belied by the four pages subsequently spent discussing the provision of

access to other DOGE personnel. *See* Opp. at 14–19. Moreover, Defendants can't hide behind the secrecy they have engineered to foreclose claims. It wasn't until Defendants filed their brief that Plaintiffs even learned that SSA's "DOGE team" includes ten individuals, names still unknown.[11]

### B. Plaintiffs challenge an "agency action."

SSA Defendants' decision to approve DOGE's request for access to certain agency record systems and the PII on those data systems, Brief at 14, "surely amount[s] to 'agency action.'" *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (distinguishing the "approval" of something, which is "agency action," from "performance," which is not). That decision—a "final disposition"—is both "discrete" and "circumscribed," *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004), and it is a far cry from the types of "workaday" dealings at issue in the cases Defendants cite. *See* Opp. at 15. Plaintiffs do not, as Defendants suggest, challenge the fact of SSA's onboarding of Mr. Bobba or other DOGE associates. *See* Opp. at 15–16. Plaintiffs point to the rushed nature of that onboarding (and subsequent credentialing) as evidence of the arbitrariness of Defendants' action.

Moreover, fixing the problem Plaintiffs identify would not require "reallocating resources, developing new administrative systems, and working closely with partners across government." *See New York v. Dep't of Def.*, 913 F.3d 423, 433 (4th Cir. 2019). It would require an application of the law to the facts—something that is within the judiciary's purview and hardly the kind of "broad programmatic attack on the government's operations" that courts reject under the APA. *Id.*

### C. Defendants' action was final within the meaning of the APA.

---

[11] Indeed, Defendants themselves seem uncertain as to the facts. While Ms. Felix-Lawson asserts that ten employees have signed an Acknowledgement of SSA Information Security and Privacy Awareness Training, Defendants' brief puts that number at nine. *Compare* Felix-Lawson Decl.¶ 13, *with* Opp. at 3. Likewise, Ms. Felix-Lawson states both that her declaration "outlines how each individual associated with SSA's DOGE team *has been onboarded* with SSA" and that her office "is *working to ensure* all onboarding requirements are met." Felix-Lawson Decl. ¶¶ 3, 17.

Defendants insist that even if the challenged action is an "agency action," it is not "final." Opp. at 16–19. Again, their argument strains credulity. Defendant Dudek, the agency's purporting Acting Commissioner, ordered that access be given. Am. Compl. ¶ 70 & n.50. His willingness to do so was what motivated President Trump to elevate him—a mid-level manager who was, at the time, on administrative leave—to replace then-Acting Commissioner Michelle King. *See*, *e.g.,* Ex. J, Flick Decl., at PLFS-058 ¶¶ 44-45. For those reasons, Defendants' red herring—that Plaintiffs fail to identify whether additional government employees will be involved in implementing the DOGE Agenda at SSA, what their status will be, and what systems they will have access to, Opp. at 16—should not distract the Court. *See supra* Section II(B). And access was, in fact, given. Russo Decl. ¶¶ 7-16. Thus "concluded" the "agency's decisionmaking process." *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 630–31 (4th Cir. 2024).

Defendants' actions are also ones "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). The Supreme Court has "long taken" a "'pragmatic' approach" to finality. *Army Corps of Eng'rs v. Hawkes Co.* 578 U.S. 590, 599 (2016) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). What matters is the "practical effect" of the agency action. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 188 (4th Cir. 1999) (internal quotation marks and citations omitted). Here, the "practical effect" of Defendants' decision to grant DOGE personnel access to SSA systems (even read-only) is that unauthorized personnel can view, copy, and analyze extensive PII about Plaintiffs' members. *See* Ex. J, Flick Decl., at PLFS-056 ¶ 34. That decision thus "determined" DOGE's rights to those data systems and "determined" Plaintiffs' rights with respect to the privacy of its PII—both of which independently render the decision final agency action, *See AFT*, 2025 WL 582063, at *7–*8; *New York,* 2025 WL 573771, at *18–21.

10

Indeed, that is what the D.C. Circuit held in *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 930-31 (D.C. Cir. 2008), in which the court addressed "an agency's decision to permit its employees to disclose confidential information without notice. In an unsupported footnote, Defendants attempt to distinguish *Venetian* by emphasizing that this case "is about an agency giving information access to other government employees at the direction of the responsible agency, not third parties." Opp. at 18. But *Venetian* did not hinge on third-party access. Rather, *Venetian* turned on whether the policy that led to unauthorized personnel having access to personal information determined the rights of the people whose information was obtained (it did) and was a consummation of the agency's decisionmaking process (it was). *Venetian*, 530 F.3d at 931. The same is true here.[12]

### III.    Plaintiffs Are Likely to Succeed on the Merits.

#### A.  Injunctive relief is available.

Defendants insist that no injunctive remedy is available under the Privacy Act. Opp. at 19–20. If that's right, Plaintiffs *must* be able to seek such relief under the APA—they would otherwise have no other "adequate remedy in court." 5 U.S.C. § 704; *see AFT*, 2025 WL 582063, at *8; *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988); *Radack v. Dep't of Just.*, 402 F. Supp. 99, 104 (D.D.C. 2005). This aligns with the Supreme Court's recognition that the statute's lack of explicit equitable relief, while curious, may be explained by recognition that such relief could be sought through the APA. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004).

