# EXHIBIT K

PLFS-061

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

**SUPPLEMENTAL DECLARATION OF TIFFANY FLICK**

I, Tiffany Flick, declare as follows:

1. My name is Tiffany Flick. I previously submitted a declaration in this case based on my nearly 30 years of experience working at the Social Security Administration ("SSA") prior to my recent retirement.

2. I have read the declarations submitted by Michael Russo and Florence Felix-Lawson in this case. I submit this supplemental declaration to clarify a few points.

3. First, the declarations of Mr. Russo and Ms. Felix-Lawson make clear that several DOGE associates are accessing SSA data systems, including those containing personally identifiable information, as detailees but without signed and finalized detail agreements. That is not in keeping with agency practice because the agency does not consider a detailee to be an employee of SSA until a detail agreement is signed and finalized.

4. Mr. Russo states that members of the DOGE Team at SSA are unable to do their work with anonymized data. Normally when analysts or auditors review agency data for possible payment issues, including for fraud, the review process would start with access to high-level,

1

anonymized data based on the least amount of data the analyst or auditor would need to know. If a subset of records within that data are flagged as suspicious, the analyst or auditor would access more granular, non-anonymized data to just that subset of files. In my experience, the type of full, non-anonymized access of individual data on every person who has a social security number or receives benefit from Social Security is unnecessary at the outset of any anti-fraud or other auditing project.  While agency anti-fraud experts would have access to the types of data that Mr. Russo describes, they also have significant training and expertise in agency programs and how to read and understand the data from agency systems.

5. Second, Mr. Russo asserts that members of the DOGE Team have a sufficient "need to know" reason for the full and non-anonymized access to SSA data systems. But the "need to know" reasons he describes are, based on my experience, far from sufficiently detailed to justify granting the level of access the DOGE Team now has. In fact, Mr. Russo states that one member of the DOGE Team was granted access to "several other databases but never accessed the data in them." That assertion cuts against the suggestion that all members of the DOGE Team have a "need to know" reason for accessing these data systems. If this employee didn't need to access the data, they didn't "need to know" it and thus should never have had access to it.

6. Third, Mr. Russo asserts that the MBR and SSR data systems "contain limited fields containing information from sources from federal tax information." In accordance with the law, whether a system has one piece of federal tax information or one hundred doesn't impact how SSA treats that system's data. It cannot be shared with non-SSA employees.

7. Fourth, Mr. Russo states that 30-40 SSA employees have similar levels of access to data systems as the DOGE Team. That may be true, but SSA is an agency of roughly 57,000 employees. Moreover, these 30-40 SSA employees, as I noted in my original declaration, are

highly skilled and highly trained. In my experience at SSA, new employees would receive more training on SSA's complex programs and systems before receiving such access. In addition, they would have a specific "need to know." As I explained in my initial declaration, I did not observe any DOGE personnel receiving the "same level of training" as other SSA employees.

8. I continue to be concerned by the DOGE Team's access to SSA data systems for the reasons discussed in my original declaration.

I declare under penalty of perjury, as prescribed in 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on March 13, 2025, in Valparaiso, Indiana

*Tiffany Flick*
Tiffany Flick