IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br> *vs.* <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

## DECLARATION OF FLORENCE FELIX-LAWSON

I, Florence Felix-Lawson, hereby declare upon penalty of perjury:

1. I am the Deputy Commissioner of Human Resources at the Social Security Administration (SSA), in Woodlawn, Maryland, and I have served in this role since November 17, 2024. I am a Career Senior Executive reporting directly to SSA's Acting Commissioner, Leland Dudek.

2. In my role as Deputy Commissioner of Human Resources, I am responsible for leading and overseeing human resource services to the agency, including but not limited to appointing and onboarding new personnel, including regular and special government employees and detailees.

3. I provide this declaration to explain the manner in which employees on the SSA DOGE teams' background investigations and clearances were determined or given reciprocal agreement from and between the Executive Office of the President (EOP) and SSA, and otherwise address the onboarding of these employees. This declaration is given specifically in explanation related to security clearances and onboarding for Employee 1, Employee 5,

1

Employee 8, and Employee 9. These statements are made with my personal knowledge, discussion with SSA staff, and review of documents and information furnished to me in the course of my official duties.

4. Employee 1, Employee 5, Employee 8, and Employee 9 have fully signed and completed agreements onboarding them as agency employees. This includes Special Government Employee (SGE) hire paperwork for Employees 1 and 9, and detailee agreements that are fully signed by both SSA and the detailing agency for Employees 5 (detailed from U.S. DOGE Service) and 8 (detailed from the Office of Personnel Management).

5. Employee 1, Employee 5, Employee 8, and Employee 9 have completed all training typically required of individuals granted access to SSA data systems. The training includes:

    a. Privacy Training covering privacy laws applicable to agency data and penalties for improper use;

    b. Ethics Training covering ethics laws applicable to agency employees; and

    c. Signed Acknowledgements of SSA Information Security and Privacy Awareness Training, covering requirements for compliance with information security and privacy policies of SSA.

6. SSA Human Resources worked closely with EOP when onboarding Employees 1, 5, 8, and 9, as most of the investigations are initiated through the Federal Bureau of Investigation (EOP's Investigative Service Provider (ISP)). SSA's process is to conduct a prescreen check based on the SF Questionnaire (SF-85) review, Declaration of Federal Employment (OF-306), resume review and education check, and NUMIDENT check

before releasing it to our ISP (Defense Counterintelligence and Security Agency (DCSA)) for a full investigation.

7. DCSA conducts a full investigation, and SSA reviews it and adjudicates it once it closes. EOP conducts a similar pre-appointment approval process; however, EOP provides an adjudication date at the time EOP approves an onboarding employee's "pre-appointment" (or, prescreen).  When EOP releases the investigation to the FBI (as EOP's ISP), they are making a pre-appointment verification and approve the individuals to work for the employing agency.  When the FBI investigation closes, SSA adjudicates the results from DCSA and makes SSA's final adjudication.  We do not have access to the FBI's database, so we frequently must contact them to by email or phone to obtain any investigation updates.

8. In this instance, SSA conducted the pre-screening for Employee 9, which he passed. EOP conducted the pre-screening for Employees 1, 5 and 8 and informed us by telephone that Employees 1, 5 and 8 had passed.  SSA does this similar pre-appointment screening when we on-board employees at SSA. All four individuals have background investigations pending—i.e., with DSCA—which have not been finally adjudicated by SSA.  Once these four SSA DOGE Team employees are adjudicated by SSA, they will be eligible to receive clearances.

9. When SSA on-boards new employes, generally the new employees do not have a fully adjudicated investigation until DCSA (for SSA) or FBI (for EOP) completes a full investigation, which normally takes months or up to a year depending upon the employee. During this time, the new employee is working and may have access to SSA's systems, including personally identifiable information.

10. Granting of reciprocity for security clearances that are of the equivalent to what SSA would require is a long-standing federal practice and supported by Federal guidance such as Executive Order 12968, Access to Classified Information (August 2, 1995); Executive Order 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information (June 30, 2008); and Executive Order 13488, Granting Reciprocity on Excepted Service and Federal Contractor Employee Fitness and Reinvestigating Individuals in Positions of Public Trust (January 16, 2009).

11. Because EOP confirmed Employees 1, 5 and 8 had passed their pre-appointment clearance, which was equivalent to the pre-appointment clearance SSA would conduct, they were permitted to access SSA records and systems necessary to perform their job duties.

12. At this time, Employee 1, Employee 5, Employee 8, and Employee 9 have completed the steps in the background investigation process that SSA would require prior to granting access to personally identifiable information.

I declare the foregoing to be true and correct, upon penalty of perjury.

Date: March 26, 2025        Signed: *Florence Felix-Lawson*

Florence Felix-Lawson
Deputy Commissioner
Human Resources
Social Security Administration