IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-00596 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR STAY PENDING APPEAL**

On March 20, 2025, this Court entered a Temporary Restraining Order restricting the Social Security Administration and related Defendants from providing DOGE Team members and affiliates "unfettered access to the SSA records of millions of Americans." Mem. Op. at 1, ECF No. 49. That TRO is the only thing keeping Defendants from resuming their well-documented fishing expedition and again "exposing personal, confidential, sensitive, and private information that millions of Americans entrusted to their government." *See id.* at 132. Defendants' request to stay the Court's grant of injunctive relief pending appeal would be "extraordinary" even in the normal course. *See Nken v. Holder*, 556 U.S. 418, 428 (2009). It is made all the more so here, where they request that the Court stay a temporary restraining order—long understood as unappealable absent the most exceptional circumstances.[1]

---

[1] Unlike preliminary injunctions, TROs may not ordinarily be appealed. *See OPM v. Am. Fed'n of Gov't Emps.*, *AFL-CIO*, 473 U.S. 1301, 1303–04 (1985). Defendants come nowhere near that showing.

Defendants do not and cannot make the showing required for the exceptional relief they seek. Accordingly, their Motion for Stay Pending Appeal (the "Motion") should be denied.

## ARGUMENT

A stay pending appeal is an "extraordinary remedy," and a party seeking such relief bears a heavy burden. *Nken*, 556 U.S. at 428, 433–34. The Court is familiar with the factors it must consider in assessing this motion, as they are analogous to the TRO factors. *See id.* at 434 (discussing the "substantial overlap" between the stay and preliminary injunction factors (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). Here, each factor weighs in Plaintiffs' favor.

**I.  Defendants are unlikely to succeed on the merits.**

A party seeking a stay pending appeal must make a "strong showing that he is likely to succeed on the merits." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Defendants cannot and do not satisfy that requirement.

Defendants' Motion relies exclusively on arguments already made in their TRO opposition. *See* Motion at 1, ECF No. 60 (asserting that Defendants are likely to succeed "[f]or the reasons stated in" their prior filing). This Court thoroughly detailed the reasons it does not find those arguments persuasive in its Memorandum Opinion, ECF No. 49. Reiterating arguments a court has previously rejected cannot constitute the "strong showing" required to prevail on this factor. *See Casa de Maryland, Inc. v. Trump*, No. PWG-19-2715, 2019 WL 7565389, at *2 (D. Md. Nov. 14, 2019) (citing *Nken*, 556 U.S. 426). Because failure to make a strong showing of likelihood of success on the merits "is fatal to a motion for stay pending appeal," *United States v. Kotzev*, No.

1:18-CV-1409, 2022 WL 706949, at *3 (E.D. Va. Mar. 9, 2022) (citing *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)), Defendants' motion is dead on arrival.

## II. Leaving the TRO in place will not injure Defendants.

Defendants must also demonstrate that they will be irreparably injured absent the requested relief. *Nken*, 556 U.S. at 434. Here, too, Defendants fail. Leaving the TRO in place does not risk any injury—much less irreparable harm—to Defendants.

Defendants contend that "the preliminary injunction [sic] causes direct irreparable injuries to the government and the public" by (1) hindering SSA's anti-fraud efforts and (2) infringing on the President's authority to direct agency employees. Motion at 4, ECF No. 60. Both claims are unsupported, and neither justifies the extraordinary relief Defendants seek. At bottom, Defendants' quarrel appropriately lies not with the TRO but with the Privacy Act. However, unfortunate as Defendants may find it, "[t]he President's advisors and employees are not exempt from the statutes Congress enacted to protect American citizens from overbroad and unnecessary access to their PII." Mem. Op. at 132, ECF No. 49.

