# EXHIBIT B

Case 1:25-cv-00596-ELH   Document 77-2   Filed 03/31/25   Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-00596 |

### DECLARATION OF ANN LEWIS

1.  I am the former Director of the Technology Transformation Services ("TTS") within the U.S. General Services Administration. I have a degree in computer science from Carnegie Mellon University. I have worked in tech for over 20 years, and as a technology leader for over 12 years, including roles as Chief Technology Officer at a national nonprofit organization, and as a software engineer for a multi-billion-dollar company.

2.  I have reviewed the Notice of Compliance filed by Defendants on March 27, 2025, and the declarations submitted by Leland Dudek on March 27 and March 28.

3.  Mr. Dudek's argument claiming that working with anonymized data is not feasible is not technically sound for a variety of reasons.

4.  Many fraud detection systems use advanced analytics, behavioral patterns, and anomaly detection techniques that work on pseudonymized or aggregated data. My understanding is that SSA already has a multiple-stage process for this type of work wherein the project is split into different phases: data inaccuracy detection and fraud detection, error-checking, and updating of

individual-level records. The final phase, updating of individual-level records, must follow sufficient error-checking and executive sign-off.

5.    Mr. Dudek described that complex, multi-stage process at the March 27, 2025, status conference in this case, when he discussed cross-sampling and cross-matching different pieces of data.

6.    The description of complex, multi-stage processes for fraud detection indicates SSA has existing processes and teams that already do both fraud detection work and individual record updates, which does not support the case for Employees 1, 5, 8, and 9 to get access to the high level of non-anonymized data that Mr. Dudek plans to give them, simply because they are 'working on individual cases' or 'the project involves updates to individual-level records'

7.    Nor do Mr. Dudek's references to new SSA projects support his request to give Employees 1, 5, 8, and 9 the intended high level of non-anonymized data. New systems, new fraud models, and new databases that aid in identifying fraud would first need an Authorization to Operate ("ATO") review process, and a Privacy Impact Assessment (PIAs), per NIST SP 800-37 and NIST SP 800-53.  Through my work leading TTS, I became aware of the Federal Information Security Management Act (FISMA) https://www.congress.gov/bill/113th-congress/senate-bill/2521/text , and NIST's SP 800-53 Security and Privacy Controls for Information Systems and Organizations https://csrc.nist.gov/pubs/sp/800/53/r5/upd1/final. FISMA is a US law that protects government information and operations, and NIST 800-53 is a cybersecurity framework that provides a comprehensive set of security and privacy controls for federal information systems and organizations.

8.    Based on my professional experience, including my time at the General Services Administration and conversations I have had with peers familiar with SSA's data systems, SSA's

attempt to give DOGE and its affiliates such a high level of access suggests that they are circumventing existing SSA anti-fraud mitigation, resolution, and auditing processes.

I declare under penalty of perjury, as prescribed in 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on March 30, 2025, in Washington, D.C.

*Ann Lewis*
Ann Lewis