IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AMERICAN FEDERTION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*<br><br>*Defendants*. | Civil Action No. ELH-25-0596 |

**MEMORANDUM AND ORDER**

The Court issued a Temporary Restraining Order on March 20, 2025. ECF 48 ("TRO"). On March 24, 2025, the government noted an appeal of the TRO to the Fourth Circuit. ECF 57. The Fourth Circuit dismissed the appeal on April 1, 2025, based on lack of jurisdiction. ECF 81 (Order); ECF 82 (Judgment); ECF 83 (Corrected Order).

In the interim, on March 26, 2025, defendants filed with this Court a Motion for Stay Pending Appeal. ECF 60. Several hours later, defendants also moved for a stay in the Fourth Circuit. *See* Case No. 25-1291, Docket Entry No. 5. By Memorandum (ECF 78) and Order (ECF 79) of March 31, 2025, I denied the Motion for Stay.

At approximately 10:00 a.m. on March 27, 2025, the government filed a "Notice of Compliance with Paragraphs 2-3" of the TRO, claiming that, as to four DOGE Team members, it has satisfied the criteria set by the Court for access to personally identifiable information ("PII") in SSA's data systems. ECF 62 ("Notice"). The Notice is supported by two exhibits: (1) the Declaration of Leland Dudek, Acting Commissioner of the Social Security Administration

1

("SSA") (ECF 62-1); and (2) the Declaration of Florence Felix-Lawson, Deputy Commissioner of Human Resources for SSA (ECF 62-2).

In addition, the Notice advised the Court that SSA intended to provide the four DOGE employees with access to SSA data systems at 1:00 p.m. on March 27, 2025, unless it heard otherwise from the Court. ECF 62 at 3.[1] These employees, whose identities remain unknown, are referenced as Employees 1, 5, 8, and 9. Upon review of the Notice, I convened an emergency telephone hearing, which began at 12:16 p.m. on March 27, 2025. *See* ECF 63; ECF 73 (Tr., 3/27/25). Mr. Dudek participated in the emergency hearing. After the hearing, Mr. Dudek submitted a Supplemental Declaration. ECF 74-1 ("Supplemental Declaration").

In accordance with a briefing schedule set by the Court during the telephone conference (*see* ECF 64), plaintiffs filed an opposition to the Notice on March 31, 2025. ECF 77 ("Opposition"). The Opposition is supported by the Declaration of "Alex Doe," a former Digital Services Expert at the United States Digital Service (ECF 77-1), and the Declaration of Ann Lewis, former Director of the Technology Transformation Services within the U.S. General Services Administration (ECF 77-2).

Defendants replied on April 1, 2025. ECF 80 ("Reply").[2] The Reply is supported by another Declaration from Mr. Dudek. ECF 80-1 ("Second Supplemental Declaration").

---

[1] Fortunately, when the Notice was docketed, I was not on the bench and saw the filing. But, I easily could have been handling other matters, and thus would not have seen ECF 62 when it was docketed. Therefore, I remind the government that it is the Court that sets deadlines with respect to the TRO. *See* ECF 73 (Tr., 3/27/25), at 15, 20.

[2] In the Reply, defendants state that Mr. Dudek has provided "live testimony." ECF 80 at 2, 3. To be clear, the Court had little preparation time on March 27, but posed a handful of questions to Mr. Dudek at the hearing. However, Mr. Dudek was not under oath, nor was he cross-examined by plaintiffs' counsel.

The Notice implicates paragraphs two and three of the TRO. They state, ECF 48, ¶¶ 2–3 (emphasis added):

> 2. This Order does not preclude SSA from providing members of the DOGE Team with access to redacted or anonymized data and records of SSA. However, no data shall be provided unless and until the persons to whom access is to be provided have received all training that is typically required of individuals granted access to SSA data systems, including training regarding federal laws, regulations, and policies governing the privacy of PII; a background investigation is completed, comparable to the quality of background investigation conducted for SSA employees whose duties involve access to PII; detailing agreements are completed for any individual who is assigned to the DOGE Team from another agency; and all required Agency paperwork is completed, including execution of the SSA documents acknowledging the Systems Sanctions Policy and the duty to protect PII.
>
> 3. SSA may provide members of the DOGE Team with access to discrete, particularized, and non-anonymized data, in accordance with the Privacy Act, and in accordance with the conditions set forth herein: SSA must first comply with the provisions in ¶ 2 of this Order and, in addition, *SSA must first obtain from the DOGE Team member, in writing, and subject to possible review by the Court, a detailed explanation as to the need for the record and why, for said particular and discrete record, an anonymized or redacted record is not suitable for the specified use.* The general and conclusory explanation that the information is needed to search for fraud or waste is not sufficient to establish need.

