# EXHIBIT I

PLFS-099

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

## SECOND SUPPLEMENTAL DECLARATION OF TIFFANY FLICK

I, Tiffany Flick, declare as follows:

1. My name is Tiffany Flick. I previously submitted declarations in this case based on my nearly 30 years of experience working at the Social Security Administration ("SSA") prior to my recent retirement.

2. SSA has production data as well as systems with copies of these data for management purposes. Production data refer to live case or beneficiary information housed in a system of record like, for example, the Master Beneficiary Record ("MBR"). Whereas, data accessed through the Enterprise Data Warehouse ("EDW") for analysis, reporting, or managing the agency's workloads, contains a copy of system-of-record data.

3. SSA has a very controlled process for allowing its employees and other personnel to access personally identifiable information ("PII") and for identifying the "need to know" to access such information. The processes are governed by the Privacy Act and regulations, and are laid out in agency policies, such as the Information Systems Security Handbook

4.  The agency's policy and procedures follow a "need to know" and "least privilege" method for granting access, which means that people are permitted to access only the lowest amount of information that will allow them to accomplish their jobs. Operating with least privilege access is common practice in data security. Access to any sensitive information is only available to someone with a job duty that requires that access, and this method of granting access applies to all agency systems and data, including the MBR, Supplemental Security Income Record, Numident, Master Earnings File, and to any mechanism through which one can access data (for example, through both the EDW and via direct access to systems of record like the MBR).

5.  For example, the former Office of Analytics, Review, and Oversight included an Office of Program Integrity, which managed SSA's anti-fraud work and contained two components that separated the duties within the anti-fraud work: the fraud analytics team, which examined SSA data for patterns of fraud; and the fraud investigations team, which probed specific instances of fraud referred by the analytics team. Employees in each of these components had access to different levels of data.

6.  The analytics team (comprised of data scientists, mathematicians, and statisticians) looks for patterns and thus needs access to less granular information. They look for a pattern by using structured query language to determine, for example, a list of Social Security Numbers ("SSNs") associated with dates of birth before 1920.

7.  By contrast, the certified fraud investigators in the investigations component need more specific information. For example, to examine an instance of direct-deposit fraud, they need to review specific data on an individual's MBR (such as the history of changes to routing number or contact information). They access that detailed data through the EDW and search for those details by SSN.

8. When determining whether an individual employee has a defined business need for accessing PII, SSA considers factors including the type of work that person will do (e.g., fraud analytics versus fraud investigations); the means through which they will access data (i.e., through EDW or via direct access to production data); and the way in which one will interact with that data (i.e., read-only access versus write access).

9. Access to and editing of production data is audited, meaning there is a recorded, detailed history of access that is subject to examination.

10. Changes to production data are made either through programmatic systems used by the front-line employees who work in local Social Security offices to process benefits or update Social Security records for the public or through "batch jobs," which are programs written by IT programmers (or software engineers) to update production systems or data. Batch jobs are subject to extensive process controls, including multiple layers of testing, integration, and data validation.

11. Due to SSA's requirement to utilize a separation of duties, generally programmers who write code to update programmatic systems that affect benefit payments or maintenance of Social Security records do not have access to update or "write" to production systems or data. However, if there is an emergency business need that requires an IT programmer (or software engineer) to update a programmatic system or data, they must make a special request with justification, and would have time-limited access, which would only be provided on an "emergency" basis and last for the duration of the specific action but no longer than 24 hours.

12. The access to PII that employees working on IT or fraud efforts have is very different from the access that front-line workers have. Front-line staff do not have the ability to conduct broad queries on SSA data (e.g., "everyone born before 1920"), nor do they have access to the entire EDW. Rather, front-line workers can generally only access data by searching individual SSNs. In

3

addition, they generally can only update data on one SSN at a time based on the workload handled by their office.

13. The CIO's office closely monitors access to and editing of production systems and data to ensure that access is only granted and used for specific, necessary purposes germane to the work an individual employee is doing. That is true regardless of who, and from which office, one is seeking access.

14. Access to the EDW is also recorded through an audit trail. An employee seeking access to data in the EDW must submit a request explaining the scope of access they seek and their need for the covered data. Those requests are adjudicated by the person's supervisor and the team that oversees the EDW, and the granting or denial of access is recorded in the system and available to view.

15. SSA also has protocols governing employees' suitability to access PII, including requisite background checks and clearance levels. These protocols are outlined in the agency's Personnel Policy Manual and the Administrative Instruction Manual System.

I declare under penalty of perjury, as prescribed in 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on April 4, 2025, in Valparaiso, Indiana.

_____
Tiffany Flick