# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> *vs.* <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM[1]

As directed by the Court, ECF 116, Plaintiffs file the following supplemental memorandum assessing the import to this case of the non-precedential concurrences issued by members of the Fourth Circuit yesterday in *American Federation of Teachers v. Bessent*, Appeal No. 2501283, Docket Entry No. 17 [hereinafter, "*Bessent* Appeal"].[2] For the reasons explained below, the *Bessent* order and concurrences are of minimal import to this case.

To start, no conclusive majority of the Fourth Circuit agreed with the concurrences issued by Judges Agee and Richardson. Second, Judge Boardman's opinion—and thus Judge Agee's and Richardson's concurrences—did not reach the *Bessent* plaintiffs' arbitrary and capricious claim.

---

[1] This memorandum does not cover the many additional reasons why Defendants' Request for Reconsideration, ECF 117, should be denied. Plaintiffs intend to file a response to that motion within seven days (or whatever timeline this Court deems appropriate).

[2] At the hearing before this Court on Friday, April 4, 2025, regarding the parties' dispute over a protective order in this case, the Court indicated that *Bessent* had "the same lawyers on both sides." Hearing Tr. at 3:2-5, ECF 115. For the avoidance of doubt, Plaintiffs note that none of the attorneys representing them in this case represent the American Federation of Teachers (or any other plaintiff) in *Bessent*.

Third, record evidence in this case meaningfully differs from the facts currently in the *Bessent* record. Finally, the *Bessent* appeal concurrences have no bearing on the Temporary Restraining Order currently in place.

**I.        The concurrences of Judges Agee and Richardson are not binding on this Court.**

It is helpful to lay out for the Court some specifics of yesterday's decision in *Bessent*. In assessing the motion for a stay pending appeal,  six judges on the Fourth Circuit concluded that Judge Boardman "got it right." *Bessent* Appeal at 17, 20 (King, J., concurring). Only a "bare majority" of that Court voted to not initially hear the case en banc, and Judge Wynn described the case as involving the "*illegal* intra-governmental disclosure of highly sensitive personal information." *Id.* at 23 (emphasis added). In contrast, Judge Agee's concurrence was joined only by Judge Richardson, and Judge Richardson's concurrence was joined only by Judge Agee.[3] There is no reason to consider those concurrences binding or even to conclude that the Fourth Circuit, or a panel thereof, would reach the same conclusion with respect to this case.

**II.        Unlike the district court in *Bessent*, this Court ruled that Plaintiffs are likely to succeed on their arbitrary and capricious claim.**

The decision granting a preliminary injunction in *Bessent*—and, thus, the Fourth Circuit concurrences—did not reach plaintiffs' claim that the *Bessent* defendants' actions were arbitrary and capricious in violation of the Administrative Procedure Act. *See generally American Federation of Teachers, et al., v. Bessent, et al.*, 25-DLB-0430, 2025 WL 895326, at *28 n. 28

---

[3] Plaintiffs respectfully disagree with the probabilistic approach to likelihood of success on the merits taken by Judge Richardson, *see Bessent* Appeal at 8–9 (Richardson, J., concurring). This mechanism of review would, if adopted, swallow the Fourth Circuit's clear instruction that a Plaintiff "need not establish a certainty of success," *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (cleaned up), to obtain a preliminary injunction. But even if this Court does adopt Judge Richardson's approach, the range of Plaintiffs' claims here (under the Privacy Act, the Tax Reform Act, the Social Security Act, and the APA) make success on the merits highly more likely.

(D. Md. March 24, 2025) [hereinafter, "*Bessent* PI"]. In contrast, this Court previously concluded that Plaintiffs are likely to succeed on the merits of that claim, ECF 49, at 128–129, and Plaintiffs' preliminary injunction briefing includes further argument on that point, *see* ECF 111-1, at 25–29.

Moreover, the record continues to fill with relevant evidence on this point. *See, e.g.*, Escobar-Alava Decl., ECF 111-10, PLFS-096–PLFS97 ¶ 3 (explaining that, under the principle of "least privilege access" followed by SSA, "[d]ata should be sanitized or anonymized wherever possible"); *id.* at PLFS097 ¶ 6 (confirming that completed SSA background checks are required before granting access to the data DOGE seeks, "even when someone already has clearance from the White House or another agency"); Doe Decl., ECF 111-12, PLFS-105 ¶¶ 3–4 (evidencing same); Escobar-Alava Decl., ECF 111-10, PLFS-096–PLFS-097 ¶ 7 ("[S]tandard practice would be to (1) grant DOGE Team members access to the data they sought in a 'sandbox' environment with anonymized data, and (2) refuse requests for write-access and access to SSA source code."); Flick Decl., ECF 111-11, PLFS-101 ¶ 5–7 (explaining that SSA traditionally separates fraud analytics from fraud investigations and that employees in those respective roles had "access to different levels of data" before DOGE's arrival at the agency); *id.* at PLFS-102 ¶ 11 ("[P]rogrammers who write code to update programmatic systems that affect benefit payments or maintenance of Social Security records do not have access to update or 'write' to production systems or data . . . .").

