IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs,* <br><br> vs. <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596-ELH |

**NOTICE REGARDING DEFENDANTS' STATEMENTS OF NEED**

The Temporary Restraining Order currently in effect, ECF 48, establishes the circumstances in which Defendants can provide DOGE Team members access to SSA records. The TRO states, in relevant part:

> SSA may provide members of the DOGE Team with access to discrete, particularized, and non-anonymized data, in accordance with the Privacy Act, and in accordance with the conditions set forth herein: SSA must first comply with the provisions in ¶ 2 of this Order and, in addition, SSA must first obtain from the DOGE Team member, in writing, and subject to possible review by the Court, a detailed explanation as to the need for the record and why, for said particular and discrete record, an anonymized or redacted record is not suitable for the specified use. The general and conclusory explanation that the information is needed to search for fraud or waste is not sufficient to establish need.

*Id.* ¶ 3. On March 27, Defendants filed a "Notice of Compliance" claiming that, as to Employees 1, 5, 8, and 9, it had satisfied the criteria set by the Court for granting access to personally identifiable information ("PII") in SSA data systems. ECF 62 ("Notice"). That filing was supported by the declarations of Acting SSA Commissioner Leland Dudek, ECF 62-1, and Deputy SSA Commissioner of Human Resources Florence Felix-Lawson, ECF 62-2. The Notice advised that,

1

absent Court intervention, SSA intended to provide the four DOGE Team members access to SSA data systems, including PII, within three hours. ECF 62 at 3. The Court thus convened an emergency hearing, at which Defendant Dudek appeared. *See* ECF 67; Transcript, ECF 73.

In a subsequent order, the Court noted that Defendants "did not submit with the Notice any written explanation provided to SSA by any of the four DOGE employees, explaining the need for access to non-anonymized data, as required by paragraph 3 of the TRO." Mem. Op. and Order, ECF 95 (the "Order"). At no point did Defendant Dudek aver that such statements exist. *See* Dudek Decl. ¶ 3, ECF 62-1 (stating obliquely that his statements were made with his "personal knowledge, discussion with SSA staff, and review of documents and information furnished to [him] in the course of [his] official duties); Supp. Dudek Decl. ¶ 3, ECF 74-1. And, despite Plaintiffs raising that deficiency both at the emergency hearing and in their briefing, Defendants' reply was silent on the issue. Tr. at 19:21-20:3, ECF 73; ECF 77 at 4; ECF 80. The Court thus ordered Defendants to file the required written submissions or, "[i]n the event that the written statements [did] not exist," to advise the Court accordingly. In so doing, the Court termed Defendants' failure to disclose the written submissions "a glaring omission." Order at 6, ECF 95.

I. **The Statements appear to be post hoc justifications for Defendants' actions that do not comply with the TRO.**

Yesterday, Defendants filed what they describe as "statements of need" for the relevant employees. ECF 114 ("Second Notice"); ECF 114-1 ("Statements"). But, like Mr. Dudek's declarations, the Second Notice is silent as to whether the employees provided those statements to SSA before the agency sought to grant them access. *See generally id.* The Statements themselves are undated and, despite including a "from" line, do not indicate to whom they were directed. *See generally* ECF 114-1.

2

Indeed, the record raises reasonable concerns that Defendants did not, as the TRO requires, "*first* obtain from the DOGE Team member, in writing, and subject to possible review by the Court, a detailed explanation as to the need for the record . . . ." TRO ¶ 3, ECF 48. Defendants imposed an artificial and extraordinarily brief timeline on this Court, despite Defendant Dudek describing the DOGE Team's work as "work we've never gotten around to as an agency." Tr. at 10: 20-21, ECF 73. They advanced such inconsistent explanations as to why anonymization is not possible that, at one point, the Court ordered Defendant Dudek to submit an additional declaration clarifying his position. Letter to Counsel, ECF 64, at 1-2; *compare* Dudek Decl. ¶ 11, ECF 62-1 ("[For Employee 8], [a]nonymization is not feasible because it could obscure information useful for identifying fraud."), *with* Transcript at 13:20-14:3, ECF 73 (explaining that his declaration in support of the Notice did not "really" reflect "what [he] meant"), Supp. Dudek Decl. ¶ 8, ECF 74-1 ("Employee 8 plans to work with non-DOGE Team SSA employees in order to retrieve anonymized, aggregated data . . . . Employee 8 needs access to discrete individual data only when anomalies are identified, in order to detect fraud in specific instances."), *and* Third Dudek Decl. ¶ 5, ECF 80-1 (describing "[d]e-identification of data" as "impracticable" and apt to "result in the removal of information relevant to the SSA DOGE Team's analysis").[1]

