IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

## THIRD SUPPLEMENTAL DECLARATION OF TIFFANY FLICK

I, Tiffany Flick, declare as follows:

1. My name is Tiffany Flick. I previously submitted declarations in this case based on my nearly 30 years of experience working at the Social Security Administration ("SSA") prior to my recent retirement.

2. SSA uses Numident information to create a record of reported deaths known as the Death Master File ("DMF") and shares the full DMF, as authorized, with federal benefit-paying agencies to assist with benefits administration and preventing and detecting fraud. The DMF includes each deceased number holder's Social Security Number ("SSN"), name, date of birth, and date of death. As of December 2023, the full DMF contained information on more than 141 million deceased number holders.

3. SSA collects death data for the purpose of ensuring the integrity of its benefit programs. That includes discontinuing benefits payments to deceased individuals, confirming an individual's

right to survivor benefits, and identifying fraud carried out by individuals using a dead person's SSN.

4. Generally speaking, SSA posts a date of death to the Numident when the report is received from states, family members, and funeral homes without further verification. Payments are then terminated if that number holder is a Social Security beneficiary or a recipient of Supplemental Security Income. For other reports, such as those the agency receives from a non-family member, employees take steps to verify that the beneficiary is indeed deceased before stopping payments. When someone seeks survivor benefits, the agency must have proof of the death, from a death certificate, death information from the State, a report from a funeral home, or similar documentation. If an individual is not receiving or applying for benefits, SSA does not obtain proof of death because it is not necessary to administer SSA's programs.

5. SSA worked with States on the use of Electronic Death Registration ("EDR"), which automates the receipt of death information and is administered by the nonprofit National Association for Public Health Statistics and Information Systems ("NAPHIS"). Now all 50 States use EDR, resulting in the transmission of death information to SSA faster and more accurately. Generally, SSA receives these death reports within 5 days of the individual's death and within 24 hours after the State receives them. EDR is highly accurate because the States first verify the names and SSNs of deceased individuals against SSA records before they issue death certificates or actually transmit the death reports to us.

6. While SSA collects and uses the death data it receives solely to determine eligibility for and termination of benefit payments, federal benefit-paying agencies, banks, identity authentication companies, and others rely on the death.

7. The DMF contains a great deal of state data—as of 2019, most of the death reports SSA data collected by SSA and maintained in the DMF came from the states through EDR.

8. SSA interprets Section 205(r) of the Social Security Act as barring the agency from sharing state data with the private sector and most non-benefit-paying federal agencies.[1] Therefore, SSA also provides a subset of the full file, known as the Limited Access DMF, to the Department of Commerce, which, in turn, sells the data to public and private customers. It is available only to customers who can certify their ability to protect the data and does not contain data from the last three years.

9. Under the Consolidated Appropriations Act of 2021, SSA has been also required, since December 2023, to share the full DMF with the U.S. Department of Treasury's Bureau of the Fiscal Service for use in its Do Not Pay initiative as an effort to reduce improper payments.

10. Federal benefit-paying agencies in receipt of the state death data are required to verify independently the fact of death before acting on the information.

11. Errors in SSA's death data are minimal. In 2019, the agency reported correcting approximately one-third of one percent of the approximately 2.9 million death reports received each year.

12. Intentionally marking people who are still living as dead in the Numident and/or Death Master File is unheard of and improper.

13. For people erroneously recorded as dead, the consequences are severe. Loans may be terminated, and banking and credit card accounts may be closed. Affected individuals may be unable to open new accounts or apply for loans. Medicare and Medicaid coverage will immediately stop, as both coverage and claims will be rejected. Life insurance policies may be canceled, and

---

[1] Social Security Act §205(r)(3)(A)).

3

future applications may be rejected. Affected individuals may not be able to obtain a job (for example, as an Uber driver) or get approved for an apartment. They may not be able to rent a car, open a utility account, access FEMA benefits, or—in some states—even get a driver's license. Any tax return filed electronically will be rejected, delaying tax refunds, and affected persons may be arrested for identity theft.

14. Applications and renewals for CHIP, Basic Health Program, Affordable Care Act, and Multi-State Plan insurance coverage will likely be rejected, as states use data from the DMF—accessed through the CMS hub—to process those applications. SNAP applications and recertification will likely be discontinued, as state SNAP agencies use data from the DMF—accessed through SSA data exchanges—to process those applications.

15. It is possible that some people on the Department of Homeland Security list are representative payees for other people who are receiving SSA benefits, including children, other people on SSI, and retirees. If the representative payees are marked dead, the person's benefits will be paused until SSA can identify a new representative payee.

I declare under penalty of perjury, as prescribed in 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on April 14, 2025, in Valparaiso, Indiana.

*Tiffany Flick*
Tiffany Flick