IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR STAY PENDING APPEAL**

On March 20, 2025, this Court entered a temporary restraining order restricting the Social Security Administration ("SSA") and related defendants from providing DOGE Team members and affiliates "unfettered access to the SSA records of millions of Americans." TRO Mem. Op. at 1, ECF 49. The government unsuccessfully appealed that motion and, also unsuccessfully, moved for a stay in both this Court and the United States Court of Appeals for the Fourth Circuit.

On April 17, this Court issued a preliminary injunction, once again concluding that Plaintiffs have standing; that Plaintiffs are likely to succeed on their claims that SSA's actions violate the Privacy Act and are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"); that Plaintiffs' members will suffer irreparable harm without a preliminary injunction; that the balance of the equities tips in Plaintiffs' favor; and that a preliminary injunction serves the public interest. *See generally* PI Mem. Op., ECF 146. Like the TRO before it, the preliminary injunction is now the sole device keeping the highly sensitive,

personally identifying information of Plaintiffs' members private, as required by law and as SSA has committed to doing for nearly a hundred years.

Defendants have once again moved for a stay. Given the "substantial overlap" between the factors governing preliminary injunctions and stays, *see* Stay Mem. Op. at 2, ECF 78 (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)), courts do not often issue stays of preliminary injunctions where no new arguments are levied and no intervening circumstances emerge that would alter the courts' prior conclusions, *id.* Indeed, it would be illogical to do so. *See id.* (citations omitted). In a filing submitted only an hour after this Court issued a lengthy opinion granting the preliminary injunction, Defendants, unsurprisingly, made no arguments that this Court has not already carefully considered. The government hangs its hat on the concurring opinions in *American Federation of Teachers, et al. v. Bessent, et al.*, No. 25-1282, 2025 WL 1023638 (4th Cir. April 7, 2025). But this Court has already weighed *Bessent* and recognized several meaningful distinctions between the two cases on their current records. This Court has rejected Defendants' arguments on each of the stay factors on three occasions, and nothing has changed between Thursday and today that moves the needle for Defendants. This Court should deny their Motion for Stay Pending Appeal (the "Motion").

## ARGUMENT

A stay "is not a matter of right," but rather an "exercise of judicial discretion" particular to the circumstances of the case. *See Nken*, 556 U.S. at 433 (internal quotation marks and citations omitted). In reviewing such a motion, a court considers factors similar to those it considers when issuing a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a

stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (internal quotation marks and citation omitted). The movant carries the burden of showing that the circumstances warrant the issuance of an injunction. Defendants cannot meet that heavy burden here.

**I.   Defendants are unlikely to succeed on the merits.**

To start, Defendants' Motion relies exclusively on arguments already made in their preliminary injunction opposition, *see* Motion at 2 ("For the reasons stated in Defendants' opposition . . . . Defendants are likely to prevail on appeal" (citation omitted)). This Court thoroughly detailed the reasons it does not find those arguments persuasive in its preliminary injunction opinion. *See generally* ECF 146. Defendants "make no new arguments as to why they are likely to succeed," *see* ECF 78 at 4, on the Privacy Act or APA claims on which this Court, just two days ago, found Plaintiffs likely to succeed, *see* ECF 146 at 109–35. Nor do they reach new ground in once again asserting that, contrary to this Court's determinations, *see id.* at 45–102, Plaintiffs lack standing and do not challenge a final agency action reviewable under the APA.

Rehashing arguments a court has previously rejected—as Defendants exclusively do here—cannot constitute the "strong showing" required to prevail on this factor. *See Casa de Maryland, Inc. v. Trump*, No. PWG-19-2715, 2019 WL 7565389, at *2 (D. Md. Nov. 14, 2019) (citing *Nken*, 556 U.S. at 426). Because failure to make a strong showing of likelihood of success on the merits "is fatal to a motion for stay pending appeal," *United States v. Kotzev*, No. 1:18-CV-1409, 2022 WL 706949, at *3 (E.D. Va. Mar. 9, 2022) (citing *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)), Defendants' motion is, as it was before, dead on arrival.

