IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> *vs.* <br><br> SOCIAL SECURITY ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00596 |

## PLAINTIFFS' MOTION FOR LIMITED DISCOVERY

Pursuant to ECF No. 179, Plaintiffs move for an order (1) permitting them to serve the discovery requests attached to this motion, and (2) requiring Defendants to respond to those requests within 30 days of service of the requests. The discovery Plaintiffs propose is carefully targeted and would impose minimal burdens on Defendants.

### LEGAL STANDARD

"Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," including "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Even in the context of claims under the Administrative Procedure Act (APA), where the court's review is typically based on the administrative record rather than a record generated through discovery, a "district court is free to exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy'" under review. *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting

*Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008)). "Discovery beyond the [administrative] record may be appropriate where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned." *Mayor and City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2021) (Hollander, J.) (citation omitted). In addition, "a 'strong showing of bad faith or improper behavior' . . . may justify extra-record discovery." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

## ARGUMENT

This action is precisely the type of APA case that does not "fit the mold," *Mayor and City Council of Baltimore*, 429 F. Supp. 3d at 137, making limited discovery both appropriate and necessary. The administrative record and additional information produced by Defendants contain gaps, reveal inconsistencies, and present issues that would impede this Court's ability to fully review Plaintiffs' claims. Additional information would provide relevant and probative information regarding the likelihood, immediacy, scope, and nature of the harms to Plaintiffs' members.

Moreover, SSA and its co-defendants—who have exclusive control over the information Plaintiffs seek to obtain—have already submitted extra-record evidence in the form of multiple declarations from agency leadership, including former Acting Commissioner Leland Dudek. That extra-record evidence already "tells a story that does not match the explanation" given for Defendants' actions, *see Dep't of Com. v. New York*, 588 U.S. at 784, evidencing "bad faith or improper behavior." *Id*. at 781.

2

**A.    Limited discovery would provide helpful context regarding the likelihood, immediacy, scope, and nature of the harms Defendants' actions cause to Plaintiffs' members.**

This Court previously concluded that Plaintiffs' members have suffered injury-in-fact because "SSA's provision to the DOGE Team of wholesale access to SSA records containing PII, without consent, and allegedly without need and to unqualified personnel, is sufficiently analogous to the tort of intrusion upon seclusion." *Am. Fed. of State, Cnty. and Muni. Emps., AFL-CIO v. Social Security Administration*, 778 F. Supp. 3d 685, 745 (D. Md. 2025). Plaintiffs agree. However, Plaintiffs also allege and have consistently argued that their members separately suffer injury-in-fact because Defendants' disclosure of Plaintiffs' members' sensitive, personally identifying information to individuals without adequate training or actual need for that information—in violation of several federal laws, SSA regulations, and agency policies and procedures—exposes Plaintiffs' members to an increased and non-speculative risk of identity theft. *See* ECF No. 39 at 2, 7 (TRO Brief); ECF No. 110-1 at 26–28 (PI Brief); ECF 122 at 3 (PI Reply). Assessing these distinct, concrete, and irreparable injuries depends, in large part, on evidence regarding the scope of Defendants' disclosure and misuse of Plaintiffs' PII, including the extent to which Defendants have exposed Plaintiffs' PII to unsafe software or insecure cloud-based applications.

Defendants' own statements and actions amplify factual uncertainty in this Court and elsewhere. Defendants have proffered declarations and "statements of need" regarding how, when, and why SSA DOGE Team members may access their records. But, as this Court has already acknowledged, those declarations and statements are in tension with one another and with the Administrative Record. *AFSCME*, 778 F. Supp. 3d at 773 ("[E]ven upon consideration of Dudek's declarations, the explanations are imprecise, contradictory, and insufficient."). They leave open substantial additional questions about Defendants' ongoing treatment of the sensitive records in their care, including with respect to the roles and responsibilities of SSA DOGE Affiliates, such as

3

their employment arrangements within SSA and the government writ large; the actual use of SSA systems of record by SSA DOGE Affiliates, including the full scope of which systems have been accessed, the extent and purpose of that access; whether SSA DOGE Affiliates have copied, exported, exfiltrated, edited, or otherwise manipulated any PII contained within SSA systems of record; whether SSA DOGE Affiliates have shared any PII contained within the Sensitive Systems with individuals employed by the Office of Personnel Management, DOGE, the Department of Homeland Security, or the Internal Revenue Service; and the use by any SSA DOGE Affiliate of any system or software using artificial intelligence in connection with any Sensitive System or the information contained therein.

Of particular relevance to several of Plaintiffs' claims is evidence regarding SSA and SSA DOGE Affiliates' compliance with the Temporary Restraining Order (ECF No. 48) and Preliminary Injunction (ECF No. 147) between March 20, 2025, and June 6, 2025, including information regarding the preparation of written explanations of need as contemplated in the Court's orders. Access or grants of access in violation of this Court's orders would constitute further *ultra vires* conduct on behalf of DOGE, would be further evidence of the arbitrary and capricious nature of Defendants' decision to grant access to DOGE, and would be relevant to the nature and scope of harm created by improper disclosures. Granting limited discovery into these issues would be an appropriate exercise of this Court's discretion to manage discovery, and the issues themselves are well-suited to limited discovery. More broadly, the facts about how DOGE is structured and how the SSA DOGE Team fits within that structure are becoming *less* clear with time. Discovery about the functional structure of DOGE—including who has decision-making authority over it—is directly relevant to evaluating the extent of the harm associated with disclosing Plaintiffs' members PII to DOGE and DOGE Affiliates, including the SSA DOGE

Team. It also bears on the employment status of SSA DOGE Team members, which is potentially dispositive with regard to Plaintiffs' claims implicating the Privacy Act.

