# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.,*<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al*.,<br><br>　　　　　Defendants. | Case No. 1:25-cv-00596-ELH |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS'
# MOTION FOR LIMITED DISCOVERY

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT   ........................................................................................................... 1

I.   Plaintiffs Are Not Entitled to Any Discovery in This APA Case. ........................... 2

    A.   Plaintiffs Are Not Entitled to Discovery for "Context" on a Standing Theory This
    Court Already Rejected................................................................................. 3

    B.   Plaintiffs Do Not Show Bad Faith ................................................................. 3

    C.   The Fact that Defendants Possess Certain Information to Which Plaintiffs Lack
    Access Is Not a Basis for Extra-Record Discovery in an APA Case.............................. 6

    D.   Plaintiffs' Demand for Discovery Is Procedurally Improper........................................... 6

II.   Plaintiffs' Proposed Discovery Requests Are Facially Improper and Burdensome. .............. 8

CONCLUSION.......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*68th St. Site Work Grp. v. Airgas, Inc.*,
2021 WL 4255030 (D. Md. Sept. 16, 2021) ............................................................................ 3

*Al-Saidi v. Noem*,
2025 WL 959094 (S.D.N.Y. Mar. 31, 2025) ........................................................................... 9

*Am. Canoe Ass'n, v. EPA*,
46 F. Supp. 2d 473 (E.D. Va. 1999) ...................................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 7

*Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*,
524 F. Supp. 2d 642 (D. Md. 2007) ......................................................................................... 1

*Bergmann v. Smithsonian Inst.*,
2021 WL 1087084 (D. Md. Mar. 22, 2021) ............................................................................. 6

*Camp v. Pitts*,
411 U.S. 138 (1973) .................................................................................................................. 2

*Carter v. DeKalb Cnty., Ga.*,
521 F. App'x 725 (11th Cir. 2013) ........................................................................................... 8

*Clawson v. FedEx Ground Package Sys., Inc.*,
451 F. Supp. 2d 731 (D. Md. 2006) ....................................................................................... 14

*Clinch Coal. v. U.S. Forest Serv.*,
693 F. Supp. 3d 643 (W.D. Va. 2023) ..................................................................................... 9

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .............................................................................................................. 2, 4

*dmarcian, Inc. v. dmarcian Eur. BV*,
60 F.4th 119 (4th Cir. 2023) .................................................................................................. 13

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
707 F.3d 462 (4th Cir. 2013) ................................................................................................... 1

*Env't Def. Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ................................................................................................. 7

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) .................................................................................................................. 7

*Goose Creek Physical Med., LLC v. Becerra*,
2024 WL 942918 (D.S.C. Mar. 5, 2024) ................................................................................. 8

*Harrods Ltd. v. Sixty Internet Domain Names*,
302 F.3d 214 (4th Cir. 2002) ................................................................................................... 6

*Immigrant Defs. L. Ctr. v. DHS*,
2021 WL 6882438 (C.D. Cal. Dec. 8, 2021) ........................................................................ 11

*In re Musk*,
    2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ................................................................. 8

*Kaplan v. Cal. Pub. Emps.' Ret. Sys.*,
    1998 WL 575095 (N.D. Cal. Sept. 3, 1998) ............................................................... 3

*Kaplan v. Cal. Pub. Emps.' Ret. Sys.,*
    *221* F.3d 1348 (9th Cir. 2000) ................................................................................ 3

*Kaylor v. Fields,*
    661 F.2d 1177 (8th Cir. 1981) ................................................................................ 3

*Manker v. Spencer*,
    2019 WL 1506654 (D. Conn. Apr. 5, 2019) .............................................................. 8

*Mayor & City Council of Balt. v. Trump*,
    429 F. Supp. 3d 128 (D. Md. 2019) ................................................................ 2, 4, 6

*Mezu v. Morgan State Univ.*,
    269 F.R.D. 565 (D. Md. 2010) .............................................................................. 10

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) .................................................................................. 8

*Mullins v. U.S. Dep't of Energy*,
    50 F.3d 990 (Fed. Cir. 1995) .................................................................................. 4

*Occidental Petrol. Corp. v. SEC*,
    873 F.2d 325 (D.C. Cir. 1989) ................................................................................ 7

*Siegert v. Gilley*,
    500 U.S. 226 (1991) .............................................................................................. 8

