IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, *et al.*,

      *Plaintiffs*,

      *vs.*

SOCIAL SECURITY
ADMINISTRATION, *et al.*,

      *Defendants*.

Civil Action No. 1:25-cv-00596

**PLAINTIFFS' MOTION TO LIFT STAY
AND AUTHORIZE LIMITED DISCOVERY**

In August, this Court stayed proceedings until the Fourth Circuit resolves the pending appeal of the preliminary injunction. ECF 189. But it did so subject to the right of any party to move to lift the stay for good cause. *Id.* Defendants' self-styled Notice of Corrections to the Record supplies that cause. The revelations therein go to the heart of the claims and defenses in this case; the harm suffered by Plaintiffs and their members, including newly revealed, apparently ongoing harm; and Defendants' candor to the Court and compliance with its orders. Plaintiffs thus respectfully request that the Court lift the stay and authorize limited discovery into the information disclosed (and questions raised) by Defendants' Notice.[1] Doing so will allow the litigation to proceed fairly and efficiently here and in the Court of Appeals, where Plaintiffs have, with this Court's permission, supplemented the record on appeal to include the Notice. ECF 199. Plaintiffs intend to seek leave to submit a supplemental brief in the Fourth Circuit to further address the newly revealed facts and their effect on the pending appeal.

---

[1] Undersigned counsel conferred with counsel for Defendants, who indicated that they oppose this motion and will file an opposition.

**FACTUAL BACKGROUND**

In February 2025, Plaintiffs filed suit challenging Defendant Social Security Administration's decision to grant the SSA DOGE Team unfettered access to the SSA records of millions. This Court granted a temporary restraining order (ECF 48, 49), which was in effect from March 20, 2025, to April 17, 2025; and a preliminary injunction (ECF 146, 147, 157), which remained in place until June 6, when the Supreme Court stayed it pending resolution of Defendants' appeal of the same. *See generally SSA v. AFSCME*, 145 S. Ct. 1626 (2025). That appeal has been fully briefed and was argued *en banc* before the Fourth Circuit on September 11, 2025.

Earlier in this litigation, senior SSA officials filed sworn declarations representing to Plaintiffs and to this Court that, among other things: (1) SSA revoked DOGE Team members' access to SSA systems by March 24, 2025; (2) the umbrella DOGE organization never had access to SSA systems of record; (3) SSA had provided the Court and Plaintiffs a complete list of SSA systems of record to which DOGE Team members had access; (4) the SSA DOGE Team's work was directed at detecting waste, fraud, and abuse; and (5) safeguards ensure that no private or commercial servers integrate with SSA systems. But those representations were untrue. On January 16, 2026, Defendants filed a "Notice of Corrections to the Record" disclosing that certain information in two sworn declarations from top SSA officials was not truthful when provided to the Court. ECF 197. The Notice also identifies two instances in which Defendants violated the then-active temporary restraining order ("TRO"). *Id*.

These "corrections to the record" reveal that members of the DOGE Team at SSA signed a "Voter Data Agreement" with a "political advocacy group" for a project with a purported intent to "find evidence of voter fraud and to overturn election results in certain States," Notice at 5; shared

data through a third-party server that is not approved for storing SSA data and is outside SSA's security protocols, *id.* at 6; sent a file "that SSA believes contained SSA data" to the Department of Homeland Security, cc'ing an employee of the DOGE umbrella organization and a DOGE-affiliated employee at the Department of Labor, *id.* at 2–3; and were granted access to a "shared workspace" that allowed them to pool data to which the employees had separately been granted access, *id.* at 4. Each of these revelations contradicts factual representations made in the government's briefs and argument before this Court, the Fourth Circuit, and the Supreme Court that directly relate to the heart of Plaintiffs' claims and the government's defenses.[2]

In addition, these revelations disclose new harms to Plaintiffs—both in the past and on an ongoing basis—that have not previously been explored in this litigation. They further underline the dissimilarity between the facts in this case and those considered by a three-judge panel of the Fourth Circuit in *American Federation of Teachers v. Bessent*, 152 F.4th 152 (4th. Cir. 2025).

