**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, *et al.*,

      *Plaintiffs*,

      *vs.*

SOCIAL SECURITY
ADMINISTRATION, *et al.*,

      *Defendants*.

Civil Action No. 1:25-cv-00596

**PLAINTIFFS' [PROPOSED] REQUESTS FOR ADMISSION, INTERROGATORIES,
REQUESTS FOR PRODUCTION OF DOCUMENTS,
AND REQUEST FOR DEPOSITION**

Plaintiffs American Federation of State, County, and Municipal Employees, AFL-CIO ("AFSCME"), Alliance for Retired Americans ("ARA"), and American Federation of Teachers ("AFT"), through their undersigned attorneys, propound the following Interrogatories, Requests for Production of Documents ("RFPs"), and Requests for Depositions to Defendant Social Security Administration ("SSA").

**DEFINITIONS**

The following definitions shall apply to the Requests for Admission, Interrogatories, Requests for Production, and Requests for Depositions:

1.     "Notice" means the "Notice of Corrections to the Record" filed by Defendants in this case on January 16, 2026 (ECF 197).

2. The term "identify," when used in connection with the term "individual" or "individuals," means to state, to the extent known, the person's full name; present or last known address; e-mail address; telephone number; and, for all times between February 21, 2025 and the present during which the person was employed by the U.S. federal government in any capacity, the person's title, employing agency or agencies, date(s) of employment, and assigned email address(es). To the extent that "identify" is used in connection with an entity rather than a natural person, state, to the extent known, identifying information for the entity and the natural persons acting as contacts for the entity in connection with the subject matter covered by the relevant request.

3. When referring to documents, "identify" means to state, to the extent known, the type, date, author, title, and, if applicable, addressee(s) and/or recipient(s) of the document.

4. The term "communication" means a transmittal of information in the form of facts, ideas, inquiries, or otherwise.

5. The term "document" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a), including but not limited to emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, messages sent on messaging platforms (including but not limited to Slack, Microsoft Teams, WhatsApp, Signal, or GChat), records, reports, memoranda, written agreements, and system tickets, logs, records, reports, or output. A draft of a nonidentical copy is a separate document within the meaning of this term.

6. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "DOGE" means the U.S. DOGE Service and/or the U.S. DOGE Service Temporary Organization.

**INSTRUCTIONS**

1.      Complete and return responses to the below requests for admission within four business days.

2.      Complete and return responses to the below interrogatories and document requests within the earlier of ten days of service of these discovery requests or at least four business days before the earliest date of any deposition.

3.      Provide documents in both original native format with all metadata and consecutively Bates-stamped PDFs.

4.      Any redacted portions of documents should be identified in a privilege log, provided concurrently with the responsive documents, that conforms with U.S. District Court for the District of Maryland Discovery Guideline 10(d).

5.      Absent your concurrent and written objection, your production of a document in response to written discovery authenticates the document for use against you in any pretrial proceeding or at trial.

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**

1.      With respect to Part VI of the Notice, admit that SSA has not contacted Cloudflare to "determine exactly what data were shared to Cloudflare or whether the data still exist on the server."

2.      Admit that the "review of records of and relating to data access of SSA's former DOGE Team for audit and litigation purposes" described in the Notice did and does not extend to,

3

include, or reflect any and all data access by SSA DOGE Team members at all times before June 6, 2025.

### PLAINTIFFS' FIRST SET OF INTERROGATORIES

1.      Identify each individual who "reviewed records of and relating to data access of SSA's former DOGE Team for audit and litigation purposes" and/or for the "further diligence and review by SSA into these matters," as described on page 1 of the Notice.

2.      Provide a detailed timeline of all actions Defendants took to implement the Temporary Restraining Order beginning on March 20, 2025, and ending at 11:59 p.m. on March 24, 2025, and describe any and all instructions given to SSA employees and members of the SSA DOGE Team regarding compliance with the TRO.

3.      Identify the individual who "ran PII searches on SSA's copy of the Numident" on March 24, 2025, as described in Part I of the Notice; state the scope of the PII searches described; and identify any and all documents and/or communications concerning the scope of those searches or the data they returned.

4.      Provide a complete, time-stamped list of all PII searches run on the Enterprise Data Warehouse, Numident, or other SSA systems of record, including any copies thereof, from March 20, 2025, through March 24, 2025, including for each search the identity of the individual who performed the search; the identity of the person(s) who requested, authorized, and/or granted the access that enabled the search; the scope of the search performed; and the name(s) of the system, profile, schema, workspace, database, tool, and/or files queried.

5.      Identify any and all documents and/or communications concerning the scope of the searches described in Interrogatory 4 or the data they returned.

4

6.      Identify the "DOGE-affiliated employee at the Department of Labor" described in Part II of the Notice and provide the DHS email address referenced in the same paragraph.

