**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

---

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, *et al.,*

          Plaintiffs,

    v.

SOCIAL SECURITY
ADMINISTRATION, *et al*.,

          Defendants.

---

Case No. 1:25-cv-00596-ELH

 

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY AND AUTHORIZE LIMITED DISCOVERY**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT… .................................................................................................................. 5

I.    Plaintiffs Do Not Show Good Cause to Lift the Stay ................................................. 6

II.    Plaintiffs Are Not Entitled to Extra-Record Discovery in This APA Case ............................ 8

    A.   No Exception to the General Prohibition of Extra-Record Discovery Applies Here ...... 9

    B.   Plaintiffs' Demand for Discovery Is Procedurally Improper ........................................ 12

    C.   Plaintiffs' Proposed Discovery Requests Are Facially Improper. ................................. 14

CONCLUSION .................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrego Garcia v. Noem*,
    348 F.R.D. 589 (D. Md. 2025) ............................................................................................ 10

*Abrego Garcia v. Noem*,
    777 F. Supp. 3d 501 (D. Md. 2025) .................................................................................... 10

*Al-Saidi v. Noem*,
    2025 WL 959094 (S.D.N.Y. Mar. 31, 2025) ....................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 13

*Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*,
    524 F. Supp. 2d 642 (D. Md. 2007) ................................................................................. 5, 9

*Blackberry Ltd. v. Typo Prods., LLC*,
    2014 WL 4136586 (N.D. Cal. Aug. 21, 2014) .................................................................... 10

*Camp v. Pitts*,
    411 U.S. 138 (1973) (per curiam) ........................................................................................ 9

*Carter v. DeKalb Cnty., Ga.*,
    521 F. App'x 725 (11th Cir. 2013) ...................................................................................... 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ............................................................................................................ 10

*Clinch Coal. v. U.S. Forest Serv.*,
    693 F. Supp. 3d 643 (W.D. Va. 2023) ................................................................................ 14

*Dawoudi v. Nationstar Mortg., LLC*,
    2016 WL 8711604 (N.D. Ill. Sep. 16, 2016) .................................................................... 7, 8

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ......................................................................................................... 9, 10

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
    707 F.3d 462 (4th Cir. 2013) ................................................................................................ 8

*Env't Def. Fund, Inc. v. Costle*,
    657 F.2d 275 (D.C. Cir. 1981) ............................................................................................ 13

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) .......................................................................................................... 13

*Fowler-Bey v. Johnson*,
   2018 WL 11476084 (D. Md. Nov. 30, 2018) .............................................................. 6

*Goose Creek Physical Med., LLC v. Becerra*,
   2024 WL 942918 (D.S.C. Mar. 5, 2024) ................................................................... 14

*Hickey v. Baxter*,
   833 F.2d 1005, 1987 WL 39020 (4th Cir. 1987) (Table) (per curiam) ...................... 6

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) ..................................................................................... 6

*Immigrant Defs. L. Ctr. v. DHS*,
   2021 WL 6882438 (C.D. Cal. Dec. 8, 2021) ...................................................... 15, 16

*In re Cheney*,
   544 F.3d 311 (D.C. Cir. 2008) .................................................................................. 10

*In re Musk*,
   2025 WL 926608 (D.C. Cir. Mar. 26, 2025) (per curiam) ....................................... 13

*Int'l Refugee Assistance Project v. Trump*,
   323 F. Supp. 3d 726 (D. Md. 2018) ............................................................................ 6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................... 6

*Manker v. Spencer*,
   2019 WL 1506654 (D. Conn. Apr. 5, 2019) ............................................................ 14

*Mayor & City Council of Balt. v. Trump*,
   429 F. Supp. 3d 128 (D. Md. 2019) ....................................................................... 5, 9

*Mezu v. Morgan State Univ.*,
   269 F.R.D. 565 (D. Md. 2010) ................................................................................. 15

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) .................................................................................... 13

*Occidental Petrol. Corp. v. SEC*,
   873 F.2d 325 (D.C. Cir. 1989) ................................................................................. 13

*Palmer v. Rice,*
　231 F.R.D. 21 (D.D.C. 2005)................................................................................ 10

*Siegert v. Gilley,*
　500 U.S. 226 (1991)........................................................................................... 13

