**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,

Plaintiffs,

v.

SOCIAL SECURITY ADMINISTRATION, *et al*.,

Defendants.

Case No. 1:25-cv-00596-ELH

**DEFENDANTS' MOTION TO RESCIND OR STAY COURT'S APRIL 14 ORDER**
**AS IMPROVIDENTLY GRANTED**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. The Court Should Consider Defendants' Argument that Plaintiffs' Case Is Now Moot Before Authorizing Any Discovery. ........ 6

II. Plaintiffs Have Not Pled Claims Premised on a Theory of Misuse of Data; Therefore, They Cannot Pursue Discovery Tethered to Any Such Theory. ........ 7

III. There Is No Basis for Extra-Record Discovery, Even if There Were Jurisdiction and a Properly Pled Complaint. ........ 8

IV. Even if Discovery Were Appropriate, Plaintiffs' Proposed Discovery Is Not Properly Tailored. ........ 10

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*,
524 F. Supp. 2d 642 (D. Md. 2007) ........ 5

*Bar MK Ranches v. Yuetter*,
994 F.2d 735 (10th Cir. 1993) ........ 10

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 6

*Church of Scientology of Calif. v. United States*,
506 U.S. 9 (1992) ........ 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 8

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979) ........ 6

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 5, 6, 8

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
707 F.3d 462 (4th Cir. 2013) ........ 5

*Goose Creek Physical Med., LLC v. Becerra*,
2024 WL 942918 (D.S.C. Mar. 5, 2024) ........ 9

*Hill Dermaceuticals, Inc. v. FDA*,
709 F.3d 44 (D.C. Cir. 2013) ........ 4

*Immigrant Defs. L. Ctr. v. DHS*,
2021 WL 6882438 (C.D. Cal. Dec. 8, 2021) ........ 11

*In re Musk*,
2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ........ 6

*Kaplan v. Cal. Pub. Emps.' Ret. Sys.*,
1998 WL 575095 (N.D. Cal. Sept. 3, 1998) ........ 8

*Kaylor v. Fields,*
661 F.2d 1177 (8th Cir. 1981) .............................................................................................. 8

*Mayor & City Council of Balt. v. Trump*,
429 F. Supp. 3d 128 (D. Md. 2019)................................................................................ 4, 8, 9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)................................................................................................................. 9

*Petrolane, Inc. v. United States*,
79 F.R.D. 115 (C.D. Cal. 1978)............................................................................................. 10

*Siegert v. Gilley*,
500 U.S. 226 (1991)................................................................................................................. 5

*St. Site Work Grp. v. Airgas, Inc.*,
2021 WL 4255030 (D. Md. Sept. 16, 2021) ........................................................................... 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)................................................................................................................... 6

*Tafas v. Dudas*,
530 F. Supp. 2d 786 (E.D. Va. 2008) ..................................................................................... 9

*Trower v. Blinken*,
2022 WL 2304041 (E.D. Mo. June 27, 2022) ....................................................................... 11

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978)................................................................................................................. 6

**Statutes and Rules**

5 U.S.C. § 706......................................................................................................................... 5

Fed. R. Civ. P. 26...................................................................................................................... 8

**Other Authorities**

U.S. Const. Art. II ..................................................................................................................... 4

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025)................................................ 1, 6, 9

# INTRODUCTION

Defendants respectfully move to rescind or stay the Court's April 14, 2026, Order as improvidently granted.

*First*, this case is moot: Defendant Social Security Administration ("SSA") no longer has a DOGE Team. And, according to the terms of the Executive Order that created it, the DOGE Temporary Organization will imminently expire. *See* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), § 3(b). The Court should decide whether a live controversy exists before authorizing discovery, not after.

*Second*, Plaintiffs' operative complaint concerns the lawfulness of SSA's decision to grant its then-DOGE Team access to SSA systems of records—not any alleged misuse of data after access was granted. If Plaintiffs wish to pursue discovery about an alleged misuse of data post-initial grant, Plaintiffs must obtain leave to amend their complaint, with well-pled factual allegations, to assert this theory so that—as would be necessary for any subsequent discovery—Defendants and the Court understand the parameters of Plaintiffs' operative claims and basis for irreparable harm to establish entitlement to injunctive relief.

*Third*, even if Plaintiffs had adequately pled irreparable harm relating to misuse of data (they have not), and even if there were a live controversy (there is not), Plaintiffs cannot pursue discovery merely because they generally have "questions." Rather, insofar as Plaintiffs have chosen to file suit under the Administrative Procedure Act ("APA"), Plaintiffs must satisfy a specific exception to the general rule that APA cases are limited to the administrative record. They have not done so. And even if they had, the extra-record discovery must be relevant and tailored to that exception. Plaintiffs' proposed discovery is not.