#### B.  Defendants violated the Privacy Act, Social Security Act, and Internal Revenue Code.

---

[12] Defendants complain that finding final agency action here would "sweep swaths of routine agency business within the APA's ambit." Opp. at 18. That bald assertion cannot overcome the fact that Congress has subjected agency decisions of this sort—ones that that are both conclusive and that have practical effects—to judicial review, adopting a "presumption of judicial view" that "repudiate[s] . . . the principle that efficiency [for the agency] . . . conquers all." *Sackett v. Envt'l Protection Agency*, 566 U.S. 120, 130 (2012).

Defendants incorrectly argue that they have not violated the Privacy Act, the Social Security Act, or the Internal Revenue Code. The crux of their argument appears to be that the DOGE personnel embedded at SSA are SSA employees detailed pursuant to inter-agency personnel agreements. Opp. at 21. But Congress has granted the authority to detail only to an "agency," 31 U.S.C. § 1535(a), and the government has steadfastly maintained that DOGE is not an "agency," *see* Defs.' Mem. Opp'n Pl.'s Mot. Prelim. Inj at n.4, *CREW v. U.S. DOGE Serv,* No. 1:25-cv-0051 (D.D.C. Feb. 27, 2025). DOGE was established (1) by an Executive Order, (2) in the Executive Office of the President ("EOP"), and (3) separate from the few EOP components courts have deemed agencies. *See* Am. Compl. ¶¶ 47-55; Br. at 5-6; *see also Natl Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute.").

Of course, Ms. Felix-Lawson's declaration states that *some* DOGE personnel are detailed from another agency. Felix-Lawson Decl. ¶¶ 6, 8, 9. But that contradicts Acting Commissioner Dudek's description of these individuals as "the DOGE kids."[13] Nor is it clear from either of Defendants' declarations that those detailees' tenures at SSA are not the most recent stop in a series of details originating at DOGE and proceeding around the Executive Branch. That's a reasonable inference: the personnel seem to work at multiple agencies at a time (with multiple agency PIV cards and multiple agency laptops) or, at the very least, move quickly from one agency to the next. *Compare* Decl. of Adam Ramada ¶ 5, *AFL-CIO et al. v. DOL et al.*, No. 1:25-cv-00339, ECF No. 16-1 (D.D.C. Feb. 6, 2025) (discussing a DOGE employee's detail to the Department of Labor)*, with* Supp. Decl. of Adam Ramada ¶¶ 3-4, *Univ. of Calif. Student Assoc. v. Carter*, 1:25-cv-00354 (D.D.C. Feb. 16, 2025) (same employee is "on detail" at ED, working "50-60 hours per week.").

---

[13] Hager, *supra* note 5.

In any event, at least one member of the SSA DOGE Team is "detailed from . . . DOGE." Felix-Lawson Decl. ¶ 7. Because that individual is not lawfully detailed from an "agency," he is not an SSA employee. Additionally, two members of the SSA DOGE Team, including its head, are working in SSA systems even though their detailee agreements have been neither finalized nor signed. Russo Decl. ¶¶ 13-14; Felix-Lawson Decl. ¶¶ 8, 12. That is not only highly unusual, it also means these individuals are not yet SSA employees. Ex. K, Flick Supp. Decl., at PLFS-062 ¶ 3. Finally, Defendants are wholly silent about the fact that at least one DOGE team member, Mr. Bobba, has been accessing SSA data from OPM and around non-SSA employees, *see* Ex. J, Flick Decl., PFLS-055 ¶ 28, surely in violation of the privacy statutes Plaintiffs cite.

Moreover, Defendants have not shown that any members of the SSA DOGE Team need the level of access they enjoy. That undercuts Defendants' argument. The "routine use" exception in Privacy Act SORNs, and the Social Security Act Regulation Defendants cite (20 C.F.R. § 401.135), allow for access only to the extent "needed." *See* Opp. at 22. But Defendants' broad invocations of "modernization" and "detecting fraud, waste, and abuse" are simply insufficient to justify the unprecedented level of access provided here. *See* Ex. K, Flick Supp. Decl., at PLFS-063 ¶ 5; *AFT*, 2025 WL 582063, at *11 (finding that the disclosure of millions of records to DOGE officials exceeded any reasonable need-to-know); *Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 n.4 (D. Md. 2009) ("[I]t is difficult to see how knowledge with such specificity was necessary.").