### A. Defendants have not shown that the TRO hinders anti-fraud efforts.

Defendants first assert that the TRO "harms the agency's operations by halting ongoing efforts to detect and eliminate fraud." Motion at 4, ECF No. 60. They do not explain why such efforts could not proceed using redacted or anonymized data, which the TRO expressly permits, TRO ¶ 2, ECF No. 48, and which Plaintiffs have explained (and Defendants have not rebutted) is the standard anti-fraud practice at the agency, *see* Ex. K, Suppl. Flick Decl., at PLFS-062 ¶ 4, ECF No. 39-1. Even the cursory "Notice of Compliance with Paragraphs 2-3" Defendants filed the day after their Motion to Stay, ECF No. 62, does not clarify "why there is any need to disclose PII

3

before there is a basis to believe that fraud has occurred." *See* Letter Order at 2, ECF No. 64. Nor do Defendants suggest that the pathway the TRO identifies for securing access to non-anonymized data is unworkable. Rather, Acting Commissioner Dudek merely alleges that ensuring compliance with the TRO requires "a substantial amount of time" from Administration leadership. Dudek Decl. ISO Mot. ¶ 8, ECF No. 60-1. That claim is belied by, among other things, Defendants' failure to seek clarification of the scope of the order, *cf.* ECF Nos. 51, 52.

Even if Defendants' anti-fraud efforts were temporarily limited, "[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough" to constitute irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The party seeking a stay pending appeal bears the burden of demonstrating *irreparable* harm if the stay is denied. Defendants' initial declination of this Court's invitation to "seek to provide SSA DOGE Team Members with access to 'discrete, particularized, and non-anonymized data' as permitted under the conditions contained in paragraph 3 of the [Temporary Restraining] Order," Defs.' Certification of Compliance at 3, ECF No. 56, undercuts any subsequent argument regarding irreparability. Moreover, Defendant Dudek yesterday stated that the SSA DOGE Team's current pursuits are things SSA has been considering for years but "has never gotten around" to doing. Transcript of Emergency Telephone Conference at 10:20–23, ECF No. 67. Defendant Dudek's testimony is elucidating—and dispositive. Leaving the TRO in place does not risk any injury to Defendants, much less irreparable harm.

### B. The TRO does not substitute judicial judgments for those of the Executive Branch.

Defendants' second theory of irreparable harm is a warmed-over repetition of their arguments in opposition to Plaintiffs' motion for a temporary restraining order. This Court has already determined that its injunction poses no risk of "substituting judicial judgments for those of the executive branch." *See* Mem. Op. at 91, ECF No. 49 (quoting *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 432 (4th Cir. 2019)). Defendants' other argument on this point—that the TRO "curtails" management of the Executive Branch's day-to-day operations, Motion at 4— is also one that this Court has rejected. *See* Mem. Op. at 100 (finding final agency action), 131–32 (assessing the balance of equities), ECF No. 49.

### III. Staying the TRO would substantially harm Plaintiffs' members.

Defendants must show that "issuance of the stay will not substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. They cannot.

Staying the TRO would allow Defendants to proceed as they did previously—unlawfully and with utter disregard for the privacy interests of Plaintiffs' members and millions of Americans. It would allow Defendants to misuse sensitive personal information, potentially transmitting it to other agencies,[2] running it through artificial intelligence,[3] or otherwise using it in a manner to which Plaintiffs' members did not consent.[4] With regard to data, "[o]nce the cat is out of the bag,

---

[2] Sam Sabin, *New Trump order pours gasoline on DOGE's data quest*, Axios (Mar. 25, 2025), https://perma.cc/2X66-KF26 (reporting on a recent executive order "compel[ling] federal agencies to tear down internal barriers to sharing government data" in what experts warn is an attempt to "sidestep longstanding privacy laws").
[3] Hannah Natanson et al., *Elon Musk's DOGE is feeding sensitive federal data into AI to target cuts*, Wash. Post (Feb. 6, 2025), https://perma.cc/9PJM-GMXD.
[4] The Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records . . . to any person, or to another agency" absent written authorization from the individual to whom the record pertains. 5 U.S.C. § 552a(b).

it will be decidedly hard to put it back." *Earley v. Smoot*, 846 F. Supp. 451, 452 (D. Md. 1994). Staying the TRO would let the proverbial cat run with abandon.