As mentioned, in the Notice the government "inform[ed] the Court that four employees of the [SSA] who are members of the agency's DOGE Team now satisfy the criteria for data access established in paragraphs 2 and 3 of the Court's [TRO]." ECF 62 at 1. They are designated as Employee 1, Employee 5, Employee 8, and Employee 9. *See id.*; *see also* ECF 62-2. Further, Acting Commissioner Dudek avers that these four DOGE Team Employees require access to PII in SSA records. ECF 62-1, ¶¶ 3, 4. He explains that Employees 1 and 9 are working on the "Are You Alive Project" (*id.* ¶ 9); Employee 5 is working on the "Death Data Clean Up Project" (*id.* ¶ 10); and Employee 8 is working on the "Fraud Detection Project." *Id.* ¶ 11.[3]

---

[3] A recent news article reports that DOGE plans to rebuild SSA's code base. Makena

According to Acting Commissioner Dudek, the Enterprise Data Warehouse ("EDW") contains "hundreds of schema levels", and each "contains different data types. *Id.* ¶ 6. He posits that "*permission* to access the data" does not mean that an employee will "*see* all those records." *Id.* (emphasis in ECF 62-1). He also explains that an employee with access "must specifically search for relevant records in a schema for the records to be viewable." *Id.*; *see also id.* ¶ 8 ("[A]n SSA employee viewing an EDW schema will not have the ability to view data under the schema absent a search for that specific information.").

In his Declaration, Acting Commissioner Dudek represents that Employees 1 and 9, assigned to the Are You Alive Project, "are working on individual cases . . . ." ECF 62-1, ¶ 9. He claims that, for those cases, "data anonymization" would be "impracticable." *Id.* Employee 5 is assigned to the Death Data Clean Up Project, which "involves updates to individual-level records," and therefore "anonymization is not feasible." *Id.* ¶ 10. As to Employee 8, assigned to Fraud Detection, Mr. Dudek avers, *id.* ¶ 11: "The project involves looking for patterns of fraud in these files on an individual case level. Anonymization is not feasible because it could obscure information useful for identifying fraud . . . ."

During the hearing on March 27, 2025, the Court sought to ascertain from Mr. Dudek whether the DOGE Team would be conducting "a focused search" or, instead, "a search of the records of millions of Americans." ECF 73 at 13; *see id.* at 12. For example, with respect to the

---

Kelly, *DOGE Plans to Rebuild SSA Code Base in Months, Risking Benefits and System Collapse*, WIRED, (March 28, 2025) available at https://perma.cc/3C6W-WXGY. And, according to the article, the "Are You Alive Project" is connected with those plans. *Id.* The article states that the code rebuilding project may put the "benefits on which tens of millions of Americans rely . . . at risk." *Id.* Specifically, the article raises concerns over the speed with which DOGE plans to complete this undertaking. *Id.* According to the article, in 2017 SSA predicted that the project would take about five years. *Id.* Yet, DOGE intends to complete it in a matter of months. *Id.*

Are You Alive Project, the Court asked Mr. Dudek, *id.* at 8–9: "[I]s this a search that is based on and narrowed to a group where based on . . . what you have as to the dates of birth there would be reason to question whether they're still alive, as opposed to searching everybody's records?" Mr. Dudek's answer was not entirely clear to the Court. *See id.* at 9–10. Thus, I continued, *id.* at 10: "So is it accurate to say that it's a narrow search of only a discrete group of people who fit the description possibly, based on information that SSA has as to date of birth, . . . wouldn't likely be alive?" Mr. Dudek responded, *id.*: "Yes, ma'am. That's correct."