### III.    The evidence in this case meaningfully differs from the facts currently in the *Bessent* record.

#### A.    Plaintiffs have standing to pursue their claims against SSA.

Judges Agee and Richardson's concurrences both interrogate the applicability of the common-law tort of intrusion upon seclusion to the *Bessent* plaintiffs' claims. Judge Agee

emphasizes that intrusion upon seclusion involves "some sort of interjection into the private sphere," which he alternatively describes as "intrusion into an individual's private space." *Bessent* Appeal at 5 (Agee, J., concurring) (citations omitted). But the tort, as this Court knows, traditionally refers to intrusions not just into the home but also into "private affairs or concerns." Restatement (Second) of Torts § 652B (1977) (October 2024 update) ("Restatement"). Judge Richardson, for his part, notes that "[p]rying eyes and probing fingers can be as disquieting when aimed at one's private affairs as when aimed at one's private bedroom," but characterizes the relevant harm as "the knowledge that a third party is engaged in targeted snooping. *Id.* at 11 (same).

At first blush, these conclusions—though non-precedential, and thus not necessary for this Court to adopt—seem dispositive with respect to Plaintiffs' standing. For the reasons stated below, they are not.

**First,** record evidence in this case leaves no question that Defendants' actions cause Plaintiffs "unease." Judge Richardson was careful to note that "intrusion upon seclusion has long been understood to guard not against the disclosure of sensitive information as such, but against the feeling of unease when and where one should ideally be at peace." *Bessent* Appeal at 10 (emphasis added). Record evidence makes clear that Plaintiffs feel just that type of "unease," as was reflected in this Court's TRO opinion and as further elucidated by recent declarations of Plaintiffs' members. For example, one AFSCME member's declaration reads:

> SSA permitting DOGE to access the sensitive information about me contained in their systems is a severe violation of my trust and an invasion of my privacy and person. As a survivor of sexual assault, I know what that feels like. In the past few months, as I've watched Elon Musk and his DOGE team run rampant at government agencies, including SSA, I have felt an eerie déjà vu. Who are these people? How can they do this to me? What right do they have?

Conard Decl., ECF 111-4, PLFS-075 ¶ 4. AFT member David Gray, meanwhile, says the information he was compelled to share with SSA is "almost like [his] DNA." Gray Decl., ECF 111-8, PLFS-089 ¶ 3. And ARA member Linda Somo explains the "horrible feeling" associated with Defendants' actions as "almost like someone breaking into my house and stealing stuff." Somo, ECF 111-6, PLSF-082 ¶ 9.

*Second,* evidence shows that SSA DOGE Team members are acting as "detectives." In this case, record evidence shows that the harms Plaintiffs suffer is far more similar to "the harm inflicted by reporters, detectives, and paparazzi" than what Judge Richardson characterizes as "[t]he harm that might come from granting database access to an additional handful of government employees." *Bessent* Appeal at 11-12. Here, evidence shows that the SSA Defendants granted unprecedented data access to some members of the DOGE Team who could not, at the time, properly be considered "employees," and that the SSA Defendants granted that access without adhering to the agency's least-privilege and segregation-of-duty requirements or satisfying the usual requirement of adjudicated, SSA-specific background checks. Moreover, Defendants have admitted that DOGE Team members at SSA "are working on individual cases and may be reaching out to individuals in connection with those cases." Dudek Decl. at 4 ¶ 9, ECF 62-1. The district court's opinion in *Bessent* does not consideration of such evidence.