**II.    The Statements are insufficient to demonstrate that data anonymization is impossible and are contradicted by record evidence on that point.**

Additionally, the Statements are not responsive to this Court's previous determination that the DOGE Team members have not "provided a particularized explanation of how or why virtually the entire data base of SSA is needed to conduct [their] investigation, or why redacted or

---

[1] Furthermore, while Plaintiffs acknowledge that the SSA Defendants may seek relatively unique written justifications for purposes of complying with the TRO, it is notable that the form of the proffered Statements differs substantially from the written statements in the Administrative Record. *See, e.g.*, AR 000010-11; AR 000019-20; AR 000023; AR 000025-26.

3

anonymized records, at least initially, would be inadequate." TRO Mem. Op. at 121-22, ECF 49. As described above, Defendant Dudek has acknowledged that anonymization is possible in the first instance with respect to at least some of the DOGE Team's work. *See* Supp. Dudek Decl. ¶ 8, ECF 74-1. Plaintiffs have also offered evidence from former SSA CIO Marcela Escovar-Alava and former Acting Chief of Staff to the Acting SSA Commissioner Tiffany Flick, both of whom aver that anonymization is not only feasible but routine. In the words of Ms. Flick, which have gone largely unrefuted:

> Normally when analysts or auditors review agency data for possible payment issues, including for fraud, the review process would start with access to high-level, anonymized data based on the least amount of data the analyst or auditor would need to know. If a subset of records within that data are flagged as suspicious, the analyst or auditor would access more granular, non-anonymized data to just that subset of files.

Sec. Flick Decl. ¶ 4, ECF 39-1; *see, e.g.*, Escobar-Alava Decl. ¶ 7, ECF 111-10 ("standard practice would be to (1) grant DOGE Team members access to the data they sought in a 'sandbox' environment with anonymized data, and (2) refuse requests for write-access and access to SSA source code"); *id.* ¶ 3 (explaining that, under the principle of "least privilege access" followed by SSA, "[d]ata should be sanitized or anonymized wherever possible"); Third Flick Decl. ¶¶ 5-6 (explaining that the agency's fraud analytics team, "which examined SSA data for patterns of fraud," only needs access to "less granular information").

Defendants' own statements further undercut their claims that anonymization is impossible and/or impracticable. For example, they protest that Employees 1 and 9 cannot use anonymized data, in the first instance, for their work on the "Are You Alive" project. The relevant portion of that project allegedly has three stages: (a) identifying contact information for active beneficiaries;

4

(b) contacting and tracking engagement across SSA channels;[2] and (c) mapping engagement back to beneficiaries. *See* Statements at 2, ECF 114-1. The Statements explain that anonymization "would block [their] ability to execute on this project entirely," "mak[ing] it impossible to execute a call or email campaign." *Id.* But nothing suggests that the project could not proceed in a different order, beginning with tracking anonymous beneficiaries' "engagement across various channels" and only later matching that data to a smaller subset of the hundreds of millions of individuals whose data is contained in the Numident, MBR, SSR, and other SSA systems of record. Indeed, as Ms. Flick has stated, that would be agency's the usual practice. Sec. Flick Decl. ¶ 4, ECF 39-1.

## CONCLUSION

The Court should, at minimum, require counsel for Defendants to (1) affirm their compliance with the Court's April 2 directive that they "advise the Court accordingly" if the statements required by the TRO did not exist, *see* Order at 7, ECF 95; and (2) aver that the Statements were provided to SSA by the DOGE Team members before SSA sought to provide access to Employees 1, 5, 8, and 9, *see* TRO ¶ 3, ECF 48; Notice, ECF 62. More fundamentally, because the Statements are insufficient to evidence compliance with the TRO, the Court should not authorize Defendants to provide Employees 1, 5, 8, or 9 the access they seek.

*Signatures on following page.*

---

[2] Plaintiffs are unclear as to why "contacting and tracking engagement" appear in the same stage of the process and have previously expressed concern regarding Defendants' attempt to facilitate calls from DOGE Team members to specific individuals.

Dated: April 8, 2025

Respectfully submitted,

*/s/ Alethea Anne Swift*
Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston[*+]
Emma R. Leibowitz[*+]
Carrie Y. Flaxman
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
kjones@democracyforward.org
rthurston@democracyforward.org
eleibowitz@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

[*] Admission to this Court pending
[+] Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

      I, Alethea Anne Swift, certify that I filed the foregoing document under seal with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, and served it on counsel for Defendants via CM-ECF.

/s/ Alethea Anne Swift__
*Counsel for Plaintiffs*