3

## II. Leaving the Preliminary Injunction in place causes Defendants no harm.

Defendants contend that the preliminary injunction "halt[s] [the agency's] ongoing efforts to detect and eliminate fraud" and "impinges" on the President's authority over federal agency employees, causing irreparable injuries to both Defendants and the public. Motion at 6–7. To begin, Defendants are incorrect that the government's interests and those of the public "merge" when the government is seeking a stay. ECF No. 149 at 6. The merger discussed in *Nken v. Holder*, on which Defendants rely, is the familiar principle that the third and fourth *Nken* factors (balance of the equities and public interest) merge when the government is the *opposing* party, namely resisting court intervention. *See* 556 U.S. at 435. The Court should decline to adopt the government's unprecedented and unfounded alternative reading. *See id.* More importantly, Defendants' bald assertions of irreparable harm are unsupported, would not be irreparable even if they existed, and cannot justify the relief Defendants seek.

### A. Defendants have not shown that preliminary relief impedes anti-fraud efforts.

Defendants first assert that the preliminary injunction "harms the agency's operations by halting ongoing efforts to detect and eliminate fraud." Motion at 6. Defendants have consistently failed to explain why such efforts could not proceed using redacted or anonymized data, or discrete, particularized, non-anonymized data, both of which are permitted by the preliminary injunction under easily satisfied circumstances. PI Order ¶¶ 2–3, ECF 147. Defendants have conceded at various points in this litigation that anonymization in the first instance is possible. *See, e.g.*, Dudek Decl., ECF 74-1 ¶ 8; PI Hearing Transcript at 66:18–19, ECF 143 (Defendants' counsel conceding at oral argument that anonymization is possible).

Nor do Defendants explain why this harm, even assuming it exists, would be *irreparable*. "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough" to constitute irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). As Defendant Dudek represented to the Court, the projects on which the DOGE Team intends to work are "work [SSA has] never gotten around to as an agency." Emergency Tel. Conf. at 10 (Mar. 27, 2025), ECF 73. Further, as Plaintiffs have explained and the Administrative Record demonstrates, compliance with the preliminary injunction accords with long-standing agency practices. *See, e.g.*, AR000307; AR000482; AR000527–528; Escobar-Alava Decl., ECF 110-10 ¶¶ 2–4 (describing "least privilege" and "segregation of duties"); Second Supplemental Flick Decl., ECF 111-11 ¶ 4 (describing "least privilege" and "need to know"). Defendants are not harmed—and certainly not irreparably so—by a brief additional delay pending the appellate court's consideration of this case.

### B. The TRO does not substitute judicial judgments for those of the Executive Branch.

Defendants' second theory of irreparable harm is an Article II Hail Mary. The single-Justice stay order to which Defendants cursorily cite, *Immigration & Naturalization Service v. Legalization Assistance Project of the L.A. City Federation of Labor*, 510 U.S. 1301 (1993) (O'Connor, J., in chambers), is easily distinguishable: There, an apparent jurisdictional defect—plaintiffs being situated outside the zone of interest of the relevant statute—gave rise to Justice O'Connor's concern about improper intrusion on another branch of government; absent proper jurisdiction, interference with the executive branch *would* be improper. *Id.* at 1305–06. But that is not this case: Here, the Court has already concluded (and Defendants do not contest) that

5

Plaintiffs are within the relevant zone of interest. *See* ECF 49 at 110–11; ECF 146 at 112 n.48 (incorporating by reference ECF 49). Defendants' supplemental point—that the preliminary injunction "curtails" the Executive's duty to manage the day-to-day operations of federal agencies—again resists the Court's conclusion that Defendants have likely changed or abandoned their longstanding policy and practice with respect to access to PII, making this case a judicially manageable review of final agency action, not interference with day-to-day agency management. *See* ECF 146 at 94–105 (discussing final agency action). In any event, Defendants once again fail to offer even a cursory explanation of how this harm, if it even exists, is irreparable.

### III. Staying the preliminary injunction would substantially harm Plaintiffs' members.

Staying the preliminary injunction would allow Defendants to proceed as they did before the Court entered its TRO—unlawfully and with utter disregard for the privacy interests of Plaintiffs' members and millions of Americans. It would allow Defendants to violate the privacy of Plaintiffs' members and misuse sensitive personal information, potentially transmitting it to other agencies,[1] running it through artificial intelligence,[2] or otherwise using it in a manner to which Plaintiffs' members did not consent.[3] With regard to data, "[o]nce the cat is out of the bag, it will be decidedly hard to put it back." *Earley v. Smoot*, 846 F. Supp. 451, 452 (D. Md. 1994). Staying the preliminary injunction would let the proverbial cat once again run with abandon.