**B.     Defendants have exclusive control over the information Plaintiffs seek.**

The propriety of limited discovery is further supported by the fact that Defendants have exclusive control over the information Plaintiffs seek to obtain, and "[c]ourts place greater weight on the need for discovery 'when the relevant facts are in the control of the opposing party.'" *Bergmann v. Smithsonian Inst.*, 2021 WL 1087084 at *3 (D. Md. Mar. 22, 2021) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). *See also Harrods*, 302 F.3d at 246-247 ("'[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.'" (citation omitted) (alteration in original)). Permitting discovery here would ensure that the government cannot enjoy an unfair windfall merely by virtue of having exclusive control over salient and detrimental information.

**C.     Existing evidence reflects Defendants' bad faith and improper behavior.**

Finally, blatant contradictions in Defendants' statements to this Court warrant discovery. *See Dep't of Comm.*, 588 U.S. at 780–81; *AFSCME*, 778 F. Supp. 3d at 773 (describing Defendants' explanations as "contradictory"); *compare id.* (noting that a member of the DOGE Team at SSA requested USCIS SAVE access despite there being no indication of a DOGE Team project based on a suspicion that immigrants engage in fraud or abuse of SSNs)*, with* Alexandra Berzon et al., *Social Security Lists Thousands of Migrants as Dead to Prompt Them to 'Self-Deport,'* N.Y. Times (Apr. 10, 2025), https://www.nytimes.com/2025/04/10/us/politics/migrants-deport-social-security-doge.html (describing the same DOGE Team member's involvement in "using Social Security data to freeze out immigrants"). Even Defendants, despite previously telling this Court that it should "look at the administrative record itself," now seek to rely on extra-record evidence at the Fourth Circuit. *Compare* Tr., ECF 143, at 53:23-24*, with* Dkt 32, Case No. 25-1411, at 52

5

n.6 (4th Cir. June 9, 2025). This is not a case in which later-submitted information "does not necessarily contradict" prior sworn statements. *Compare Alliance for Retired Ams. v. Bessent*, No. 25-0313, 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (Kollar-Kotelly, J.) (identifying plausible explanation reconciling potential inconsistency between declaration and later supplement to administrative record), *with AFSCME*, 778 F. Supp. 3d at 771 n.55 (reviewing source material and explaining that an assertion in a declaration from former SSA Acting Commissioner Leland Dudek "appears to be inaccurate"), 773 (Defendants' "explanations are imprecise, contradictory, and insufficient"). For example, as this Court previously described:

> Dudek's contentions about the challenges of anonymization are puzzling, given his prior statements about the way Employee 8 will conduct the Fraud Detection Project, and because of Agency practices. He does not shed light on why he *changed his position*, and now believes the process that he described in ECF 74-1 is no longer feasible. Nor does he explain why the procedures described in ECF 74-1 are not workable for the other projects.

*AFSCME*, 778 F. Supp. 3d. at 772–73 (emphasis added); *see also id.* at 773 ("[T]here are several access requests in the Administrative Record that do not seem to fit into the three projects identified by Dudek"). Other explanations in the Administrative Record are so dubious as to be clearly pretextual. *See, e.g.*, *id.* at 773 (describing a request for access to PII "to understand how many people request SSI benefits," which "appears to require only a numerical computation").

### D. Plaintiffs' proposed discovery would not be burdensome.

Plaintiffs' proposed discovery requests are narrowly targeted and would pose minimal burden to complete.

Plaintiffs propose five interrogatories. Two seek routine information about requests for access to a finite number of systems from a small universe of individuals. Two more seek routine information about software or code that a small number of people may—or may not—have

6

installed or used on agency computer systems. The fifth asks for the dates of creation of three documents and the identities of the people to whom the documents were sent.

Plaintiffs propose six requests for documents, two of which request only a highly specific subset of documents which SSA may—or may not—have created in response to this Court's temporary restraining order or preliminary injunction. The remaining four seek emails between specified individuals including a small number of search terms and are no more burdensome than an ordinary FOIA request.

Finally, Plaintiffs propose two depositions, which could both be completed in an eight-hour window, and which would cover a small number of topics. Plaintiffs' proposed 30(b)(6) deposition would require minimal preparation for any individual familiar with SSA information security practices and the SSA DOGE Team. Plaintiffs' proposed deposition of EMPLOYEE 9 would cover a small number of topics and include only information already within his personal knowledge.

## CONCLUSION

Just as claiming "need" is not a "'get out of jail free card,' enabling SSA to avoid or bypass the statutory requirements of the Privacy Act," 778 F. Supp. 3d at 775, the general presumption against inquiries into executive motivation cannot justify the frustration of meaningful judicial review. "The reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise." *Dep't of Commerce*, 588 U.S. at 785. The limited discovery Plaintiffs seek would impose minimal burdens on Defendants, but Defendants' responses will shed critical light on the scope of Defendants' disclosure and misuse of Plaintiffs' PII. Plaintiffs therefore respectfully

request that the Court an order (1) permitting them to serve the discovery requests attached to this motion, and (2) requiring Defendants to respond to those requests within 30 days of service.

Dated: August 12, 2025

Respectfully submitted,

 /s/ Alethea Anne Swift
Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston (Bar No. 31584)
Carrie Y. Flaxman[+]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

+ Admitted *pro hac vice*