*Skull Valley Band of Goshute Indians v. Cason*,
    2009 WL 10689787 (D. Utah Mar. 2, 2009) ............................................................ 9

*Stone v. Signode Indus. Grp. LLC*,
    2021 WL 2894159 (N.D. Ill. July 9, 2021) .............................................................. 13

*Stone v. Signode Indus. Grp. LLC*,
    2022 WL 393584 (N.D. Ill. Feb. 9, 2022) ............................................................... 13

*Suffolk Reg'l Off Track Betting Corp. v. SBA*,
    2025 WL 2173727 (E.D.N.Y. July 31, 2025) ............................................................ 4

*Trower v. Blinken*,
    2022 WL 2304041 (E.D. Mo. June 27, 2022) ................................................. 4, 9, 11

*United States v. Shafer*,
    11 F.3d 450 (4th Cir. 1993) .................................................................................... 4

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) .............................................................................................. 2

**Constitution**

U.S. Const. Art. II ......................................................................................................... 2

**Statutes**

5 U.S.C. § 706 ................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 12(b) ....................................................................................................... 1

Fed. R. Civ. P. 33(a) ..................................................................................................... 10

Fed. R. Civ. P. 56 ....................................................................................................... 1, 7

**Other Authorities**

*Annual Statistical Supplement*, 2024 - SSA Offices and Staff (2.F1-2.F3), SSA,
   https://www.ssa.gov/policy/docs/statcomps/supplement/2024/2f1-2f3.html .......................... 11

## INTRODUCTION

Discovery is presumptively improper in APA cases. Despite that, Plaintiffs filed a "Motion for Limited Discovery" four months after the administrative record was filed, challenging the record's sufficiency. *See* ECF 187 (sealed), 188 (public, redacted) (hereafter "Mot."). The Motion should be denied for at least three reasons. First, Plaintiffs fail to meet the rigorous standards that would justify application of any discovery exception here. Second, Plaintiffs are not entitled to any discovery at this stage of the litigation. Plaintiffs concede that they are prepared to fully oppose Defendants' dispositive motion. Thus, after the stay is lifted, Defendants' motion can—and should—be fully briefed and resolved. If Defendants' motion is granted—whether under Rules 12(b)(1), 12(b)(6), or 56—Plaintiffs' alleged need for discovery in support of their own motion will be mooted. If the Court denies Defendants' motion, in so doing the Court would find that Defendants did not act lawfully or reasonably—also mooting any need for discovery. Third, even if Plaintiffs were entitled to any discovery, which they are not, the requests they seek to serve are facially improper.

## ARGUMENT

To avoid "intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency," courts "must only consider the record made before the agency at the time the agency acted." *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467 (4th Cir. 2013) (citations omitted); *accord Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007) ("[C]laims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record."). This "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should

1

normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019) (citation omitted). Under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Ordinarily, this inquiry is "limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *New York*, 588 U.S. at 780 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978)). Hence, "the focal point for judicial review" under the APA "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

Because Plaintiffs are not entitled to any discovery in this APA case—and because their putative discovery requests are improper—Plaintiffs' Motion should be denied.

## I. Plaintiffs Are Not Entitled to Any Discovery in This APA Case.

Plaintiffs concede that discovery is generally improper in APA cases (Mot. at 1) but ask the Court to apply one of the handful of "narrow" exceptions to this rule—and advance a purported discovery exception that does not exist under APA law. *See Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019) (Hollander, J.). The Court should decline Plaintiffs' invitation.[1]

---

[1] Plaintiffs' Amended Complaint includes, in addition to APA claims, a standalone claim under the Privacy Act (Count II); an *ultra vires* claim (Count VI); and a claim for violation of the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2 (Count VII). *See* ECF 17 (Am. Compl.). Given the significant overlap between Plaintiffs' APA and non-APA claims, there is no reason to treat Plaintiffs' non-APA claims differently as concerns their Motion for Discovery. Plaintiffs' Motion does not argue otherwise. *See generally* Mot.; *see also, e.g.*, ECF 179 (Court Order on Plaintiffs' Request for Hearing) at 2 (acknowledging that Plaintiffs' suit "implicates the Administrative Procedure Act").