## LEGAL STANDARD

The administration of stays is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Donnelly v. Branch Banking & Trust Co.*, 971 F.Supp.2d 495, 501 (D. Md. 2013)

---

[2] *See, e.g.*, Application for Stay, *SSA v. AFSCME*, No. 24A1063 (S. Ct. May 4, 2025), at 19 *("*[T]he SSA undisputedly obtained respondents' personal information legally, and it legally retains that information in data systems that are maintained by, and housed within, the agency."); *id.* at 21 ("Far from constituting a highly objectionable invasion of personal privacy, SSA DOGE team members who access respondents' information are doing the same thing that other agency employees routinely and properly do."); *id.* at 27 ("[A] limited number of SSA DOGE team members have been granted access to information for specific purposes that require that access."); Appellants' Opening Brief, *AFSCME v. SSA*, No. 25-1411 (4th Cir. June 9, 2025), ECF No. 32, at 1 ("[T]he SSA DOGE team will (and can) only use [PII] for legitimate and lawful purposes."); Defs.' PI Opp., ECF 113, at 26 ("SSA has merely given a small, limited set of new employees access to data systems they need to perform the duties of their roles."). *Compare* TRO Hearing Tr. at 27:18-25 (stating that DOGE "has not received any data from SSA" and that "SSA does not transmit information to USDS"), *with* Notice at 2 (disclosing that, three weeks prior to entry of the TRO, an SSA DOGE Team member copied senior DOGE advisor Steve Davis on an email attaching an "encrypted and password-protected file that SSA believes contained SSA data").

(quoting *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)). And district courts retain their authority to oversee discovery in a case during the pendency of an appeal.[3]

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 26(d) permits courts to allow discovery before the ordinarily required Rule 26(f) conference.[4] *Brightview Group, LP v. Teeters*, SAG-19-2774, 2019 WL 116600174, at *1 (D. Md. Nov. 6, 2019); *see also IOMAXIS, LLC v. Hurysch*, PJM-20-3612, 2022 WL 180734, at *4 (D. Md. Jan. 20, 2022). In determining whether good cause for such expedited discovery has been demonstrated, "courts frequently consider" (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested expedited discovery; (3) the reasons the moving party is requesting expedited discovery; (4) the burden on the opponent to comply with the request for expedited discovery; (5) whether the information sought expeditiously could be obtained more efficiently from some other source; (6) the extent to which the discovery process would be expedited; and (7) whether a motion to dismiss for failure to state a claim is pending." *Does 4 v. Musk*, No. CV 25-0462-TDC, 2025 WL 1505305, at *2 (D. Md. May 27, 2025) (citation omitted).

---

[3] *See, e.g.*, Wright & Miller § 3921.2 ("The power to act pending appeal from preliminary injunction rulings is illustrated by district court rulings . . . on matters of pleading, discovery, summary judgment, settlement, trial, and contempt." (footnotes omitted)).

[4] Under the Local Rules of this Court, "[u]nless otherwise ordered by the Court," the parties do not need to confer pursuant to Rule 26(f), but "discovery shall not commence . . . until a scheduling order is entered." D. Md. Local R. 104.4.

The requisite good cause may exist where "[s]ignificant questions regarding noncompliance with a court order" are present. *Abrego Garcia v. Noem*, 348 F.R.D. 589, 591 (D. Md. 2025) (quoting *Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033–34 (9th Cir. 2008)); *see Palmer v. Rice*, 231 F.R.D. 21, 25 (D.D.C. 2005) (allowing discovery where, "without [it], plaintiffs will not be able to determine whether the government has complied with the court's injunctions"); *Blackberry Ltd. v. Typo Prods. LLC*, 2014 WL 4136586, at *5 (N.D. Cal. Aug. 21, 2014) (granting discovery where Plaintiff raised "serious questions . . . regarding [Defendant's] possible violations of the preliminary injunction").

The above is true even in the context of claims under the Administrative Procedure Act (APA), where the court's review is typically based on the administrative record rather than a record generated through discovery. In those cases, discovery beyond the administrative record may still be appropriate "where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned." *Mayor and City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2021) (Hollander, J.) (citation omitted). Additionally, "a 'strong showing of bad faith or improper behavior' . . . may justify extra-record discovery." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

## ARGUMENT

Defendants' Notice discloses violations of the temporary restraining order and inaccuracies in sworn statements by SSA officials that are material to the claims and defenses in this case; the type and extent of Plaintiffs' injuries, including those that are ongoing; and Defendants' candor to the Court and compliance with its orders. This Court should use its inherent authority to lift the

stay and permit expedited, limited discovery into the substance of the Notice and the questions it raises.