7.      Identify the DOGE Team member who was "granted access to ten EDW schema containing PII" on March 26, 2025, as described in Part III of the Notice; identify the person(s) who requested, authorized, and/or granted that access; state the names of the system, profile, schema, workspace, database, tool, and/or files to which that employee was granted access; and identify any and all documents and/or communications concerning those grants of access.

8.      Identify the DOGE Team member who "was granted access to a call center profile that allowed access to PII after the TRO's issuance," as described in Part III of the Notice; identify the person(s) who requested, authorized, and/or granted that access; name the "call center profile" and the system, profile, schema, workspace, database, tool, and/or files to which it belongs; identify any and all documents and/or communications concerning that grant of access; and describe any and all efforts taken by Defendants to identify whether any PII was accessed by the DOGE Team member through the profile.

9.      For subparts Part IV(a) through Part IV(e) of the Notice, identify the DOGE Team member(s) described; provide the name of the system, profile, schema, workspace, database, tool, and/or files to which the DOGE Team member was granted access; specify the date on which that access was granted and terminated; and identify any and all documents/or communications concerning those grants of access.

10.      Identify the "advocacy group" referenced in Part V of the Notice and identify all SSA DOGE Team members who corresponded with that organization.

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.    All records, reports, communications, notes, or documents relied on in preparation of the Notice or referred to by the Notice.

2.    All system logs, records, tickets, or outputs resulting from the "PII searches" referenced in the Notice.

3.    Any and all documents and/or communications referencing, containing, or concerning communications between members of the SSA DOGE Team and DOGE personnel outside SSA, including at DOGE, between March 20, 2025, and March 24, 2025.

4.    A copy of the email referenced in Part II of the Notice, including any previous or subsequent correspondence on the same thread and an accessible copy of the attachment.

5.    For each system, profile, schema, workspace, database, tool, and/or files referenced in the Notice, any and all documents and/or communications reflecting, containing, or concerning (1) written explanation(s) of need for the access described, (2) request(s) for that access, and/or (3) determinations or decisions regarding that access.

6.    Any and all documents and/or communications referencing, containing, or concerning communications with the unidentified organization referenced in Part V of the Notice.

7.    The executed "Voter Data Agreement" referenced in Part V of the Notice.

8.    The Hatch Act referrals referenced in Part V of the Notice.

9.    Any and all documents and/or communications referencing, containing, or concerning the SSA DOGE Team's activity on the Cloudflare product referenced in Part VI of the Notice.

10.    Any and all documents and/or communications referencing, containing, or concerning agreements between Cloudflare and SSA, the U.S. DOGE Service, the U.S. DOGE

Service Temporary Organization, the SSA DOGE Team, or the employees or agents of any of the above.

11.    Any and all documents and/or communications referencing, containing, or concerning any audits, investigations, or other reviews through which Defendants or their counsel learned of any of the events or information described in the Notice.

### PLAINTIFFS' PROPOSED DEPOSITION TOPICS

Plaintiffs seek a deposition, conducted pursuant to Fed. R. Civ. P. 30(b)(6), on the following topics:

1.    The nature, scope, date, and purpose of the "review of records of and relating to data access of SSA's former DOGE Team for audit and litigation purposes" and "further diligence and review by SSA into these matters" described in the Notice (the "Review"), including:

      a.    The names, roles, and activities of each individual who participated in the Review;

      b.    The names of all individuals who were interviewed as part of the Review, the determination to interview those individuals, and the scope of those interviews;

      c.    The period of time covered by the Review; and

      d.    The dates on which the Review began and concluded.

2.    The identification and investigation of each "omission" and "misstatement" described in the Notice, including the dates on which SSA discovered each misstatement, omission, piece of information, or incident.

3.    Details regarding SSA's efforts to access the encrypted and password-protected file identified in Part II of the Notice.

4. Details regarding SSA's efforts to "determine exactly what data were shared to Cloudflare or whether the data still exist on the [Cloudflare] server," as described in Part VI of the Notice.

5. Details regarding the "shared workspace that would have allowed DOGE Team members to share data to which the employees had separately been granted access for fraud or analytics reviews" identified in Part IV of the Notice, including the date that workspace was created, the workspace's intended and actual functionality, and any use of that workspace by SSA DOGE Team members between entry of the temporary restraining order and 12:00 p.m. ET on March 24, 2025.

6. The operation of the "data visualization tool" described in Part IV of the Notice, including its ability to connect to other data sources containing PII, and the SSA DOGE Team's use of that tool.

7. The substance and timing of efforts to comply with the Temporary Restraining Order between issuance of that order and 12:00 p.m. ET on March 24, 2025.

8. The basis for the statement that "SSA believed [various] statements [to the Court] to be accurate at the time they were made, and SSA believes them to be accurate today," including the details of efforts to confirm the veracity of that statement and similar statements contained in the Notice.

9. The basis for the statement in Part V of the Notice that "SSA believed those statements to be accurate at the time they were made, and they are largely still accurate," including the extent to which those statements are not currently accurate and the details of efforts to confirm the veracity of those statements.