*Skull Valley Band of Goshute Indians v. Cason,*
　2009 WL 10689787 (D. Utah Mar. 2, 2009) ...................................................... 14

*Stone v. Signode Indus. Grp. LLC,*
　2021 WL 2894159 (N.D. Ill. July 9, 2021)................................................... 11, 15

*Trower v. Blinken,*
　2022 WL 2304041 (E.D. Mo. June 27, 2022) .............................................. 14, 16

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
　435 U.S. 519 (1978)............................................................................................. 9

*White v. Ally Fin. Inc.,*
　969 F. Supp. 2d 451 (S.D. W. Va. 2013) .............................................................. 6

## INTRODUCTION

Plaintiffs' Motion is their second attempt to obtain burdensome, intrusive extra-record discovery in this Administrative Procedure Act ("APA") case, all before the Fourth Circuit has resolved whether this Court has subject-matter jurisdiction to consider Plaintiffs' claims at all.  The District Court declined to adjudicate similarly broad discovery requests in August 2025, reasoning that the Fourth Circuit was poised to rule on key threshold issues—including Plaintiffs' standing to sue—and "as a practical matter," "I'm not going to do anything until I know what the Fourth Circuit says."  Aug. 12, 2025, Hr'g Tr. (ECF 190) at 7:2–3.  The District Court rejected Plaintiffs' putatively urgent need for the information, emphasizing that this "whole matter" concerns foreclosing the release of Social Security Administration ("SSA") data to SSA's then-DOGE Team, but "th[at] horse has left the barn" because the Supreme Court had stayed the preliminary injunction months earlier.  *Id.* at 17:2–17.  Therefore, the District Court stayed this case pending Defendants' appeal of the preliminary injunction, "subject to the right of any party to move to lift the stay for good cause."  ECF 189.  Because the circumstances that justified a stay in August still exist today, there is no good cause to lift it.  Plaintiffs' Motion should be denied.

## BACKGROUND[1]

Plaintiffs filed their Amended Complaint on March 7, 2025.  ECF 17 (Am. Compl.).  The Amended Complaint contains several claims, most of them under the APA, all premised on Plaintiffs' allegation that "SSA and its acting officials have opened [SSA's] data systems to unauthorized personnel from the 'Department of Government Efficiency' (or 'DOGE') in violation of applicable laws."  *Id.* ¶ 2; *see also id.* ¶ 101 (Count I, APA: "SSA Defendants have disclosed and continue to disclose personal records contained in systems of record under their control."); *id.*

---

[1] Record page citations refer to the ECF pagination in the upper right corner of the document.

¶ 108 (Count II, Privacy Act: same); *id.* ¶ 114 (Count III, APA: "SSA Defendants unlawfully permitted DOGE Defendants to access and inspect return information."); *id.* ¶ 122 (Count V, APA: "SSA Defendants have disclosed an unfathomable amount of sensitive, personally identifying information about the American public without acknowledging that SSA was changing its policies.").  This Court granted a preliminary injunction on April 17, 2025.  ECF 146, 147. Relevant here, the Court found that SSA's grant of access to SSA data to the DOGE Team was injury-in-fact (establishing Article III standing) and final agency action.  Defendants appealed to the Fourth Circuit, ECF 148, which agreed to hear the merits of the appeal en banc, Case No. 25-1411, Docket Entry No. 27 (4th Cir.).

In light of the pending appeal, Defendants asked the Court to extend their deadline to respond to the Amended Complaint.  ECF 159, 161.  Although recognizing that "the Fourth Circuit's opinion will presumably provide guidance on at least some of the arguments the government may raise in a motion to dismiss," the District Court instead directed Defendants to file their response 14 days after the Supreme Court decided Defendants' then-pending motion to stay the injunction pending appeal.  ECF 163.  The Supreme Court granted the stay on June 6, 2025 (*SSA v. AFSCME*, 145 S. Ct. 1626 (2025) (Mem.)), and Defendants timely filed their Motion to Dismiss or for Summary Judgment (ECF 168, "Defendants' Dispositive Motion").