For each and all these reasons, the Court should rescind or stay its order.

## BACKGROUND

Plaintiffs filed their Amended Complaint on March 7, 2025. ECF 17 ("Am. Compl."). Plaintiffs' core allegation is that "SSA and its acting officials have opened [SSA's] data systems to unauthorized personnel from the 'Department of Government Efficiency' (or 'DOGE') in violation of applicable laws." *Id.* ¶ 2; *see also, e.g.*, *id.* ¶ 101 (Count I, APA: "SSA Defendants have disclosed and continue to disclose personal records contained in systems of record under their control."); *id.* ¶ 108 (Count II, Privacy Act: same); *id.* ¶ 114 (Count III, APA: "SSA Defendants unlawfully permitted DOGE Defendants to access and inspect tax return information."); *id.* ¶ 122 (Count V, APA: "SSA Defendants have disclosed an unfathomable amount of sensitive, personally identifying information about the American public without acknowledging that SSA was changing its policies[.]").

Defendants promptly produced an Administrative Record. *See, e.g.*, ECF 100. This Court subsequently granted a preliminary injunction on April 17, 2025. ECF 146, 147. Defendants appealed to the Fourth Circuit, ECF 148, which agreed to hear the merits of the appeal en banc, Case No. 25-1411, Dkt. 27 (4th Cir.). The Supreme Court granted a stay of the preliminary injunction on June 6, 2025 (*SSA v. AFSCME*, 605 U.S. ---, 145 S. Ct. 1626 (2025) (Mem.)), and Defendants timely filed their Motion to Dismiss or for Summary Judgment (ECF 168). Plaintiffs delayed nearly two months before filing an opposition on August 8, 2025. *See* ECF 183. Echoing their Amended Complaint and earlier briefing, Plaintiffs contended that "SSA's alteration of its longstanding access policies in order to allow unfettered DOGE access to SSA systems" is "discrete, final agency action" under the APA (*id.* at 19–22[1]), and that they had established a Privacy Act violation because the "access to records" that SSA provided its DOGE Team is not

[1] Record page citations refer to the ECF pagination in the upper right corner of the document.

within that statute's need-to-know exception (*id.* at 22–28). Plaintiffs also filed a motion for "limited discovery," ECF 187, but withdrew it after Defendants opposed, *see* ECF 191, ECF 194, ECF 195.[2]

After an August 12, 2025, hearing, this Court denied Defendants' dispositive motion without prejudice and stated that Defendants "may file a renewed motion to dismiss, due within three weeks of the Fourth Circuit's ruling [on Defendants' appeal of the preliminary injunction] . . . unless the date is otherwise extended." ECF 189. The District Court emphasized that, "*th[is] whole matter concerns foreclosing the release of all this very personal information to people who were not entitled to it*"—but, considering the Supreme Court's stay of the injunction, "the horse has left the barn[.]" Aug. 12, 2025, Hr'g Tr. at 17:2–19 (ECF 190) (emphasis added). The Court further noted its disinclination to "put the Government through [actually responding to discovery]" until "I know the case survives." *Id.* at 21:9–22:2.

On January 16, 2026, by which point the Fourth Circuit had not yet issued its ruling, Defendants filed a Notice of Corrections to the Record based on information that SSA shared with undersigned counsel in December 2025. ECF 197. Defendants disclosed that, weeks *before* the Court's March 20, 2025, temporary restraining order ("TRO") issued, a then-DOGE Team Member had potentially sent SSA data, including PII, to a U.S. DOGE Service employee. *Id.* at 2–3. Defendants further disclosed that, also before the TRO was entered, members of SSA's then-DOGE Team used links to share data through the third-party server "Cloudflare" (although SSA was unable to determine what was shared). *Id.* at 5–6. In addition, Defendants clarified the exact timing of Defendants' compliance with the TRO (*id.* at 2), identified additional SSA databases to

[2] Apart from seeking a privilege log, Plaintiffs had not previously challenged the sufficiency of the Record. *See* ECF 96, ECF 105, ECF 106, ECF 141.

which the DOGE Team had had access before SSA certified compliance with the TRO on March 24 (*id.* at 3–4), and identified two post-TRO grants of access to DOGE Team members (*id.* at 3). Regarding the post-TRO grants, one was never used at all. *Id.* And there is no evidence that the other was used to access PII. *Id.* Finally, Defendants disclosed that, in March 2025, a political advocacy group asked members of SSA's DOGE Team to analyze state voters rolls (although SSA has not seen evidence that the group obtained SSA data). *Id.* at 4–5. Department of Justice counsel underscored:

> SSA and the undersigned counsel bring these matters to the Court's attention to ensure full candor to the Court. A review of the SSA DOGE Team's actions is ongoing, and SSA and the undersigned counsel will continue to ensure that the record and representations made to this Court are accurate.