### C. Defendants' actions are arbitrary and capricious.

Defendants' rehash their jurisdictional arguments and assert that Defendants' policies have not changed. *See* Opp. at 26. But it's simply not possible for Defendants to shoehorn their unprecedented, unauthorized grant of data access to DOGE into any pre-existing law or policy authorizing entry into SSA databases. Nor can Defendants credibly cast Plaintiffs' allegations as

political differences. For one thing, Plaintiffs offer declarations from a former high-ranking SSA official who served across multiple administrations and confirms that Defendants' action constitutes a policy change. S*ee generally* Ex. J, Flick Decl., at PLFS-049.

### D. Plaintiffs are likely to succeed on the merits of their *ultra vires* claim.

Defendants describe Plaintiffs' argument that DOGE lacks any statutory authority and is thus acting *ultra vires* as "citationless," Opp. at 27, but offer no facts or argument demonstrating DOGE's statutory authority to access or administer SSA data systems. Nor could they. Yet DOGE operates with immense influence across the Executive Branch, including at SSA. *See* Am. Comp. ¶¶ 9, 12; Br. at 5. Indeed, recent reporting tells of confusion by agency employees about the difference between the role of the purported Acting Commissioner, Defendant Dudek, and DOGE.[14] That confusion seems to be shared by Defendant Dudek, whose own publicly reported description of the relationship reads: "I work for the president. DOGE is part of that."[15]

Plaintiffs do not seek to dictate how SSA—nor the Executive Branch writ large—goes about its business. Rather, they asked this Court to determine whether Defendants have "acted within the bounds of [their] authority or overstepped them." *Ancient Coin Collectors Guild v. Dep't of Homeland Sec.*, 698 F.3d 171, 179 (4th Cir. 2012). They have overstepped.

### IV. <u>Plaintiffs Suffer Immediate, Irreparable Harm.</u>

Plaintiffs have explained why their members suffer immediate, actual harm, which is the first part of the irreparable injury test in this circuit. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019). These harms are also irreparable—they cannot be resolved by final judgment down the line, *see id.*, because each day DOGE personnel have access

---

[14] Hager, *supra* note 5.
[15] *Id.*

to members' data, they violate members' privacy and perpetuate (and increase) the risk of additional harms.

Defendants cite out-of-circuit precedent for the proposition that the harms Plaintiffs' members face are not irreparable. *See* Opp. at 28–29. But they fail to grapple with the decision of another judge in this district finding nearly identical harms irreparable because they could not be rectified by money damages down the road. *See AFT*, 2025 WL 582063 at *14 (citations omitted); *see also New York v. Trump,* 25-cv-1144, 2025 WL 435411, at *1 (S.D.N.Y. Feb. 8, 2025) (finding irreparable harm in "heightened risk" that DOGE-accessed systems "will be more vulnerable than before to hacking."). Defendants' aside about damages under the Privacy Act is likewise unavailing. Opp. at 29. For "[o]nce the cat is out of the bag, it will be decidedly hard to put it back." *Earley v. Smoot*, 846 F. Supp. 451 (D. Md. 1994).

## V.      The Balance of Equities and Public Interest Both Favor an Injunction.

In addressing the final two factors, Defendants both misconstrue Plaintiffs' arguments and overstate the alleged harm they would suffer if the Court grants emergency relief. Where a party challenges unlawful government action, the government "is in no way harmed" by the issuance of an injunction, and "[i]f anything, . . . is improved." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (internal quotation marks and citations omitted); *accord* R.I.L-*R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015. Nor would the government's specific efforts to "identify fraud, waste, and abuse" be "frustrate[d]" by relief. Opp. at 30. Defendants could engage in such efforts in a way that complied with the law, *see* Ex. K, Flick Supp. Decl., at PLFS-063 ¶ 5, they have just chosen not to.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

Dated: March 13, 2025

Respectfully submitted,

*Alethea Anne Swift*

Alethea Anne Swift (Bar No. 30829)
Karianne M. Jones[*+]
Emma R. Leibowitz[*+]
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston[*+]
Carrie Y. Flaxman[^]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
kjones@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org
msamburg@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

* Admission to this Court pending
+ Admitted *pro hac vice*
^ *Pro hac vice* application forthcoming

16

**CERTIFICATE OF SERVICE**

I, Alethea Anne Swift, certify that I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, by using the CM/ECF system, which sent a notice of such filing to all registered CM/ECF users who have appeared in this case.

/s/ Alethea Anne Swift
*Counsel for Plaintiffs*