Defendants' only argument on this point is that "other courts . . . in cases addressing similar issues" have not found irreparable harm. Motion at 3, ECF No. 60. Defendants support that statement by referencing cases cited in their opposition to Plaintiffs' motion for a temporary restraining order. *Id.* at 4. But this Court has already distinguished those cases and, like other jurists, determined that Defendants' "invasion of privacy of plaintiffs' members" cannot be rectified by money damages and is therefore irreparable. Mem. Op. 129–30, ECF No. 49; *see also Am. Fed'n of Tchrs. v. Bessent*, Civ. No. DLB-25-0430, 2025 WL 582063, at *13 (D. Md. Feb. 24, 2025).

The harm Plaintiffs would suffer upon a stay of the TRO is nonspeculative. Defendants made clear in their Status Report and Certification, ECF No. 56, that only "while the Court's order remains in effect" will Defendants comply with baseline security practices, such as requiring that anyone accessing SSA data complete requisite training, pass a standard background check, and can be properly considered an employee of the agency. *Id.* at 2–3. Only "in light of the Court's order" will SSA not "seek to provide" DOGE Team members and affiliates with PII in violation of the Privacy Act. *See id.* The "Notice of Compliance" Defendants filed yesterday, which left the Court three hours to address SSA's intention to give DOGE affiliates unauthorized access to PII,[5] underscores the harm that would swiftly attend any stay of the TRO.

---

[5] The TRO provides that members of the DOGE Team may only be given access to "discrete, particularized, and non-anonymized data" if (1) the scope of that access accords with the Privacy Act, and (2) SSA "obtain[s] from the DOGE Team member, in writing, and subject to possible review by the Court, a detailed explanation as to the need for the

Finally, Defendants overlook that the Fourth Circuit is not required to decide the merits of the appeal by any particular date. A stay pending a ruling by the appellate court—on some unknown date—could leave Plaintiffs' members unprotected for months. Each day that Defendants unlawfully disclose Plaintiffs' members PII exacerbates the attendant harm. As this Court has already noted, "what is critical here is the irreparable harm associated with defendant's *ongoing*, unprecedented, unfettered access to the income history, tax return data, and medical information of millions of Americans." Mem. Op. at 128–29, ECF No. 49.

## IV.  Staying the TRO would be detrimental to the public interest.

Defendants likewise fail to demonstrate that granting a stay would be in the public interest. Nor can they. As this Court affirmed, the public is gravely harmed by the disclosure of confidential personal identifying information, particularly that which is prohibited by law. *Id.* at 131 (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). While "rooting out possible fraud, waste, and mismanagement" in SSA programs is in the public interest, the government "may not flout the law to do so." Mem. Op. at 132, ECF No. 49.

## CONCLUSION

A stay is "an exercise of judicial discretion," and "the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (cleaned up). Defendants have not made the substantial showing necessary to justify such extraordinary relief. The Court should deny their Motion for Stay Pending Appeal.

---

record and why, for said particular and discrete record, an anonymized or redacted record is not suitable for the specified use." TRO ¶ 3, ECF No. 48. Neither of the declarations submitted with the "Notice of Compliance" attest that any of the employees to whom the filing pertains have submitted any such explanation.

Dated: March 28, 2025

Respectfully submitted,

*/s/ Alethea Anne Swift*
Alethea Anne Swift (Bar No. 30829)
Karianne M. Jones[*+]
Emma R. Leibowitz[*+]
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston[*+]
Carrie Y. Flaxman[+]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
kjones@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org
msamburg@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

\* Admission to this Court pending
+ Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Alethea Anne Swift, certify that I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, by using the CM/ECF system, which sent a notice of such filing to all registered CM/ECF users who have appeared in this case.

/s/ Alethea Anne Swift
*Counsel for Plaintiffs*