In general, Acting Commissioner Dudek denied that the work involves a search of the records of millions of Americans. He said, *id.* at 12: "This is a narrow search." He added, *id.* at 13: "It is not searching records of millions of Americans."

The Court also questioned Mr. Dudek as to ¶ 11 of his Declaration (ECF 62-1), which pertains to Employee 8 and the Fraud Detection Program. ECF 73 at 13–14. Specifically, I asked Mr. Dudek about his claim that "anonymization isn't feasible" for that project "because it would obscure information . . . ." *Id.* at 14. Mr. Dudek indicated that ¶ 11 of his Declaration does not accurately reflect "what [he] meant." *Id.* Therefore, at the direction of the Court (ECF 64), Mr. Dudek submitted the Supplemental Declaration. ECF 74-1.

In his Supplemental Declaration, Mr. Dudek clarified that "Employee 8 plans to work with non-DOGE Team SSA employees in order to retrieve anonymized, aggregated data for the Fraud Detection Project, in order to look for anomalies that may be indicative of fraud." *Id.* ¶ 8. According to Mr. Dudek, Employee 8 only "needs access to discrete individual data . . . when anomalies are identified, in order to detect fraud in specific instances." *Id.* Further, Mr. Dudek avers that the "non-DOGE Team SSA employees" create "anonymized aggregate data sets" from eighteen EDW schema. *Id.* ¶ 8(a). Then, Employee 8 "would only directly access individual

5

records from a small subset of these schema when a case-specific anomaly is indicated." *Id.* ¶ 8(b).

As indicated, Mr. Dudek asserts that DOGE Employees 1, 5, 8, and 9 require non-anonymized access to SSA systems of record, but he identified schema that were not previously disclosed to the Court. Previously, in opposing plaintiffs' TRO Motion, the government only addressed access to SSA's MBR, SSR, Numident, and EDW systems, as well as SSA's Master Earnings File and Treasury Payment Files. *See, e.g.*, ECF 36-1 (Declaration of Michael L. Russo, Chief Information Officer at SSA), ¶¶ 7, 8, 9, 10, 11, 12. But, in Mr. Dudek's Declaration of March 26, 2025 (ECF 62-1), he states, *id.* ¶ 9: "The data schemas to which these employees need access for this Project are Numident, MBR, SSR, PROME, PCHIP, PVIP, and PVIPR schemas." The identification of schema that were not previously disclosed or addressed is of concern to the Court. Of import, no explanation has been provided as to the specific nature or content of these schema.

Significantly, defendants did not submit with the Notice any written explanation provided to SSA by any of the four DOGE employees, explaining the need for access to non-anonymized data, as required by paragraph 3 of the TRO. Plaintiffs raised the issue (ECF 77 at 4), but defendants did not address this argument in the Reply. *See generally* ECF 80. This is a glaring omission.

The TRO expressly provides that the required written statements by the SSA DOGE Team contemplated in ¶ 3 are "subject to possible review by the Court . . . ." ECF 48, ¶ 3. In order to resolve the government's request, the Court believes that it is necessary to the Court's analysis to review the written submissions of the SSA DOGE Team members, explaining the scope of each data request and the need for access to non-anonymized records to complete their respective

projects.

Accordingly, by **noon on April 7, 2025**, the government is directed to file with the Court the written submissions provided to SSA by DOGE Employees 1, 5, 8, 9, setting forth the "need" for access to non-anonymized data contained in the eight schema identified by Mr. Dudek in order to conduct the "Are You Alive Project", the "Death Data Clean Up Project", and the "Fraud Detection Project."

In the event that the written statements do not exist, the Court expects counsel to advise the Court accordingly. On the assumption that the written statements were provided to SSA, the government may file the statements under seal, but only if they contain confidential information. For purposes of this Memorandum and Order, the term "confidential information" shall have the meaning set forth in paragraph three of the Proposed Protective Order (ECF 84-1). However, the government shall provide copies of all filings to plaintiffs' counsel, who are, until further notice, subject to the Proposed Protective Order. *See* ECF 84-1. And, in the event that the written statements contain confidential information, the government shall file a redacted version of each submission on the public docket.

It is so **ORDERED** this 2nd day of April 2025.

                                                                                /s/
                                            Ellen Lipton Hollander
                                            United States District Judge