*Third,* the Fourth Circuit has previously recognized an individual's right to privacy in their medical records, which was not addressed in *Bessent.* Finally, the district court's *Bessent* opinions address the relevance of medical information only in passing references to other cases and the Privacy Act itself. *See, e.g.*, Bessent TRO Mem. Op. at 20, 30, 31; *Bessent* PI Mem. Op. at 39, 63. Here, as this Court noted in its TRO opinion, many of Plaintiffs' members must submit to SSA "extensive medical information, including details about the prescription and non-prescription medicines the applicant takes; lists of their healthcare providers and the medical conditions for which

they were evaluated and treated, including mental health conditions; and other sensitive medical information." TRO Mem. Op. at 129 (quoting Widger Decl., ECF 22-1); *id.* at 131-32 ("[W]hat is critical here is the irreparable harm associated with defendants' ongoing, unprecedented, unfettered access to the income history, tax return data, and medical information of millions of Americans."); 86-87 (discussing "the expectation of privacy in medical records that is engrained in our culture" and quoting cases regarding HIPAA and the psychotherapist-patient privilege). The Fourth Circuit has already recognized a patient's expectation of privacy in similar circumstances. *Compare id.* at 17 (noting that SSA data includes "addiction treatment records"), *with Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000) (addressing 4th Amendment expectations of privacy).

### B.  Plaintiffs adequately allege a final agency action.

Judge Richardson, joined by Judge Agee,[4] cast "doubt[]" on whether the *Bessent* district court, on the record before it, could deem the relevant agency actions "final agency actions" for purposes of APA justiciability. *Bessent* Appeal at 13 (Richardson, J., concurring). But the SSA Defendants' decision to provide the DOGE Team with expansive access to SSA record systems without signed detail agreements, adequate training, completed background investigations, executive work forms, and/or actual need differs substantially from the mere provision of "IT access to certain employees." *See id.*

As this Court determined at the TRO stage, SSA's decision to grant access to "such a massive quantity of PII" without articulation of need was a "sea change" in agency practice. *See* ECF 49 at 100–01. This "dramatic change in policy at SSA," *id.* at 101, surely "mark[s] the consummation of [SSA's] decisionmaking process," *see Bennett v. Spear*, 520 U.S. 154, 178

---

[4] Subsequent discussions of Judge Richardson's concurrence do not explicitly refer to Judge Agee's joinder of that opinion.

(1997) (internal quotation marks and citation omitted), even if the provision of access to DOGE Team members themselves does not. And the decision "alter[ed] the legal regime" in which Plaintiffs and SSA operate. *See City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (internal quotation marks and citations omitted) (alteration in case); *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 931 (D.C. Cir. 2008). Nothing in the *Bessent* concurrences disturbs the Court's conclusion that this is a final agency action.

### C.  This Court appropriately granted injunctive relief with respect to Plaintiffs' Privacy Act claims.

Judge Richardson also expressed some unease as to whether the Privacy Act afforded the *Bessent* plaintiffs an "adequate remedy" such that a suit under the APA is unavailable. *See Bessent* Appeal at 13–14 (Richardson, J., concurring). But although Judge Richardson regards this issue as a non-"trivial question," *id.* at 114, he comes to no answer in his discussion. Nothing in his concurrence disturbs this Court's fulsome assessment that the equitable relief Plaintiffs seek here is not "of the same genre" as that available under the Privacy Act. *See* ECF 49 at 104 (quoting *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014)). Moreover, even if this Court determines that Plaintiffs' Privacy Act claims cannot be pled through the APA, Plaintiffs' core APA arbitrary and capricious claim—on which this Court found at the TRO stage Plaintiffs were likely to succeed, *see* ECF 49 at 128—remains live.

### D.  Plaintiffs are likely to succeed on the merits of their Privacy Act claims.

Judge Richardson likewise questioned whether, in *Bessent*, the DOGE affiliate's need (to "modernize[] an agency's software and IT systems" as specified by Executive Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025)) was really untethered from the access to sensitive databases at Education, Treasury, and OPM that the DOGE affiliates at each received. *See Bessent* Appeal at

14 (Richardson, J., concurring). He specified that "[m]ore record evidence may be needed" to make such a determination. *Id.*

By contrast, here, record evidence demonstrates that the DOGE team members' unfettered access to functionally all agency systems containing PII is unconnected not only to the DOGE Executive Order, *compare* Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025) ¶ 4(a) (describing DOGE's agenda as related to "improv[ing] the quality and efficiency of . . . software, network infrastructure, and information (IT) systems"), *with* Dudek Decl. ECF 60-1 ¶¶ 6-7 (outlining "key projects" on which the SSA DOGE is working focused on combatting "fraud, waste, [and] abuse"), but also to the projects on which the DOGE Team members are actually working, *compare* Dudek Supp. Decl., ECF 74-1 ¶ 8 ("Employee 8 plans to work with non-DOGE Team SSA employees in order to retrieve anonymized, aggregated data . . . . Employee 8 needs access to discrete individual data only when anomalies are identified, in order to detect fraud in specific instances."), with Dudek Decl., ECF 62-1, at 5 ¶ 11 ("[For Employee 8], [a]nonymization is not feasible because it could obscure information useful for identifying fraud."). In this case, record evidence shows that the SSA DOGE Team members are markedly different from the "high-level IT employees" described by Judge Richardson. *See Bessent* Appeal at 14–15 (Richardson, J., concurring).