---

[1] Sam Sabin, *New Trump order pours gasoline on DOGE's data quest*, Axios (Mar. 25, 2025), https://perma.cc/2X66-KF26 (reporting on a recent executive order "compel[ling] federal agencies to tear down internal barriers to sharing government data" in what experts warn is an attempt to "sidestep longstanding privacy laws").
[2] Hannah Natanson et al., *Elon Musk's DOGE is feeding sensitive federal data into AI to target cuts*, Wash. Post (Feb. 6, 2025), https://perma.cc/9PJM-GMXD.
[3] The Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records . . . to any person, or to another agency" absent written authorization from the individual to whom the record pertains. 5 U.S.C. § 552a(b).

Defendants' only argument on this point is that "other courts . . . addressing similar issues," ECF 149 at 6, have concluded that other plaintiffs, alleging different facts on different records, would not suffer irreparable harm absent injunctive relief. But this Court has already considered and distinguished those cases. *See* ECF 146 at 137 (distinguishing *Carter*, *Alliance for Retired Americans*), *id.* at 138 (*EPIC*); *id.* at 138–39 (*AFT*). Having made no effort to address the facts of *this* case, Defendants cannot credibly dispute that Plaintiffs have established that they will suffer irreparable harm absent injunctive relief. Plaintiffs have demonstrated as much on multiple occasions, and this Court's preliminary injunction decision has already explained, among other things, that "SSA records contain extensive medical and mental health records, as well as records involving children," unauthorized access to which is harm that "[m]oney damages cannot rectify." ECF 146 at 142.

Finally, Defendants overlook that the Fourth Circuit is not required to decide the merits of the appeal by any particular date. A stay pending a ruling by the appellate court—on some unknown date—could leave Plaintiffs' members unprotected for months. DOGE Team members have been prohibited from attaining unfettered access to SSA systems without meeting minimal threshold requirements and have been ordered to delete and disgorge any data that they have obtained. Were a stay to be issued, each day that Defendants unlawfully disclose Plaintiffs' members' PII would exacerbate the attendant harm. As this Court has already noted, "a second look is not legally insignificant just because there was a previous look. [And] the DOGE Team continues to request additional access, and the team itself continues to grow in number. Simply put, the matter is ongoing." *Id.* at 139.

### IV. Staying the TRO would be detrimental to the public interest.

Other than mischaracterizing *Nken*, Defendants make no effort to demonstrate that the public interest favors a stay. Nor could they. "To be sure, rooting out possible fraud, waste, and mismanagement in the SSA is in the public interest. But that does not mean the government can flout the law to do so." ECF 146 at 142. To the contrary, as this Court acknowledged, "[t]here is generally no public interest in the perpetuation of unlawful agency action,'" *id.* at 141 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)), but "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations,'" *id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1104 (6th Cir. 1994)). And independent of public interest in lawful government, "there is a strong public interest in maintaining the confidentiality of PII, such as medical records and financial information. . . intrusion into the personal affairs of millions of Americans—absent an adequate explanation for the need to do so—is not in the public interest." *Id.* at 141–42.

### CONCLUSION

Defendants have not made the substantial showing necessary to justify the extraordinary remedy they seek. The Court should deny their Motion for Stay Pending Appeal.

|  |  |
|---|---|
| Dated: April 19, 2025 | Respectfully submitted, |

                                                   */s/ Mark B. Samburg*
Mark B. Samburg (Bar No. 31090)
Alethea Anne Swift (Bar No. 30829)
Emma R. Leibowitz[*+]
Robin F. Thurston[*+]
Carrie Y. Flaxman[+]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
msamburg@democracyforward.org
aswift@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

\* Admission to this Court pending
\+ Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I, Mark B. Samburg, certify that I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, by using the CM/ECF system, which sent a notice of such filing to all registered CM/ECF users who have appeared in this case.

/s/ *Mark B. Samburg*
*Counsel for Plaintiffs*