A.  Plaintiffs Are Not Entitled to Discovery for "Context" on a Standing Theory This Court Already Rejected.

Plaintiffs first contend that discovery would provide "helpful context" for Plaintiffs' alleged injury-in-fact, particularly, whether Defendants' conduct has "expose[d] Plaintiffs' members to an increased and non-speculative risk of identity theft." *E.g.*, Mot. at 3.  As this Court has recognized, "[t[he heightened concern of plaintiffs' members regarding possible identity theft arising from a potential data breach exposing their personal information, all due to the unfettered access to PII provided by SSA to the DOGE Team, is insufficient to establish standing."  ECF 49 (Memo. Op. on TRO) at 65 (internal pagination); ECF 146 (Memo. Op. on PI) at 51 n.25 (internal pagination).  There is no evidence in the record or in Plaintiffs' various submissions of a concrete threat of identity theft.  And the Federal Rules do not permit Plaintiffs to attempt to conjure evidence through a discovery fishing expedition.  *See 68th St. Site Work Grp. v. Airgas, Inc.*, 2021 WL 4255030, at *15 (D. Md. Sept. 16, 2021) ("Plaintiff has not asserted any non-speculative theories of jurisdiction premised on plausible facts.  Thus, on the present record, Plaintiff is not entitled to conduct jurisdictional discovery as a fishing expedition[.]"); *see also Kaplan v. Cal. Pub. Emps.' Ret. Sys.*, 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998) (similar), *aff'd*, 221 F.3d 1348 (9th Cir. 2000); *Kaylor v. Fields,* 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint.  It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").  Accordingly, Plaintiffs' desire for "helpful context" is not a valid basis to authorize discovery here.

B.  Plaintiffs Do Not Show Bad Faith.

Plaintiffs also invoke the "bad faith" exception to the rule against extra-record discovery in APA cases, arguing that Defendants' prior declarations submitted in this case are in "tension"

with or "contradict" the Administrative Record.  Mot. at 2 (citing *New York*, 588 U.S. at 781); *id.* at 5–6.  Plaintiffs do not meet the high bar for this discovery exception.

First, a plaintiff must ground a claim of bad faith in the final agency action being challenged; it cannot rely on alleged contradictions in collateral matters.  *See Trower v. Blinken*, 2022 WL 2304041, at *3 (E.D. Mo. June 27, 2022) (denying request for discovery in APA case because "[m]any of Plaintiffs' allegations of bad faith . . .  simply have no bearing on the issue before the Court at this stage of the litigation").  And even after that hurdle is cleared, "mere allegations of bad faith are inadequate to overcome the presumption of regularity accorded to agency action." *Mayor & City Council*, 429 F. Supp. 3d at 138.  Rather, "a plaintiff must put forth a 'strong showing' of impropriety to peer beyond the record." *Id.* (quoting *New York*, 588 U.S. at 781).  The standard is not satisfied by disagreement with the agency, but by something akin to a "showing of fraud or clear wrongdoing," *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995), or where an agency employee filed fraudulent documents and "perjured himself repeatedly," *United States v. Shafer*, 11 F.3d 450, 460–61 (4th Cir. 1993).  In other words, "[m]ere inconsistencies in the administrative record . . . only go[] to whether the underlying decision was arbitrary and capricious and should be overturned," not whether a plaintiff is entitled to discovery. *Suffolk Reg'l Off Track Betting Corp. v. SBA*, 2025 WL 2173727, at *4 (E.D.N.Y. July 31, 2025).

Plaintiffs' accusations here do not come close to satisfying the bad faith exception.  To start, the alleged final agency action being challenged in this case, according to Plaintiffs, is SSA's initial decision to "provide the DOGE Team with expansive access to SSA record systems."  ECF 111-1 (Pls.' Memo. ISO PI) at 21 (internal pagination).  Even if that were a final, reviewable agency action (it is not), Plaintiffs' claim of bad faith is unconnected from this alleged decision to grant access.  Rather, Plaintiffs' claim of bad faith appears directed at how Defendants described