Defendants' Notice is a narrow and carefully crafted document that corrects material inaccuracies in two declarations (ECF 36-1, 56-1) related to this Court's temporary restraining order. It does not identify the scope of the review that led to this disclosure, and it does not purport to address potential non-compliance unrelated to the cited declarations. Nor does it answer the basic questions it begs, such as whether Defendants have determined that no other data sharing occurred or the status of SSA data on the third-party server. It raises more questions than it answers, and those questions can only be answered by tailored discovery. Parties should have an opportunity to question facts that an opposing party "has itself put in[to] evidence." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).[5] Here, Defendants themselves offered the sworn testimony, now known to be at least partially inaccurate, that this Court and others relied upon when evaluating the merits of Plaintiffs' claims and need for relief.

And resolving these outstanding questions is urgent. It is now clear that Plaintiffs' members' private data, meant to be held in trust by SSA, has been shared not just with SSA DOGE Team members, but further: data was both sent to the agency responsible for immigration enforcement and placed on a third-party server without governmental security controls. It is also clear that those mishandling this data were simultaneously engaging with advocates who, among other things, sought to "overturn election results in certain States," Notice at 5, including engagement with respect to voter data. Defendants' Notice raises pressing concerns about the

---

[5] In *Cheney*, the D.C. Circuit authorized the deposition of the Vice President's Deputy Chief of Staff where the official had submitted a declaration on "a factual matter" concerning certain records management practices. 544 F.3d at 312. Because the declaration concerned a "potentially dispositive . . . factual dispute," the plaintiffs were entitled to "follow-up questioning on facts OVP ha[d] itself put in evidence." *Id.* at 312, 314.

security of Plaintiffs' members' PII and the purposes for which it has been shared and may currently be used.

Further, Defendants have also now disclosed that they violated this Court's March 24, 2025, temporary restraining order. It is a "foundational legal precept that every judicial order 'must be obeyed—no matter how 'erroneous' it 'may be—until a court reverses it." *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 30 (D.D.C.) (quoting *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967)), *vacated on other grounds*, 147 F.4th 1044 (D.C. Cir. 2025); *see also Belk v. Charlotte-Mecklenburg Bd. of Ed.*, 269 F.3d 305, 399 (4th Cir. 2001) ("A person or entity subject to a judicial decree or injunction . . . must comply with that decree or injunction, notwithstanding its possible unlawfulness"). Defendants' admitted noncompliance with an active order of this Court undermines that foundational legal precept, and enforcing the rule of law requires additional investigation.

Plaintiffs' discovery requests are narrow. They go to the type and extent of Plaintiffs' newly confirmed and ongoing injuries and relate directly to both the claims and defenses in this case and the veracity of Defendants' representations to the Court. That Plaintiffs raise APA claims is no bar: This action is precisely the type of APA case that does not "fit the mold," *Mayor and City Council of Baltimore*, 429 F. Supp. 3d at 137, and limited discovery is both appropriate and necessary. This Court should exercise its inherent discretion to lift the stay and order immediate, limited discovery into the substance of Defendants' Notice and the many questions it leaves unresolved, which are summarized below.

### A. The SSA Doge Team sought and used PII for improper purposes, including disclosure to third parties.

As this Court well knows, the provision of the Privacy Act most relevant to this case permits disclosure of data maintained in an agency's systems of record to employees of that agency

who "have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). SSA regulations likewise require that SSA employees "disclose records within SSA only to an employee who has a legitimate need to know the record in the course of his or her official duties." 20 C.F.R. Pt. 401, App. A(d)(1). Defendants have steadfastly maintained that the SSA DOGE Team's access to unfettered amounts of PII comports with these authorities because such access is necessary to fulfill the team's mandate of "modernizing government information systems and rooting out fraud, waste, and abuse in data systems."[6] Critically, Defendants have also maintained that SSA DOGE Team members use the data they access only in furtherance of those goals.[7]

But the Notice demonstrates that those statements were and are untrue. A member of the SSA DOGE Team signed a Voter Data Agreement in March 2025 with a political advocacy group seeking "to find evidence of voter fraud and to overturn election results in certain States," Notice at 5—an activity that is wholly unrelated to "modernizing government information systems" and not authorized by the Systems of Record Notices that detail to the public how their data will be used.[8] But Defendants' Notice of Correction did not identify the terms of the Voter Data Agreement or the organization with which DOGE Team members contracted; how, why, and under what

---

[6] *See, e.g.*, Application for Stay, *SSA v. AFSCME*, No. 24A1063 (S. Ct. May 4, 2025), at 4 ("[E]mployees charged with modernizing government information systems and rooting out fraud, waste, and abuse in data systems plainly need access to those systems."); *id.* at 2 (stating that DOGE "advises the Executive Branch and federal agencies as to how to streamline government, eliminate waste, ferret out fraud, and modernize outdated systems that let malfeasance and inefficiency go undetected," that agency DOGE teams "support this critical government effort for their agencies," and that those teams "have a business need to access the data at their assigned agency and subject the government's records to much-needed scrutiny"); PI Hearing Tr. 73:4–6 ("It is consistent with the principle of least privilege because they serve an antifraud role.").