On July 31, 2025, and after receiving several extensions of time to oppose Defendants' Dispositive Motion, ECF 170; ECF 172, Plaintiffs filed a "Request For Hearing," indicating for the first time their plan to "seek limited discovery" before filing their own Cross-Motion for Summary Judgment ("Plaintiffs' Cross-Motion").  ECF 178; *see* ECF 184 at 2.[2]  Upon consideration of their request, this Court directed Plaintiffs to oppose Defendants' Dispositive

---

[2] Plaintiffs admitted that they were fully prepared to *oppose* Defendants' Motion.  ECF 180 at 1.

Motion, and file their Cross-Motion, immediately, but authorized Plaintiffs to move for discovery thereafter. ECF 179. The Court explained that Plaintiffs could then supplement their Cross-Motion, if warranted, based on any discovery granted. *Id.* Plaintiffs, however, insisted that they needed discovery before cross-moving, and asked to file the Cross-Motion on October 10. ECF 180 at 2, 3. Defendants, in response, renewed their request for a stay of these proceedings pending the Fourth Circuit's resolution of Defendants' appeal from the preliminary injunction, noting that courts often stay proceedings where, as here, the appellate proceeding is "likely to shed light on many threshold issues that remain central to this case." ECF 184 at 1, 4–5 (citing cases).

Plaintiffs opposed Defendants' Dispositive Motion on August 8. ECF 183. Echoing their Amended Complaint and earlier briefing, Plaintiffs argued that they had standing because "DOGE's improper *access* to sensitive records" is a "close analogue" to intrusion upon seclusion and is thus Article III injury. *Id.* at 11–18 (emphasis added). On the merits, Plaintiffs contended that SSA's provision of "unfettered DOGE access to SSA systems" was also "final agency action" under the APA (*id.* at 19–22), and that they had established a Privacy Act violation because the "access to records" that SSA provided its DOGE Team is not within the Privacy Act's need-to-know exception (*id.* at 22–28).

The Court temporarily stayed Plaintiffs' Cross-Motion deadline pending a telephonic hearing. ECF 182. At that hearing, the Court announced that, "as a practical matter," it was "not going to do anything [else in this case] until I know what the Fourth Circuit says." ECF 190 at 7:1–3; *accord id.* at 11:4–13 ("Why would I work on something that is before the Fourth Circuit on an issue that could be dispositive?"), *id.* at 14:7–25 ("I know [the Appeal] could have a big impact on my case."), *id.* at 20:16–19 ("I just can't imagine . . . why a judge would go forward on this case with all that is about to happen in the very same case with a higher court."). Explaining

3

its decision, the District Court emphasized that, "th[is] whole matter concerns foreclosing the release of all this very personal information to people who were not entitled to it"—but, in light of the Supreme Court's stay of the injunction—"the horse has left the barn." *Id.* at 17:2–17. "So the urgency of anything seems to me to be dissipated right now because the whole matter concerns foreclosing the release of all of this very personal information," and "now that that ship has sailed," "what difference does any of this make when we get to it?" *Id.* at 17:14–19.

Therefore, the District Court: (i) denied Defendants' Dispositive Motion without prejudice "[g]iven the pendency of the Appeal"; (ii) set a schedule for briefing Plaintiffs' motion for discovery, although noting that "the Court will not rule on the [d]iscovery [m]otion until after the Fourth Circuit resolves the Appeal"; and (iii) otherwise stayed the case pending the appeal, "subject to the right of any party to move to lift the stay for good cause." ECF 189. Although requiring the parties to complete briefing on Plaintiffs' request for discovery, the Court stated that it was disinclined to "put the Government through [actually responding to the discovery]" until "I know the case survives." ECF 190 at 21:9–22:2. Defendants timely opposed Plaintiffs' motion for discovery. ECF 191. Plaintiffs then abandoned it. ECF 194, 195.

The Fourth Circuit, sitting en banc, heard oral argument on Defendants' appeal of this Court's preliminary injunction on September 11, 2025. Case No. 25-1411, Docket Entry No. 61.