*Id.* at 6.

Roughly three weeks later, Plaintiffs filed a motion to lift the stay and seek discovery. ECF 200 ("Renewed Motion for Discovery"). Plaintiffs argued that Defendants' Notice of Corrections "supplie[d] . . . cause" to lift the stay, because the "revelations" therein "go to the heart of the claims and defenses in this case." *Id.* at 1. Defendants opposed the Renewed Motion for Discovery, noting, *inter alia*, that "Plaintiffs fail to establish an exception to the rule" that "'claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record.'" ECF 204 at 10–11 (quoting *Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019) (Hollander, J.) and citing *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)); *see also id.* at 13–18.[3] Defendants further argued that, if a case

[3] Plaintiffs' Amended Complaint includes, in addition to APA claims, a standalone claim under the Privacy Act (Count II); an *ultra vires* claim (Count VI); and a claim for violation of the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2 (Count VII). *See* ECF 17. Given the significant overlap between Plaintiffs' APA and non-APA claims, there is no reason to treat Plaintiffs' non-APA claims differently as concerns their request for discovery. Plaintiffs' Motion to Lift Stay did

remains after the Fourth Circuit's ruling, the Court should resolve any renewed motion to dismiss before permitting discovery. *Id.* at 18 (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).

On April 10, 2026, the Fourth Circuit, sitting en banc, vacated the Court's preliminary injunction, finding that Plaintiffs likely had standing but had failed to establish irreparable harm in the absence of preliminary relief. *See AFSCME v. SSA*, No. 25-1411, Dkt. 75 (4th Cir. April 10, 2026) ("Fourth Circuit Decision"). On April 14, 2026, this Court granted Plaintiffs' Renewed Motion for Discovery "provided, however, that by April 21, 2025, defendants may move to rescind this Order as improvidently granted." *See* ECF 212 ("April 14 Order").

**LEGAL STANDARD**

To avoid "intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency," courts "must only consider the record made before the agency at the time the agency acted." *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467 (4th Cir. 2013) (citations omitted); *accord Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007) ("[C]laims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record[.]"). This "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019) (citation omitted). Under the APA, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. Ordinarily, this inquiry is "limited to evaluating the agency's contemporaneous explanation

---

not argue otherwise. *See generally* ECF 200; *see also, e.g.*, Aug. 1, 2025 Letter Order at 2, ECF 179 (acknowledging that Plaintiffs' suit "implicates the Administrative Procedure Act").

in light of the existing administrative record." *New York*, 588 U.S. at 780 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978)). Hence, "the focal point for judicial review" under the APA "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

## ARGUMENT

This Court should rescind or stay its April 14 Order for at least three reasons.

### I. The Court Should Consider Defendants' Argument that Plaintiffs' Case Is Now Moot Before Authorizing Any Discovery.

Defendants intend on moving to dismiss for lack of jurisdiction because this case, as pled, is now moot. Defendants will produce one or more sworn declarations attesting that the members of the then-SSA DOGE Team have all left SSA. There is no longer any DOGE Team at SSA. Moreover, the DOGE Temporary Organization will expire on July 4 (fewer than three months from now). Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), § 3(b). The Amended Complaint does not seek any retroactive relief, such as damages. Accordingly, there is no relief this Court can provide to Plaintiffs that would remedy their alleged harms. *See Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992) (finding case moot when the court is unable to grant "any effectual relief whatever" to the parties (citation omitted)); *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (finding case moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" (citation omitted)). The parties should brief the mootness issue, and the Court should first determine if the case is moot before—not after—discovery. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (citation omitted)); *In re Musk*, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) (per curiam) (staying discovery because "the

district court was *required* to decide [defendants'] motion to dismiss before allowing discovery" (emphasis added)). Defendants inferred this is what the Court contemplated when it directed Defendants to "file a renewed motion to dismiss, due within three weeks of the Fourth Circuit's ruling . . . unless the date is otherwise extended." ECF 189; *see also* Aug. 12, 2025, Hr'g Tr. at 21:9–22:2 (stating disinclination to "put the Government through [actually responding to discovery]" until "I know the case survives").