## E. Plaintiffs will be irreparably injured if this Court vacates the TRO or denies their motion for preliminary injunction.

Judge Richardson likewise determined that, "without more," *Bessent* Appeal at 15 (Richardson, J., concurring), the *Bessent* plaintiffs could not prove irreparable injury for two reasons: First, they had not demonstrated they had suffered an injury in fact, *see id.*, as required to satisfy the first prong of the Fourth Circuit's irreparable harm test. Second, he noted the Privacy Act's damages cause of action evinced some indication that Privacy Act violations may be

redressable through monetary damages, *see id.*, precluding satisfaction of the irreparable injury test's second prong.

The case before this Court provides the exact "more" Judge Richardson appeared to be looking for. To begin, as explained above, Plaintiffs here have clearly demonstrated injury. *See supra*. The present threat of other irreparable harms, including from the use of artificial intelligence trained on Plaintiffs' members' data, Meyer Decl., ECF 111-9, PLFS-092–093 ¶ 3, and the attendant increased vulnerability of their sensitive information, *id.* at PLFS-093 ¶ 6, grows daily, *see* Alexandra Ulmer et al., *Exclusive: Musks's DOGE using AI to snoop on U.S. federal workers, sources say*, Reuters (April 8, 2025), https://perma.cc/F327-EURP (discussing DOGE's use of "Grok," the Elon Musk-owned AI company).

Moreover, even apart from this Court's fulsome explanation as to why money damages cannot rectify the violations of the Privacy Act complained of here, *see* ECF 49 at 132–33, the APA provides exclusively for equitable remedies*, see* 5 U.S.C. § 706. Plaintiffs' injuries stemming from SSA's arbitrary and capricious action are of the exact type that "cannot be fully rectified" by a final judgment after trial. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks and citations omitted).

Judge Richardson's contention that PII was "currently" (i.e. already) being obtained by the DOGE teams at defendant agencies before the *Bessent* district court enjoined them and is therefore distinct from the "typical[]" future events that preliminary injunction seek to "forestall[]," *see Bessent* Appeal 15–16, is also inapposite to the case before this Court. Although SSA provided data to DOGE Team members before this Court entered its TRO, *see, e.g.*, Russo Decl., ECF 36-1 ¶ 7, this Court's order importantly required the DOGE Team members to disgorge any data they

had heretofore obtained. This Court's TRO and the preliminary injunction Plaintiffs seek are the sole mechanisms preventing irreversible harm to Plaintiffs.

**IV.    The *Bessent* concurrences have no bearing on this Court's Temporary Restraining Order.**

This Court needs no reminder that Defendants agreed to extend the Temporary Restraining Order through April 17, 2025, under Federal Rule of Civil Procedure 65(b)(2). *See* ECF 68. Nor does it need a reminder that the Fourth Circuit dismissed Defendants' appeal of the TRO for lack of jurisdiction. *See American Federation of State, County and Municipal Employees, AFL-CIO et al. v. Social Security Administration, et al.*, Appeal No. 25-1291, Docket Entry No. 20. To the extent that this Court believes the *Bessent* concurrences dictate a different outcome on Plaintiffs' preliminary injunction motion (which, as explained, they do not), the Court may consider them in the regular course when deciding the preliminary injunction and need not take any urgent action to reconsider its Order or its decision on the stay motion as Defendants have requested, *see* ECF 117.

Dated: April 8, 2025

Respectfully submitted,

*Alethea Anne Swift*

Alethea Anne Swift (Bar No. 30829)
Emma R. Leibowitz[*+]
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston[*+]
Carrie Y. Flaxman+
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org
msamburg@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

* Admission to this Court pending
+ Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I, Alethea Anne Swift, certify that I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, by using the CM/ECF system, which sent a notice of such filing to all registered CM/ECF users who have appeared in this case.

/s/ Alethea Anne Swift
*Counsel for Plaintiffs*