the specific projects the SSA DOGE Team was assigned to or working on.  *See* Mot. at 5–6.  As a preliminary matter, Plaintiffs' allegation of inconsistency in Defendants' descriptions is just wrong: Defendants never represented to the Court that they had provided a comprehensive list of every project the DOGE Team was assigned or working on.  The agency first addressed the SSA DOGE Team's access in a March 12, 2025, declaration, which explained "[t]he overall goal of the work performed by SSA's DOGE Team is to detect fraud, waste, and abuse."  ECF 36-1 ¶ 5.  This declaration further stated that the agency determined the data access granted was needed to perform work assigned since anonymized data was not sufficient; the agency did not detail specific projects within this overall goal.  *Id*. ¶¶ 7(d)–12.  On March 27, in support of Defendants' request for specific and limited relief from the TRO for four of the ten members of SSA's DOGE Team, Defendants explained that "SSA seeks to grant the four DOGE Team employees . . . access only to the seven schemas containing information needed to perform their job duties." ECF 62-1 ¶ 7.  The declarant then described the specific projects these four employees required access to work on.  *Id*. ¶¶ 9–11. More fundamentally though, the SSA DOGE Team's individual projects are irrelevant to SSA's decision to grant its DOGE Team access to systems, which is the purported agency action being challenged.

Even if Plaintiffs' claim of bad faith were directed at the alleged agency action being challenged, mere inconsistency is not a basis for extra-record discovery.  At most, Plaintiffs' arguments go to whether SSA acted arbitrarily or capriciously.  Plaintiffs cite and quote this Court's preliminary-injunction ruling as proof of alleged contradictions, Mot. at 5–6, but the Court's ruling undercuts their argument.  If the Court could evaluate the preliminary injunction motion on the current record, including by considering and weighing Plaintiffs' inconsistency

arguments, then that record is more than adequate to permit judicial review.[2]

Finally, Plaintiffs' unfounded fear that Defendants have violated the Court's prior Temporary Restraining Order and Preliminary Injunction—which they have not memorialized in any properly filed motion for compliance—is not properly before the Court. *E.g.*, Mot. at 4.

### C. The Fact that Defendants Possess Certain Information to Which Plaintiffs Lack Access Is Not a Basis for Extra-Record Discovery in an APA Case.

Plaintiffs argue that discovery is proper because Defendants allegedly have "exclusive" access to some of the information they want. Mot. at 5. But "exclusive access" is not a recognized exception to the rule against extra-record discovery. The two cases Plaintiffs cite are not APA cases and thus provide no support for their argument. *See* Mot. at 5 (citing *Bergmann v. Smithsonian Inst.*, 2021 WL 1087084, at *2 (D. Md. Mar. 22, 2021) (authorizing discovery in a quiet title action brought under Maryland state law) and citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (permitting discovery in a trademark infringement case between two private parties)). If such an exception were recognized in APA cases, it would surely swallow the rule, as any plaintiff could claim that a defendant has "exclusive control" over some information potentially relevant to an APA case. *See Mayor & City Council*, 429 F. Supp. 3d at 138 (listing "narrow" exceptions).

### D. Plaintiffs' Demand for Discovery Is Procedurally Improper.

Plaintiffs concede they are fully able to oppose Defendants' dispositive motion to dismiss or for summary judgment on all issues. ECF 178 at 1. Plaintiffs claim they need discovery only to support their own, not-yet-filed cross-motion. *Id.*; *see also* ECF 179 at 2.

---

[2] Plaintiffs also argue that they are entitled to discovery because Defendants supposedly relied on extra-record materials in the Fourth Circuit. Mot. at 5. Even assuming for the sake of argument that were both true and improper, the proper course of action would be to raise that issue before the Fourth Circuit, not to authorize improper discovery here. The APA's record rule is not subject to a "two wrongs make a right" exception.

Plaintiffs' insistence that they can fully oppose Defendants' summary judgment motion shows that discovery serves no purpose here. Because the merits questions before the Court are binary—the agency acted lawfully or not, reasonably or not—ruling solely on Defendants' dispositive motion necessarily resolves the case. If the Court grants Defendants' motion, the case is over for Plaintiffs. If the Court denies the motion by finding the agency acted unlawfully or unreasonably based on the administrative record, the proper course would be to deny Defendants' motion and enter judgment for Plaintiffs under Rule 56(f)(1). Alternatively, if the Court finds the record to be inadequate then it would remand to the agency. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (explaining that, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Occidental Petrol. Corp. v. SEC*, 873 F.2d 325, 347 (D.C. Cir. 1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."); *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("If the agency action, once explained by the proper agency official, is not sustainable on the record itself, the proper judicial approach has been to vacate the action and to remand the matter back to the agency for further consideration.").