[7] *See, e.g.*, Appellants' Opening Brief, *AFSCME v. SSA*, No. 25-1411 (4th Cir. June 9, 2025), ECF No. 32, at 1 ("[T]he SSA DOGE team will (and can) only use [PII] for legitimate and lawful purposes.").

[8] This disclosure thus also undercuts Defendants' repeated arguments that Plaintiffs have no case because they "voluntarily submitted" their PII to SSA "with full knowledge that the information could be routinely accessed by agency employees to perform their responsibilities." Appellants' Opening Brief, *AFSCME v. SSA*, No. 25-1411 (4th Cir. June 9, 2025), ECF No. 32, at 18; Application for Stay, *SSA v. AFSCME*, No. 24A1063 (S. Ct. May 4, 2025), at 15 (emphasizing that Plaintiffs' members "gave the SSA personally identifiable information with the understanding that it would be accessed by government employees in various situations.").

authority the Voter Data Agreement came into being; or whether members of the SSA DOGE Team entered into other data-sharing agreements with non-governmental entities, all of which is information presumably available to SSA. The government avers only that "SSA has not yet seen evidence that SSA data were shared with the advocacy group." Notice at 5. The Notice also discloses that DOGE Team Members sent SSA data to the Department of Homeland Security ("DHS") with DOGE personnel at the umbrella DOGE organization and the Department of Labor cc'ed. But the Notice identifies only one of those recipients, and the Defendants offer only that "SSA has been unable to access the file to determine exactly what it contained." And Defendants admit that the SSA DOGE Team continues to seek access to and use the public's sensitive PII for purposes other than carrying out the projects described in Executive Order 14,158.[9] Given the newly revealed likelihood of ongoing third-party access to their PII, Plaintiffs seek limited discovery regarding the extent of the SSA DOGE Team's disclosure of data to third parties and the type of data shared.

### B. The SSA DOGE Team used a third-party server and "shared workspace" to circumvent agency controls and has made no effort to claw back the PII shared.

While the Notice admits that members of SSA's DOGE Team were using links to share data through the third-party server "Cloudflare" in violation of SSA security policies, it provides no information about the extent of the government's efforts to claw back that data. Notice at 6 ("Because Cloudflare is a third-party entity, SSA has not been able to determine exactly what data were shared to Cloudflare or whether the data still exist on the server").[10] Plaintiffs' proposed

---

[9] In other sections of the Notice, Defendants affirm that SSA believed that statements in various declarations were accurate when those statements were made and that SSA believes those statements are "accurate today." *Id.* at 2, 6. But Defendants concede that the statements about the DOGE Team's need for access to SSA records are, even today, only "largely" accurate. *Id.* at 5.

[10] Plaintiffs contacted Defendants' counsel on January 22, 2026, to request a summary of what steps, if any, have been taken by Defendants and/or DOJ to claw back information provided to third parties and/or transferred to a nongovernmental server. Defendants did not provide that information.

discovery requests seek information regarding the scope of these violations and the extent to which Plaintiffs' PII remains on insecure and unauthorized third-party servers.

**C.  The extent of the SSA DOGE Team's evasion of requirements governing employee-specific grants of data access.**

Both the Privacy Act and SSA regulations, policies, and procedures require that an individual agency employee be given access only to the data that employee needs to perform her specific job duties. That requirement is reflected in the terms of the TRO and PI and the employee-specific explanations of need filed by Defendants throughout this litigation, among other things. But Defendants have now disclosed that members of the SSA DOGE Team had multiple means to pool the data they independently accessed, thus destroying the individualized need assessment, evading the limitations that requirement imposes, and violating the TRO. Notice at 6 (describing the SSA DOGE Team's use of links to share data); *id.* at 4 ("Six DOGE Team members were granted access to [a] shared workspace that would have allowed DOGE Team members to share data to which the employees had separately been granted access); *id.* ("Two DOGE Team members had access to a data visualization tool that could connect to other data sources, which could provide access to PII."). These disclosures bear directly on one of Defendants' core arguments and on the harms to Plaintiffs' members, and the proposed discovery requests seek additional information about the extent of these newly revealed breaks with the agency's longstanding practices and procedures.