On January 16, 2026, Defendants filed a Notice of Corrections to the Record based on information that SSA shared with undersigned counsel in December 2025. ECF 197. Defendants disclosed that, weeks *before* the Court's March 20, 2025, temporary restraining order ("TRO") issued, a then-DOGE Team Member had potentially sent SSA data, including PII, to a U.S. DOGE Service employee. *Id.* at 2–3. Defendants further disclosed that, also before the TRO was entered, members of SSA's then-DOGE Team used links to share data through the third-party server

"Cloudflare" (although SSA was unable to determine what was shared). *Id.* at 5–6. In addition, Defendants clarified the exact timing of Defendants' compliance with the TRO (*id.* at 2), identified additional SSA databases to which the DOGE Team had had access before SSA certified compliance with the TRO on March 24 (*id.* at 3–4), and identified two post-TRO grants of access to DOGE Team members (*id.* at 3). Regarding the post-TRO grants, one was never used at all. *Id.* And there is no evidence that the other was used to access PII. *Id.* Finally, Defendants disclosed that, in March 2025, a political advocacy group asked members of SSA's DOGE Team to analyze state voters rolls (although SSA has not seen evidence that the group obtained SSA data). *Id.* at 4–5. Department of Justice counsel underscored:

> SSA and the undersigned counsel bring these matters to the Court's attention to ensure full candor to the Court. A review of the SSA DOGE Team's actions is ongoing, and SSA and the undersigned counsel will continue to ensure that the record and representations made to this Court are accurate.

*Id.* at 6. Over three weeks later, Plaintiffs filed a Motion to Lift Stay and Authorize Limited Discovery. ECF 200 (Mot. to Lift Stay). Plaintiffs argue that Defendants' Notice of Correction "supplies . . . cause" to lift the stay, because the "revelations" therein "go to the heart of the claims and defenses in this case." *Id.* at 1. Plaintiffs' proposed discovery, available at ECF 200-1, includes requests for admission, requests for production, interrogatories, and a 30(b)(6) deposition.

## ARGUMENT

The circumstances that justified the Court's stay order are still present today. The Court, therefore, should not disturb it. ECF 189. In any case, Plaintiffs fail to establish an exception to the rule that "'claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record.'" *Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019) (quoting *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S.*

*Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007)); *see also Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013).  At a minimum, Plaintiffs' request for discovery should await the Fourth Circuit's resolution of the preliminary-injunction appeal and (if the case survives) this Court's disposition of Defendants' renewed dispositive motion (which Plaintiffs do not now claim to need discovery to oppose).  If Defendants' dispositive motion is granted, Plaintiffs' alleged need for discovery in support of their own cross-motion will be mooted.  If the Court denies Defendants' motion, in so doing the Court would find that Defendants did not act lawfully or reasonably—also mooting any need for discovery.  Finally, even if the Court were to determine in the future that Plaintiffs are entitled to discovery, their requests are facially improper.

## I.    Plaintiffs Do Not Show Good Cause to Lift the Stay.

A court has the power to stay proceedings, which is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55.  A district court's discretion to delay proceedings is properly exercised where "a higher court will issue a decision that may affect the outcome of the pending case." *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 461–62 (S.D. W. Va. 2013); *see Hickey v. Baxter*, 833 F.2d 1005, 1987 WL 39020, at *1 (4th Cir. 1987) (Table) (per curiam) (affirming "district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues"); *Fowler-Bey v. Johnson*, 2018 WL 11476084, at *1–2 (D. Md. Nov. 30, 2018) (staying case where a "central issue" affecting plaintiff's claim was pending before the Fourth Circuit); *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 732 (D. Md. 2018) ("[T]his Court concludes that judicial economy will be served by a stay of this case because the resolution of the issues before the [appellate court] will

likely have a direct impact on the future course of the case, including on the next decisions this Court must make."); *Dawoudi v. Nationstar Mortg., LLC*, 2016 WL 8711604, at *2 (N.D. Ill. Sep. 16, 2016) (imposing stay where "a decision in the pending appeals would potentially be entirely dispositive of this case and, at a minimum, simplify the issues for the parties and the Court").

In August 2025, this Court properly exercised its discretion to stay proceedings in district court pending the Fourth Circuit's resolution of Defendants' appeal of the District Court's order granting a preliminary injunction. ECF 189; *see also* ECF 190 at 7:1–3, 11:4–13, 14:7–25, 20:16–19. The same circumstances that warranted a stay then still exist today: Defendants' appeal is fully briefed, and oral argument was held nearly six months ago in September 2025. Case No. 25-1411, Docket Entry No. 61. The Fourth Circuit will consider, *inter alia*, the correctness of this Court's determination that "SSA's provision to the DOGE Team of wholesale access to SSA records containing PII, without consent, and allegedly without need and to unqualified personnel" is Article III injury-in-fact and final agency action. *See, e.g.*, ECF 146 at 38–82; Case No. 25-1411, Docket Entry No. 32 at 31–48 (Appellant's Br.). It makes little sense for this Court to authorize extensive discovery before it knows whether it has jurisdiction over the case.