## II. Plaintiffs Have Not Pled Claims Premised on a Theory of Misuse of Data; Therefore, They Cannot Pursue Discovery Tethered to Any Such Theory.

Plaintiffs' claimed entitlement to discovery is meritless for even a more basic reason: it is not addressed to claims before the Court. Plaintiffs' case, as this Court has itself recognized, is about the alleged final agency action of granting access to the SSA DOGE Team in the first place. *See generally* Am. Compl.; Aug. 12, 2025, Hr'g Tr. at 17:2–19. It is *not* about the alleged misuse of data after access was granted nor is Plaintiffs' case about seeking money damages for misuse of data. *See generally* Am. Compl. As the Fourth Circuit observed:

> When the case was filed and in the original preliminary injunction proceedings, plaintiffs' theory of the case was not that DOGE had misused the information or disclosed it (accidentally or otherwise) to malicious actors. Instead, plaintiffs argued that handing over non-anonymized and highly sensitive information to DOGE was *itself* unlawful.

Fourth Circuit Decision at 4.

Nearly all of Plaintiffs' proposed discovery requests, attached hereto as **Exhibit A**,[4] are directed at alleged misuse of data *after* access was granted. Plaintiffs have not even obtained leave to amend their complaint to encompass this legal theory, much less actually filed a second amended complaint. Moreover, any hypothetical future claim in this case about the misuse of data would

[4] Plaintiffs purported to serve the requests for production of documents, requests for admissions, interrogatories, and 30(b)(6) notice contained in Exhibit A on April 14, 2026.

likely not be an APA claim challenging final agency action, but rather a Privacy Act damages claim. Because Plaintiffs' proposed discovery requests are neither relevant nor proportional to the needs of the claims *currently* before the Court, the Court should disallow them for this additional reason. *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *68th St. Site Work Grp. v. Airgas, Inc.*, 2021 WL 4255030, at *15 (D. Md. Sept. 16, 2021) ("Plaintiff has not asserted any non-speculative theories of jurisdiction premised on plausible facts. Thus, on the present record, Plaintiff is not entitled to conduct jurisdictional discovery as a fishing expedition[.]"); *Kaplan v. Cal. Pub. Emps.' Ret. Sys.*, 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998) (similar), *aff'd*, 221 F.3d 1348 (9th Cir. 2000); *Kaylor v. Fields,* 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

## III. There Is No Basis for Extra-Record Discovery, Even if There Were Jurisdiction and a Properly Pled Complaint.

As Defendants explained in response to Plaintiffs' Renewed Discovery Motion (ECF 204 at 13–17), Plaintiffs still have not articulated a legitimate basis for extra-record discovery in this APA case. "Discovery beyond the [administrative] record may be appropriate where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned." *Mayor & City Council of Balt.*, 429 F. Supp. 3d at 137. In addition, "a 'strong showing of bad faith or improper behavior' . . . may justify extra-record discovery." *New York*, 588 U.S. at 781 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

Simply stating that "questions" have been raised does not suffice to demonstrate entitlement to discovery beyond the administrative record. To the extent Plaintiffs intend to rely

on the bad faith exception (*Mayor & City Council of Balt.*, 429 F. Supp. 3d at 137), they fail to meet this "high standard" for extra-record discovery because SSA demonstrably has acted in good faith. *Tafas v. Dudas*, 530 F. Supp. 2d 786, 797 (E.D. Va. 2008). It was SSA's voluntary internal review that uncovered that certain former DOGE Team members had acted contrary to agency policy. SSA reported possible discrepancies in the record first to its counsel and then the Court. SSA is also complying with ongoing audits and investigations related to the DOGE Team's access to SSA data and alleged misuse of SSA information, which is the proper forum and process. Plaintiffs' outrage about conduct last year by the now-nonexistent SSA DOGE Team is not a legal basis to permit them to act as a roving inspector general. And it is not a basis for Rule 26 discovery in an APA case. *See Mayor & City Council of Balt. v*, 429 F. Supp. 3d at 137.