In any event, Defendants' motion to dismiss identifies fundamental, facial deficiencies in Plaintiffs' Complaint that warrant dismissal, such as lack of standing and failure to state a claim. *See generally* ECF 168 (Defs.' Mot. to Dismiss or for Summ. J.). The Court should resolve those threshold arguments before permitting discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009) (when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery,

cabined or otherwise" because "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions"); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (finding that until a "threshold immunity question is resolved, discovery should not be allowed"); *In re Musk*, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) (per curiam) (staying discovery because "the district court was required to decide [defendants'] motion to dismiss before allowing discovery"); *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should be resolved before discovery begins." (cleaned up)); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (same).

## II.  Plaintiffs' Proposed Discovery Requests Are Facially Improper and Burdensome.

Plaintiffs describe their discovery requests as "narrowly targeted" and "minimal[ly] burden[some]."  Mot. at 6–7.  But as the Court remarked during the August 12, 2025, hearing, these requests are not narrow or limited—and some even violate the discovery limits set forth in the Federal Rules.[3]  *See, e.g.*, Aug. 12, 2025, Hr'g Tr. 4:17–21 ("Aug. 12 Transcript").

When a plaintiff can avail itself of an APA discovery exception, the resulting discovery must be tailored only to information necessary to resolve that exception.  *See, e.g.*, *Goose Creek Physical Med., LLC v. Becerra*, 2024 WL 942918, at *11 (D.S.C. Mar. 5, 2024) (permitting extra-record discovery only on the "properly identified" and "specific[ly] excluded records" that were needed to complete the administrative record); *Manker v. Spencer*, 2019 WL 1506654, at *5 (D. Conn. Apr. 5, 2019) (holding that every APA discovery request "require[s] a reason, such as filling

---

[3] Plaintiffs' discovery requests suffer from numerous legal defects, including violations of the Federal Rules.  For purposes of this opposition, Defendants focus on the mismatch between the requests and the narrow APA exceptions Plaintiffs assert.  Defendants reserve the right to address other defects in Plaintiffs' discovery requests when served, including through discovery objections and/or a motion for protective order under Rule 26(c).

a specific gap in the administrative record").  This is because the purpose of APA discovery is not to open the floodgates to whatever Plaintiffs want to find; it is only to fill concrete gaps or deficiencies in the administrative record.  *See, e.g.*, *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 653–54 (W.D. Va. 2023) ("Given the presumption of completeness, I do not find additional discovery would be appropriate, which would essentially allow the plaintiffs to conduct a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist."); *Trower*, 2022 WL 2304041, at *4 (permitting discovery in an APA case only to complete the record where it was incomplete and refusing requests that amounted to a "fishing expedition"); *Skull Valley Band of Goshute Indians v. Cason*, 2009 WL 10689787, at *23 (D. Utah Mar. 2, 2009) (granting protective order where discovery requests "appear[ed] to be merely fishing expeditions, too speculative to warrant the limited discovery available only rarely in APA litigation"); *Al-Saidi v. Noem*, 2025 WL 959094, at *3 (S.D.N.Y. Mar. 31, 2025) ("[I]n the context of an APA proceeding against a federal agency that has produced the administrative record of the challenged decision, 'a party seeking discovery cannot simply engage in a fishing expedition based on bare speculation that additional data might reveal something beneficial.'" (citation omitted)).

Here, Plaintiffs' discovery requests are untethered from Plaintiffs' stated concerns.  As discussed *supra* Part I, Plaintiffs argue that extra-record discovery is necessary because (1) it would provide "context" for their standing theory that certain members face a heightened risk of identity theft; and (2) Defendants have supposedly acted in "bad faith" by offering contradictory statements.  *See* Mot. at 1–6.  As also explained above, neither justification satisfies the strict standards for extra-record discovery in an APA case.  But if the Court disagreed and granted discovery, none of Plaintiffs' discovery requests matches their stated justifications.  *See generally* ECF 187-1, 188-1 ("Proposed Reqs.").

**Interrogatories.**  As a preliminary matter, Plaintiffs' "five" interrogatories are in fact 32 separate interrogatories in disguise—well beyond the limit allowed by the Federal Rules of Civil Procedure.  *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010) (Rule 33(a)(1) violated where party's "multi-part interrogatories largely encompassed multiple questions"); Aug. 12 Transcript at 4:20–21.