\*\*\*

Given the above, Plaintiffs have clearly demonstrated their entitlement to limited, expedited discovery regarding the Notice and its implications. This Court has already issued preliminary injunctive relief, which remains pending before the Fourth Circuit. *See Courthouse News Serv. v. Harris*, No. CV ELH-22-548, 2022 WL 3577255, at \*4 (D. Md. Aug. 18, 2022)

10

(listing the factors courts consider when assessing whether good cause for expedited discovery has been demonstrated); *Does 4*, 2025 WL 1505305, at \*3 (finding that Plaintiffs had not shown good cause for obtaining expedited discovery in part because no motion for a preliminary injunction was pending). Plaintiffs' proposed discovery is narrow; it seeks only information regarding the Notice and the questions raised about Defendants' non-compliance with court orders. *See id.* (finding the second factor satisfied where plaintiffs "limited the breadth of the proposed expedited discovery in that they primarily [sought] specific, discrete documents and interrogatory responses"). Expedited discovery is necessary given the pendency of the appeal at the Fourth Circuit, Defendants' failure to identify steps taken to claw back PII shared with third parties (or even identify what PII was shared), and new evidence of concrete and ongoing injuries to Plaintiffs' members. *See Courthouse News Serv.*, 2022 WL 3577255, at \*4 (listing factors). And the burden on the government is minimal. Plaintiffs do not seek "depositions of multiple officials with significant roles in the operation of the government," *see Does 4*, 2025 WL 1505305, at \*3, and Defendants have already stated that they engaged in a review of the SSA DOGE Team's access to PII, including by identifying and reviewing relevant documents.

The Notice also confirms that the relevant information is in Defendants' exclusive control and thus could not be obtained more efficiently from some other source. *See Courthouse News Serv.*, 2022 WL 3577255, at \*4 (D. Md. Aug. 18, 2022) (listing factors). The information sought is material to assessing the merits of Plaintiffs' claims and the government's defenses, the type and extent of injuries Plaintiffs face, and the extent of Defendants' noncompliance with this Court's order, and no motion to dismiss is pending, *see* ECF 189. *Id.* Moreover, Plaintiffs should have an opportunity to question the material—and apparently untrue—facts Defendants themselves put into evidence and relied on in arguments to this Court, the Fourth Circuit, and the Supreme Court.

11

*See In re Cheney*, 544 F.3d at 314 (finding that once a witness has "already seen fit to go under oath" and affirmatively submit a declaration, the opposing party is entitled to "follow-up questioning" on relevant facts).

All of that is underscored by Defendants' admitted noncompliance with the temporary restraining order and the paucity of information regarding the details of that noncompliance. "The Constitution does not tolerate willful disobedience of judicial orders — especially by officials of a coordinate branch who have sworn an oath to uphold it. To permit such officials to freely 'annul the judgments of the courts of the United States' would not just 'destroy the rights acquired under those judgments'; it would make 'a solemn mockery' of 'the constitution itself.'" *J.G.G.*, 778 F. Supp. 3d at 31 (D.D.C.), mandamus granted, order vacated on other grounds, 147 F.4th 1044 (D.C. Cir. 2025) (quoting *United States v. Peters*, 9 U.S. (5 Cranch) 115, 136 (1809)). "So fatal a result must be deprecated by all." *Id.*

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court lift the stay currently in place and authorize prompt and limited discovery into the substance of and questions raised by Defendants' Notice. Given Defendants' delay in identifying these material factual inaccuracies and counsel's delay in disclosing them to Plaintiffs and the Court, Plaintiffs request that the Court order Defendants to (1) return responses to Plaintiffs' requests for admission and identify a suitable 30(b)(6) deponent within four business days of entry of this order; and (2) return responses to Plaintiffs' interrogatories and document requests within ten business days of entry of this order.

Dated: February 9, 2026

Respectfully submitted,

*/s/ Alethea Anne Swift*
Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston (Bar No. 31584)
Carrie Y. Flaxman[+]
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org
cflaxman@democracyforward.org
*Counsel for Plaintiffs*
+ Admitted *pro hac vice*