Plaintiffs contend that Defendants' Notice of Corrections to the Record (ECF 197) "go[es] to the heart of the defenses and claims in this case" and supplies cause to lift the stay. ECF 200 at 1. Plaintiffs are wrong. To begin, most of the corrections clarified SSA's compliance with an earlier TRO and the scope of access that certain "DOGE" employees had prior to that restraining order. ECF 197 §§ I, III, IV, V. These facts have little to no bearing on Plaintiffs' theory—alleged in their Amended Complaint and advanced in preliminary-injunction briefing—that SSA's initial decision to provide "DOGE" access to SSA data is *itself* Article III injury, final agency action, and contrary to law. Other corrections explained that two SSA DOGE Team employees communicated

with an outside advocacy group in possible violation of the Hatch Act (*id.* § V) and that members of SSA's DOGE Team ran afoul of SSA data security policies by using a private cloud server provider to share data (*id.* § VI).  Again, neither occurrence concerns SSA's initial decision to grant access to the SSA DOGE Team, which is what Plaintiffs complain about.  *See also* ECF 200 at 2 (acknowledging that "Plaintiffs filed suit challenging Defendant Social Security Administration's decision to *grant* the SSA DOGE Team unfettered access to the SSA records of millions" (emphasis added)).  Accordingly, and contrary to Plaintiffs' contention, lifting the stay because of the Notice would serve neither fairness nor efficiency.  *See id.* at 1.

In any case, the court best situated to determine the effect of the Notice on this case is the Fourth Circuit.  The Court of Appeals is aware of Defendants' Notice: Plaintiffs supplemented the record on appeal to include it.  *See* ECF 198 & 199; Case No. 25-1411, Docket Entry No. 62 (4th Cir.).  The Fourth Circuit has already directed, and the parties have filed, supplemental briefing regarding the import of the Notice on the appeal.  Case No. 25-1411, Docket Entry Nos. 65, 67, 69.  In their supplemental appellate brief, Plaintiffs asked the Fourth Circuit—as an alternative to affirming—to "remand to the district court for additional fact-finding."  *Id.*, Docket Entry No. 69 at 16–18.  If the Fourth Circuit agrees with Plaintiffs that a "more developed record" would "benefit [its] analysis," the Fourth Circuit will say so.  Alternatively, the Fourth Circuit may determine that no additional fact-finding is necessary and decide the appeal on the current record. Regardless, the Fourth Circuit's evaluation of the parties' supplemental briefing will bear on whether (and what) fact-gathering is warranted.  This Court should not circumvent that process.

## II.    Plaintiffs Are Not Entitled to Extra-Record Discovery in This APA Case.

In APA cases like this one, to avoid "intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency," courts "must only consider the record made before the agency at the time the agency acted."  *Dow AgroSciences LLC v. Nat'l Marine Fisheries*

*Serv.*, 707 F.3d 462, 467 (4th Cir. 2013) (citations omitted); *accord Audubon*, 524 F. Supp. 2d at 660 ("[C]laims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record[.]").  This "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019) (citation omitted).  Under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706.  Ordinarily, this inquiry is "limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *New York*, 588 U.S. at 780 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978)).  Hence, "the focal point for judicial review" under the APA "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).[3]

    A. <u>No Exception to the General Prohibition of Extra-Record Discovery Applies Here</u>.

"Discovery beyond the [administrative] record may be appropriate where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned." *Mayor & City Council of Balt.*,

---

[3] Plaintiffs' Amended Complaint includes, in addition to APA claims, a standalone claim under the Privacy Act (Count II); an *ultra vires* claim (Count VI); and a claim for violation of the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2 (Count VII). *See* ECF 17.  Given the significant overlap between Plaintiffs' APA and non-APA claims, there is no reason to treat Plaintiffs' non-APA claims differently as concerns their request for discovery.  Plaintiffs' Motion to Lift Stay does not argue otherwise. *See generally* ECF 200; *see also, e.g.*, ECF 179 (Court Order on Plaintiffs' Request for Hearing) at 2 (acknowledging that Plaintiffs' suit "implicates the Administrative Procedure Act").