Even if extra-record discovery were appropriate in this APA case, the discovery cannot be unmoored from the exception that putatively justifies it. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." (citation omitted)); *see also, e.g.*, *Goose Creek Physical Med., LLC v. Becerra*, 2024 WL 942918, at *11 (D.S.C. Mar. 5, 2024) (extra-record discovery must be aimed at "properly identif[ying]" "specific[ally] excluded records" that are needed to complete the administrative record). In this case, the extra-record discovery Plaintiffs seek will not complete the administrative record regarding Plaintiffs' APA theory that SSA took a final agency action by granting its DOGE Team members access to data pursuant to Executive Order No. 14,158 and that the initial access decision was itself unlawful to Plaintiffs' detriment. *See* Am. Compl. ¶¶ 2, 101, 108 114, 122; ECF 183 at 19–28. Nor would extra-record discovery support Plaintiffs' request for injunctive relief to enjoin the DOGE Team's access to agency records. In sum, nothing about post-decisional conduct

by the SSA DOGE Team will help prove Plaintiffs' claim that the decision itself to grant access violated the APA.

## IV. Even if Discovery Were Appropriate, Plaintiffs' Proposed Discovery Is Not Properly Tailored.

For the reasons discussed above, the Court should rescind or stay its April 14 Order. But even if the Court allows extra-record discovery to occur now, in this APA case, while a motion to dismiss for lack of subject-matter jurisdiction is pending, the Court should ensure that the discovery is relevant, proportional, and otherwise tailored to whatever extra-record exception the Court determines applies. *See, e.g.*, *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) (finding litigant established extra-record discovery exception but only granted "limited discovery [] appropriate to resolve that question"); *Petrolane, Inc. v. United States*, 79 F.R.D. 115, 119 (C.D. Cal. 1978) (granting discovery "limited to two issues" related to resolving extra-record discovery exception).

On Plaintiffs' theory, any post-decisional misuse of data is, at most, relevant to the question of irreparable harm sufficient to prove Plaintiffs' entitlement to injunctive relief. Discovery therefore should be confined to that narrow issue, such as questions tailored to whether any Plaintiff member's data was disclosed to third parties or whether any of Plaintiffs' members' personally identifiable information was compromised or lost.[5] But the vast majority of Plaintiffs' discovery requests are not targeted to this issue. To use just a few examples, Plaintiffs' sweeping written discovery requests target documents and communications *un*related to alleged harms to Plaintiffs (many of which are facially privileged), such as "[a]ll records, reports, communications,

[5] For example, Plaintiffs' proposed document requests seeking documents about the SSA DOGE Team's activity on Cloudflare or disclosure of records to third-party advocacy groups *could*, if appropriately tailored, at least potentially be potentially relevant to alleged harm to Plaintiffs. *See* Ex. A (Proposed RFP 7, 9, 10; Proposed Integratory 10).

notes, or documents relied on in preparation of the Notice or referred to by the Notice" (Proposed RFP 1) and "[a]ny and all documents and/or communications referencing, containing, or concerning any audits, investigations, or other reviews through which Defendants or their counsel learned of any of the events or information described in the Notice" (Proposed RFP 11). Plaintiffs also seek discovery seemingly fishing for proof of non-compliance, such as a "detailed timeline of all actions Defendants took to implement the Temporary Restraining Order beginning on March 20, 2025, and ending at 11:59 p.m. on March 24, 2025, and describe any and all instructions given to SSA employees and members of the SSA DOGE Team regarding compliance with the TRO." Proposed Interrogatory 2. Plaintiffs further seek deposition testimony via Rule 30(b)(6), despite that depositions are particularly disfavored in APA cases. *See, e.g.*, *Immigrant Defs. L. Ctr. v. DHS*, 2021 WL 6882438, at *6 (C.D. Cal. Dec. 8, 2021) (observing in an APA case that it "would be difficult to sufficiently narrow or define any deposition topics such that the deposition testimony would be appropriately targeted"); *Trower v. Blinken*, 2022 WL 2304041, at *4 (E.D. Mo. June 27, 2022) (finding that a deposition in an APA case risked a "fishing expedition into sensitive issues" that offered "minimal assistance to the Court").

***

Extra-record discovery is not appropriate—much less at this procedural juncture. Therefore, the Court should rescind or stay its April 14 Order. At a minimum, if extra-record discovery is authorized at all, the Court should set *reasonable* and *proportional* limitations on Plaintiffs' ability to serve discovery related to post-decisional conduct, tethered to any alleged harm Plaintiffs claim to have suffered. Plaintiffs should not be permitted to take depositions, and they should be limited to, at most, five requests for production, five interrogatories, and five requests for admission.

## CONCLUSION

For the reasons stated above, the Court should rescind or stay the Court's April 14, 2026, Order as improvidently granted.

Dated: April 21, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

*/s/ Marianne F. Kies*
MARIANNE F. KIES
SAMUEL HOLT
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW
Washington, DC 20005
Marianne.F.Kies@usdoj.gov
202-353-1819