That procedural defect aside, the interrogatories do not match Plaintiffs' asserted bases for extra-record discovery.  For example, a subpart of Plaintiffs' Interrogatory No. 1 demands that Defendants identify the date, time, nature, and scope of any access to a "sensitive system" by an SSA DOGE Team member, along with identifying "any" audit trail, event log, ticket history, or other similar record of such access.  *See* Proposed Reqs., Interrogatory No. 1.  Plaintiffs do not explain how this information—which accounts for just some of Interrogatory No. 1's many subparts—is narrowly targeted to remedying Defendants' alleged contradictory statements or showing "the extent to which Defendants have exposed Plaintiffs' PII to unsafe software or insecure cloud-based applications."  Mot. at 3.  In addition to seeking irrelevant information, Plaintiffs' requests verge on the impossible, such as requiring every SSA DOGE Team member to recall and recount every record they reviewed in a "sensitive system" and explain the purpose for each review.  *See* Proposed Reqs, Interrogatory No. 1.f.  Given that SSA employees view thousands of records in the ordinary course of their duties, such a request is more than a fishing expedition—it is an open-ended trawl across a veritable ocean of information.[4]  *See Am. Canoe Ass'n, v. EPA*, 46 F. Supp. 2d 473, 476 (E.D. Va. 1999) (finding that "limiting judicial review to

---

[4] The remaining interrogatories fare no better.  They seek, for example, information about every instance in which a DOGE Team member's access was denied, and a list of every code ever installed or used to view data by a DOGE Team member.  *See* Proposed Reqs., Interrogatories Nos. 2–4.

the administrative record in typical citizen suits is consistent with a sensible reluctance to involve the judiciary too deeply in administrative decision making").

**Requests for Production.**  Plaintiffs' proposed requests for production are similarly overbroad.  For example, one request seeks "any emails" concerning Scott Coulter's selection as Chief Information Officer.  *See* Proposed Reqs., Request for Production ("RFP") No. 3.  But the rationale for selecting Scott Coulter as CIO has no connection to Plaintiffs' asserted discovery needs in this APA case.  Plaintiffs' RFPs that seek "any emails" sent to "any SSA employee" referring to Order 14,243 or "any emails" to DOGE Team members on a variety of broad topics are, similarly, facially improper and not relevant to the discovery exceptions invoked.  *See* Proposed Reqs, RFP Nos. 4–6.  As of 2024, SSA had over 60,000 employees, which underscores the magnitude of information Plaintiffs seek in their requests.  *See Annual Statistical Supplement, 2024 - SSA Offices and Staff (2.F1-2.F3)*, SSA, https://www.ssa.gov/policy/docs/statcomps/supplement/2024/2f1-2f3.html (last visited Aug. 31, 2025).

**Depositions.**  Depositions are particularly disfavored in APA cases, because they are—by their nature—difficult to cabin to the narrow exceptions purportedly authorizing discovery in the first place.  *See Immigrant Defs. L. Ctr. v. DHS*, 2021 WL 6882438, at *6 (C.D. Cal. Dec. 8, 2021) (observing in an APA case that it "would be difficult to sufficiently narrow or define any deposition topics such that the deposition testimony would be appropriately targeted"); *Trower*, 2022 WL 2304041, at *4 (finding that a deposition in an APA case risked a "fishing expedition into sensitive issues" that offered "minimal assistance to the Court").  Depositions are inappropriate where they duplicate information already available in the administrative record or that could be obtained through properly limited written discovery.  *See Immigrant Defs. L. Ctr.*, 2021 WL 6882438, at *6

11

(denying plaintiff's request for a deposition in an APA case because the information sought "overlap[ped] with Plaintiffs' written discovery requests" and such information could be obtained through limited written discovery).

**Rule 30(b)(6) Deposition.** Plaintiffs' proposed Rule 30(b)(6) deposition is improper for at least four independent reasons.

*First*, the putative Rule 30(b)(6) notice is duplicative. Many topics overlap almost word-for-word with Plaintiffs' written discovery requests. *Compare* Proposed Reqs., SSA 30(b)(6) Topic No. 3 ("The actual use of Sensitive Systems by SSA DOGE Affiliates, including: which Sensitive Systems have been accessed, and the scope and purpose of that access"), *with* Interrogatory No. 1.f. ("A summary of the actual usage of each Sensitive System by the SSA DOGE Affiliate, including a description of the records reviewed, the purpose for which they were reviewed[.]"). And some of the information Plaintiffs seek is already in the administrative record, such as policies and procedures for system access and use of sensitive information, and the composition and training of the SSA DOGE Team. *Compare* Proposed Reqs., SSA 30(b)(6) Topic Nos. 1–2 (seeking information about SSA's policies and procedures and information about the composition and training of the SSA DOGE Team), *with* ECF 86, AR 1–559 (providing information about SSA's policies and procedures and information about the composition and training of the SSA DOGE Team).