429 F. Supp. 3d at 137 (citation omitted).[4]  In addition, "a 'strong showing of bad faith or improper behavior' . . . may justify extra-record discovery."  *New York*, 588 U.S. at 781 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

Plaintiffs argue that Defendants' Notice raises "questions" that "can only be answered by tailored discovery," such as "whether Defendants have determined that no other data sharing occurred or the status of SSA data on the third-party server."  *E.g.*, ECF 200 at 6.  But whether the Notice raises "questions" of interest to Plaintiffs is beside the point; what matters is whether Plaintiffs establish a specific exception to the rule prohibiting extra-record discovery.  They do not.  *See id.* (stating simply that "Parties should have an opportunity to question facts that an opposing party 'has itself put in[to] evidence.'" (quoting *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008))).  To the extent Plaintiffs intended to argue one or more of the delineated exceptions, they fail: the Administrative Record SSA provided is not incomplete; the information Plaintiffs seek would not provide "helpful context" or assist the Court in determining whether the agency failed to consider relevant factors; and the integrity of the Administrative Record has not been impugned.  Indeed, the Notice demonstrates SSA's *good*-faith effort to comply with their duty of candor and integrity.  As explained *supra* pages 4–5, Defendants' Notice offered corrections and clarifications that have no bearing on either the Administrative Record or the claims Plaintiffs have *actually* brought concerning SSA's initial decision to grant the DOGE Team access to SSA data.

---

[4] Plaintiffs cite a handful of cases for the proposition that "good cause" exists for "expedited discovery" here.  ECF 200 at 5 (citing *Abrego Garcia v. Noem*, 348 F.R.D. 589 (D. Md. 2025); *Palmer v. Rice*, 231 F.R.D. 21 (D.D.C. 2005); and *Blackberry Ltd. v. Typo Prods., LLC*, 2014 WL 4136586 (N.D. Cal. Aug. 21, 2014)).  Those were not APA cases and do not govern the Court's analysis on the propriety and timing of discovery here.  *E.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 516–17 (D. Md. 2025) (underlying preliminary injunction based on Defendants' alleged violation of the Immigration and Nationality Act and procedural due process, in addition to APA).

Plaintiffs further argue that Defendants' Notice reflects a "violation" of the Court's March 2025 TRO and assert that "enforcing the rule of law requires additional investigation." ECF 200 at 7; *see also, e.g.*, *id.* at 12. Again, Plaintiffs misunderstand the posture of this case. Plaintiffs' belief that Defendants have violated the Court's prior TRO—which they have not memorialized in any properly filed motion for compliance—is not properly before the Court. Although compliance with the Court's injunctions is undoubtedly important, it has no bearing on the merits of this APA case about data-access decisions. And courts should "not . . . allow Plaintiffs to go on the proverbial fishing expedition . . . to accomplish through standard discovery what should be attempted through . . . enforcement proceedings." *Stone v. Signode Indus. Grp. LLC*, 2021 WL 2894159, at *3 (N.D. Ill. July 9, 2021), *objections overruled*, 2022 WL 393584 (N.D. Ill. Feb. 9, 2022). Plaintiffs cite no case where a court has allowed a party to use APA extra-record discovery to pursue general discovery into compliance with an injunction.

Finally, Plaintiffs contend that discovery is not only appropriate but is also urgent, because "[i]t is now clear that Plaintiffs' members' private data, meant to be held in trust by SSA, has been shared not *just* with SSA DOGE Team members, but further: data was both sent to the agency responsible for immigration enforcement and placed on a third-party server without governmental security controls." ECF 200 at 6 (emphasis added); *see also, e.g.*, *id.* at 9 ("Plaintiffs seek limited discovery regarding the extent of the SSA DOGE Team's disclosure of data to third parties and the type of data shared."). But the operative complaint, and this Court's preliminary injunction, concern SSA's initial decision to disclose data to "DOGE." *E.g.*, ECF 17 (Am. Compl.) ¶ 2 (alleging that "SSA and its acting officials have opened its data systems to unauthorized personnel from the "Department of Government Efficiency" (or "DOGE") in violation of applicable laws and with disregard fo[r] the privacy interest of the millions of Americans that SSA serves."). If

11

Plaintiffs now want to assert new claims, based on new alleged disclosures, or challenge *how* SSA's DOGE Team used the access *after* it was granted, Plaintiffs would first need to seek leave to further amend their complaint—which they may not do while the case is properly stayed and pending on appeal.