*Second*, the 30(b)(6) topics go well beyond the scope of Plaintiffs' asserted exceptions to the rule prohibiting extra-record discovery in APA cases. For example, Plaintiffs do not explain how testimony about every use of a sensitive system by a DOGE Team member (Proposed Reqs., SSA 30(b)(6) Topic No. 3), or the general use of Artificial Intelligence by the SSA DOGE Team members (Proposed Reqs., SSA 30(b)(6) Topic No. 4), are narrowly tailored to addressing

Defendants' alleged contradictions or the claimed risk of identity theft.  In short, just like their proposed written discovery, Plaintiffs 30(b)(6) deposition topics are overly broad.

*Third*, several topics are functionally impossible to answer.  Plaintiffs demand testimony describing every use and access of a sensitive system by SSA DOGE Team members, including the purpose of such use and access.  *See* Proposed Reqs., SSA 30(b)(6) Topic No. 3.  As explained above, given that SSA employees access thousands of records in the normal course of their work, no witness could realistically provide such exhaustive testimony in a deposition.  Requests of this magnitude illustrate precisely why courts are reluctant to allow depositions in APA cases.

*Fourth*, Plaintiffs' proposed topic covering "compliance with the Court's orders" is facially improper because it has no bearing on the merits of this APA case.  *See* Proposed Reqs., SSA 30(b)(6) Topic No. 5.  If Plaintiffs believe Defendants have violated a court order, they can file a motion for appropriate relief.  *See Stone v. Signode Indus. Grp. LLC*, 2021 WL 2894159, at *3 (N.D. Ill. July 9, 2021) ("To the extent Plaintiffs believe Defendants have failed to comply with the court-ordered injunction, they should file a motion to enforce that injunction . . . .  The Court will not instead allow Plaintiffs to go on the proverbial fishing expedition . . . to accomplish through standard discovery what should be attempted through . . . enforcement proceedings."), *objections overruled*, 2022 WL 393584 (N.D. Ill. Feb. 9, 2022); *see also dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023) (holding that the movant has the burden to establish violation of a court order by "clear and convincing evidence").  Plaintiffs cannot sidestep the proper process—or their burden to prove non-compliance—by demanding an expedition into compliance with the Court's orders, without offering *any* evidence (much less clear and convincing evidence) that a violation has occurred.

13

**Deposition of "SSA Employee #9."** Finally, Plaintiffs' request to depose "SSA Employee # 9" is wholly unsupported. Their Motion does not mention, much less explain, why this fact witness should be deposed, what information he supposedly possesses, or how his testimony would address any alleged deficiency in the administrative record or the risk of identity theft. And Plaintiffs cannot salvage that omission by raising a justification for the first time in their reply brief, where Defendants would have no opportunity to respond. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("[A]n argument raised for the first time in a reply brief or memorandum will not be considered."). Lacking any justification for this deposition, Plaintiffs' request should be denied outright.

## CONCLUSION

For these reasons, the motion for discovery should be denied. If the Court were to nonetheless allow extra-record discovery, Plaintiffs should be required to revise their requests. Defendants reserve all rights, including to seek a protective order as to any discovery ultimately served.

Dated: September 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

BRADLEY P. HUMPHREYS
Senior Trial Counsel

*/s/ Samuel Holt*
SAMUEL HOLT
MARIANNE F. KIES
Trial Attorneys
Civil Division, Federal Programs Branch

14

United States Department of Justice
1100 L Street NW
Washington, DC 20005
Samuel.Holt2@usdoj.gov

Kelly O. Hayes
Interim United States Attorney

MICHAEL J. WILSON
USDC Md Bar No. 18970
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Tel: (410) 209-4941
Fax: (410) 962-2310
Michael.Wilson4@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 2, 2025, I electronically filed the foregoing and thereby caused

a copy to be served on counsel of record.

<u>/s/ Samuel Holt</u>
SAMUEL HOLT