In any event, Plaintiffs fail to explain how Defendants' Notice renders discovery suddenly "urgent." It is not. As this Court previously observed, the Supreme Court's June 2025 stay order has long since permitted SSA's then-DOGE Team access to the data that Plaintiffs' Amended Complaint challenges. ECF 190 at 17:2–19. Even if the Notice were a proper subject of future discovery, Defendants have confirmed to Plaintiffs in writing that, "[a] litigation hold for records relevant to this case was issued promptly after Plaintiffs filed their original complaint, and that a litigation hold has been and will remain in place for the case's duration," and that "[t]he Social Security Administration and the Department of Justice also have been complying with the Federal Records Act and will continue to do so going forward." Accordingly, SSA "does not have reason to believe that any relevant information in its possession has not been preserved."

In sum, there is no "urgency" to procure the information Plaintiffs seek, even if it were relevant, proportional, and within an exception to the prohibition of discovery (which it is not).

### B. Plaintiffs' Demand for Discovery Is Procedurally Improper.

Should this case survive the Fourth Circuit's resolution of Defendants' appeal, the merits questions before the Court will be binary—the agency acted lawfully or not, reasonably or not. If the Court grants Defendants' renewed dispositive motion, the case will be over for Plaintiffs. If the Court denies the motion by finding the agency acted unlawfully or unreasonably based on the administrative record, the proper course would be to deny Defendants' renewed dispositive motion and enter judgment for Plaintiffs under Rule 56(f)(1). Alternatively, if the Court finds the record

to be inadequate, it would remand to the agency. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (explaining that "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Occidental Petrol. Corp. v. SEC*, 873 F.2d 325, 347 (D.C. Cir. 1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."); *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("If the agency action, once explained by the proper agency official, is not sustainable on the record itself, the proper judicial approach has been to vacate the action and to remand the matter back to the agency for further consideration.").

In any event, if there is still a case after the Fourth Circuit's ruling, the Court should resolve any renewed motion to dismiss before permitting discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009) (when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise" because "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions"); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (finding that until a "threshold immunity question is resolved, discovery should not be allowed"); *In re Musk*, 2025 WL 926608, at \*1 (D.C. Cir. Mar. 26, 2025) (per curiam) (staying discovery because "the district court was required to decide [defendants'] motion to dismiss before allowing discovery"); *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should be resolved before discovery begins." (citation modified)); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (same).

13

C.  Plaintiffs' Proposed Discovery Requests Are Facially Improper.

When a plaintiff can avail itself of an APA discovery exception, the resulting discovery must be tailored only to information necessary to resolve that exception.  *See, e.g.*, *Goose Creek Physical Med., LLC v. Becerra*, 2024 WL 942918, at *11 (D.S.C. Mar. 5, 2024) (permitting extra-record discovery only on the "properly identified" and "specific[ly] excluded records" that were needed to complete the administrative record); *Manker v. Spencer*, 2019 WL 1506654, at *5 (D. Conn. Apr. 5, 2019) (holding that every APA discovery request "require[s] a reason, such as filling a specific gap in the administrative record").  This is because the purpose of APA discovery is not to open the floodgates to whatever Plaintiffs want to find; it is only to fill concrete gaps or deficiencies *in the administrative record*.  *See, e.g.*, *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 653–54 (W.D. Va. 2023) ("Given the presumption of completeness, I do not find additional discovery would be appropriate, which would essentially allow the plaintiffs to conduct a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist."); *Trower v. Blinken*, 2022 WL 2304041, at *4 (E.D. Mo. June 27, 2022) (permitting discovery in an APA case only to complete the record where it was incomplete and refusing requests that amounted to a "fishing expedition"); *Skull Valley Band of Goshute Indians v. Cason*, 2009 WL 10689787, at *23 (D. Utah Mar. 2, 2009) (granting protective order where discovery requests "appear[ed] to be merely fishing expeditions, too speculative to warrant the limited discovery available only rarely in APA litigation"); *Al-Saidi v. Noem*, 2025 WL 959094, at *3 (S.D.N.Y. Mar. 31, 2025) ("[I]n the context of an APA proceeding against a federal agency that has produced the administrative record of the challenged decision, 'a party seeking discovery

14

cannot simply engage in a fishing expedition based on bare speculation that additional data might reveal something beneficial.'" (citation omitted)).

Plaintiffs' proposed discovery requests are not tailored to fill concrete gaps or deficiencies *in the administrative record*.[5]   Nor do they even address the claims Plaintiffs have brought.  Instead, Plaintiffs' putative discovery largely focuses on compliance with the TRO.  *E.g.*, Rogs 2–5 and 7–9, RFPs 2–3, and 30(b)(6) Topic 7; *see Stone*, 2021 WL 2894159, at *3. Plaintiffs also seek information about *how* the SSA DOGE Team used certain data and systems *after* access had been granted.  *E.g.*, Rogs 1, 10, RFPs 5–8, and 30(b)(6) Topics 1, 4.  But such information does not inform the legality of the granting of access in the first place.  And Plaintiffs seek "any and all documents and/or communications referring, containing, or concerning any audits, investigations, or other reviews."  RFP 11.  But Plaintiffs cannot appoint themselves roving inspectors general in pursuit of general information about any and every SSA audit or investigation of the SSA DOGE Team.  Such requests are again untethered to Plaintiffs' APA claims or the administrative record.

Plaintiffs' pursuit of a 30(b)(6) deposition is itself questionable.  Depositions are disfavored in APA cases because they are, by their nature, difficult to cabin to the narrow exceptions purportedly authorizing extra-record discovery in the first place.  *See, e.g.*, *Immigrant Defs. L. Ctr. v. DHS*, 2021 WL 6882438, at *6 (C.D. Cal. Dec. 8, 2021) (observing in APA case that it "would be difficult to sufficiently narrow or define any deposition topics such that the deposition testimony

---

[5] Plaintiffs' discovery requests suffer from numerous legal defects, including violations of the Federal Rules.  For example, Plaintiffs' "nine" interrogatories are in fact 28 separate interrogatories in disguise.  *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010) (Rule 33(a)(1) violated where party's "multi-part interrogatories largely encompassed multiple questions").  Defendants reserve the right to address these and other defects in Plaintiffs' discovery requests when served, including through discovery objections and/or a motion for protective order under Rule 26(c).

would be appropriately targeted"); *Trower*, 2022 WL 2304041, at *4 (finding that a deposition in an APA case risked a "fishing expedition into sensitive issues" that offered "minimal assistance to the Court"). Depositions are particularly inappropriate where, as here, they duplicate information already sought through written discovery. *See Immigrant Defs. L. Ctr.*, 2021 WL 6882438, at *6.

## <u>CONCLUSION</u>

Defendants take extremely seriously their duty of candor to the Court and compliance with its orders. It is why they filed the Notice of Corrections in the first place. Defendants' good-faith candor, however, does not entitle Plaintiffs to a fishing expedition on issues that are at best peripheral to their claims, while Defendants' challenge to the Court's subject-matter jurisdiction remains unresolved. The stay should remain in place, and Plaintiffs' request for discovery should be denied until, at the very least, the appeal is resolved. If the Court were to allow extra-record discovery, Plaintiffs should be required to revise their requests. Defendants reserve all rights, including seeking a protective order as to any discovery ultimately served.


Dated: February 27, 2026                    Respectfully submitted,

                                             BRETT A. SHUMATE
                                             Assistant Attorney General
                                             Civil Division

                                             ELIZABETH J. SHAPIRO
                                             Deputy Branch Director
                                             Civil Division, Federal Programs Branch

                                             */s/ Marianne F. Kies*
                                             MARIANNE F. KIES
                                             SAMUEL HOLT
                                             Trial Attorneys
                                             Civil Division, Federal Programs Branch
                                             United States Department of Justice
                                             1100 L Street NW
                                             Washington, DC 20005
                                             Marianne.F.Kies@usdoj.gov

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 27, 2026, I electronically filed the foregoing and thereby caused a copy to be served on counsel of record.

<u>/s/ Marianne F. Kies</u>
MARIANNE F. KIES

17