**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>*Plaintiffs*,<br><br>*vs.*<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-00596 |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO LIFT STAY AND AUTHORIZE LIMITED DISCOVERY

This Court has already determined that Plaintiffs are entitled to the discovery detailed in ECF 200-1. *See* Order Granting Discovery, ECF 212 ("Order"). It did so in part because the opinion recently issued by the en banc U.S. Court of Appeals for the Fourth Circuit "makes clear that discovery is appropriate." *Id.* at 4. Nothing in Defendants' motion to rescind or stay the Order suggests otherwise. Indeed, the Fourth Circuit's ruling forecloses Defendants' previous primary argument: that Plaintiffs lack standing to litigate this case. The Fourth Circuit answered that question squarely in Plaintiffs' favor, agreeing with this Court that "disclosing plaintiffs' members' personally identifiable information to DOGE inflicts a harm that is a 'close . . . analogue' to the common law tort of intrusion upon seclusion." *AFSCME v. SSA*, 172 F.4th 361, 368 (4th Cir. 2026) (citation omitted).

Defendants now advance a novel argument: that this Court should forestall discovery until it considers a speculative future motion alleging speculative future mootness. That argument lacks merit, as do Defendants' other, rehashed, points. As this Court has already found, Plaintiffs'

proposed discovery bears directly on their claims and Defendants' defenses. Limited extra-record discovery is appropriate, and Defendants' argument regarding the scope of Plaintiffs' discovery requests is both cursory and unavailing. Moreover, documents recently released by SSA in response to ongoing FOIA litigation, *see* Exhibit A, underscore both the extent of Defendants' misconduct and the harm it threatens. There is no reason to revisit this Court's previous decision that Plaintiffs may pursue limited discovery, and Defendant's motion to rescind should be denied.

## I. Defendants' argument that this Court should forestall discovery until it considers a speculative future motion alleging speculative future mootness lacks merit.

Defendants' primary argument is that the Court should rescind its order granting discovery because Defendants "intend on moving to dismiss for lack of jurisdiction because this case, as pled, is now moot." Motion to Rescind or Stay Court's April 14 Order as Improvidently Granted ("Mot."), ECF 215, at 10.[1] That novel argument has numerous fatal flaws.

As a preliminary matter, there is no basis for the Court to deny Plaintiffs an opportunity to prosecute their case because of unsupported speculation that it may become moot in the future. *See* Mot. at 10–11 (failing to cite any case law regarding alleged future mootness). Defendants identify no authority for the notion that a policy's known (or at least purported) future end date renders claims related to that policy moot in the present. The U.S. DOGE Service Temporary Organization's "expiration date" has been known since before this case was filed. That date having grown closer no more renders this case moot now than the date's existence did when the case was filed. The "expiration date" has not arrived, and nothing prohibits the President from extending it in a future executive order. Nor have Defendants actually filed a motion to dismiss based on mootness. In arguing that the Court should consider their mootness argument before authorizing

[1] Where applicable, citations in this filing refer to a document's ECF pagination.

any discovery, Defendants ask this Court to deny discovery to which it has already determined Plaintiffs are entitled based on hypothetical briefing and declarations Defendants may or may not file months in the future. Defendants cite no authority indicating that such a ruling would be permissible, much less proper.

Second, Defendants' request that the Court speculate about potential future mootness is unsupported and wrong. Defendants make no attempt to meet the "heavy burden" they would bear under the voluntary cessation doctrine. *See Porter v. Clarke*, 852 F.3d 358, 365 (4th Cir. 2017). Even if Plaintiffs' claims were specific to the individuals previously identified as members of the DOGE Team, which they are not, Defendants do not and cannot offer any assurances that those individuals will not return or that Defendants will not adopt similarly unlawful data access policies in the future.

Thirdly, even if Defendants had moved for relief based on future mootness, their speculative theory lacks any evidentiary support. Defendants have not yet produced a declaration attesting that "the members of the then-SSA DOGE Team have all left SSA." *Id* at 10 (alleging that such a declaration will be filed at an undefined future date). Any such declaration would strain credulity. Plaintiffs have established—and Defendants have never disputed—that current SSA Chief Information Officer Michael Russo is a "DOGE associate[]" who "introduced himself as a DOGE representative to multiple employees on multiple occasions." Flick Decl., ECF 22-10 ¶¶ 9, 11; *id.* ¶ 22 (alleging, without contradiction, that Mr. Russo "was actually reporting to DOGE."). Another member of the SSA DOGE Team, Aram Moghaddassi, joined Mr. Russo as co-CIO in June 2025, and it is unclear whether he remains at the agency.[2]

[2] Rebecca Heilweil & Matt Bracken, *Social Security Administration makes another DOGE switch at CIO*, FedScoop (June 28, 2025), https://perma.cc/3VWK-YLNU. *See also* ECF 134 at 1, n.1 ("Defendants do not object to the public identification of" Moghaddassi, whom Defendants have previously identified as "Employee 7").

Defendants also argue only that "*the DOGE Temporary Organization* will expire on July 4."[3] Mot. at 10 (emphasis added). The U.S. DOGE Service, a named defendant in this case, persists. And, as USDS Director and Centers for Medicare and Medicaid Services Senior Advisor Chase Ausley recently told the media, USDS is "actively growing" and has "brought on a lot of staff within just the last few months . . . that are deployed across a lot of agencies."[4] USDS's own statements bear that out. Approximately five months ago, the organization posted on LinkedIn:

> Despite the reporting by the media, nothing has changed with the U.S. DOGE Service and it still exists as defined by the Establishing and Implementing the Department of Government Efficiency Executive Order. Both the temporary org and U.S. DOGE Service (previously U.S. Digital Service) are still operational. In addition to the staff hired directly into the agency DOGE teams, the U.S. DOGE Service partners with agencies on projects that modernize critical systems, improve public services, deliver fast, practical solutions where the country needs them most, and eliminate, fraud, waste and abuse.[5]

The next month, federal Chief Information Officer Greg Barbaccia explained that "[w]hile the more centralized organization has been dispersed," the DOGE teams assigned to agencies are "alive and well" and "embedded within those organizations."[6]

## II. Plaintiffs' proposed discovery bears directly on their claims and Defendants' defenses, as this Court has already found.

Defendants next suggest that the Court should reconsider its prior order because Plaintiffs' proposed discovery requests are "not addressed to claims before the Court." Mot. at 11. That argument misapprehends Plaintiffs' claims and misrepresents the allegations in Plaintiffs' Amended Complaint, which incorporates numerous factual allegations regarding the very conduct

---

[3] While Defendants base their future mootness argument on the text of Executive Order 14,158, they told the U.S. Supreme Court that DOGE's work at SSA was also being carried out pursuant to Executive Order 14,243, *Stopping Waste, Fraud, and Abuse by Eliminating Information Silos*, 90 Fed. Reg. 13,681 (March 25, 2025). Executive Order 14,243 has no expiration date.

[4] Madison Alder, *US DOGE Service is alive and growing, organization official says*, FedScoop (April 14, 2026), https://perma.cc/4KAL-ZVUY.

[5] LinkedIn Post, U.S. DOGE Service (Nov. 25, 2025), https://perma.cc/4YHF-UZ2G.

[6] Madison Alder, *Tech talent, authority to operate among federal CIO's 2026 priorities*, FedScoop (Dec. 9, 2025), https://perma.cc/3RVZ-LJL4.

described in Defendants' Notice and addressed by Plaintiffs' proposed discovery. *See, e.g.*, Am. Compl., ECF 17 ¶ 5 ("Because DOGE has unlawfully mined data from multiple agencies, it is able to cross-reference and potentially cross-contaminate information from different, previously secure and segregated sources. That only compounds the harm (and ongoing risk of future harm) to the American people."). Plaintiffs seek discovery into the injuries associated with their existing claims, and they are not required to amend their pleadings to reflect every newly disclosed instance of Defendants' violations of the law.

While DOGE Team Members' individual access to data was the focus of this Court's temporary restraining order and preliminary injunction, it is neither the sole focus of Plaintiffs' claims nor their only theory of injury. *See, e.g.*, TRO Mem. Op., ECF 49, at 12 ("Plaintiffs also argue that their members are irreparably harmed 'by the now increased risk that their information is more easily accessible by bad actors.'"); Fiesta Decl., ECF 22-6 ¶ 13 (stating that DOGE's "unfettered access" to SSA data "immediately increased the risk that [ARA] members' sensitive information will be stolen or misused, whether by DOGE personnel or criminal enterprises that gain access to the now unprotected data."). The Court's ruling that there was not yet sufficient evidence of substantial injury to sustain a preliminary injunction, ECF 49 at 68, hardly foreclosed the possibility that precisely this evidence might be revealed through the litigation.[7]

The Amended Complaint alleges that Defendants' actions harmed Plaintiffs by "making their information available for, and subject to, investigation by DOGE and scammers" and explains that "[t]his harm is exacerbated by the attendant risk that this information, still being improperly disclosed, is more easily accessed and abused by malicious actors." ECF 17 ¶ 97. It addresses

[7] Defendants' quotation of the Fourth Circuit's assessment of Plaintiffs' theory of the case, Mot. at 11, is no answer. The appellate court did not make any determination regarding this theory of injury. It merely summarized the basis for injury on which the district court granted the preliminary injunction.

Defendants' administration of "systems containing vast quantities of sensitive personal information without complying with statutorily required security protections," *id.* ¶ 118, alleging that "[i]n directing and controlling the use and administration" of those systems, DOGE and members of the SSA DOGE Team "breached secure government systems," *id.* ¶ 126. And it specifically pertains not just to disclosure to DOGE Team Members, but also to ultra vires actions by DOGE and its SSA Team members "that injure Plaintiffs' members by exposing their sensitive, private, and personally identifiable information and increasing the risk of further disclosure and misuse thereof." *Id.* ¶ 129. Finally, the Amended Complaint emphasizes that Defendants "entered inter-agency data sharing agreements without abiding the process prescribed by law," Am. Compl. ¶¶ 102, 109, alleging that such "unauthorized cross-agency access allows DOGE to collect sensitive information from multiple agency systems" and then "combine and cross-reference data in ways never contemplated by each agency's security policies and/or safeguards," *id.* ¶ 58. Indeed, Plaintiffs have consistently raised the fact that their members have not "consented to the use of [their] data for any reason other than for the purposes and through the procedures previously disclosed by SSA in its Systems of Record Notices." Aguirre Decl., ECF 22-8 ¶ 11. Election interference and immigration enforcement certainly fall outside that ambit.

These allegations are directly implicated by Defendants' recently admitted misconduct. Defendants have now disclosed, for example, that "members of SSA's DOGE Team were using links to share data through the third-party server 'Cloudflare,'" and they admit that Cloudflare "is not approved for storing SSA data and when used in this manner is outside SSA's security protocols." Notice of Corrections to the Record ("Notice"), ECF 197, at 6. Defendants likewise now admit that DOGE personnel at SSA sent an email that SSA "believes" contained agency data to DOGE personnel at the Departments of Homeland Security and Labor. *Id.* at 2. And recently

released records reflect ongoing efforts to use SSA resources and data to assist a third-party political group seeking to overturn state election results. *See infra* Section V.

The Amended Complaint alleges that Defendants violated the law in numerous ways, working numerous types of harm. Plaintiffs are not required to amend their complaint to specifically allege each newly disclosed fact supporting their legal claims and injuries. Such a requirement would be unworkable. That is especially true here, where Defendants had exclusive control over the information and obscured their misconduct in sworn declarations filed with the Court. Nor can Defendants claim prejudice where they put the new, but incomplete, facts in the record in the first place.

### III. Defendants offer no compelling reason why this Court should revisit its prior determination that limited extra-record discovery is appropriate in this case.

Defendants argue that "Plaintiffs still have not articulated a legitimate basis for extra-record discovery in this APA case." Mot. at 12. Plaintiffs have done so repeatedly. Discovery Mot., ECF 200, at 5; *see generally* Pls.' Reply in Support of Discovery Mot., ECF 207. Defendants made the same argument in their opposition to Plaintiffs' motion for discovery, and Plaintiffs incorporate their own arguments in the original briefing here. *See generally* ECF 207.

In summary, the principle of record review in an APA case does not require the Court to limit its review to the contours of a plainly incomplete record. Nor does it deny the Court authority to ascertain the details of noncompliance with its own orders. And the principle of record review does not bar discovery of information that only Defendants possess regarding Plaintiffs' injuries or the actual details of a challenged policy, especially not where the record is shown to be incomplete and inaccurate or where bad faith has been so plainly established. It would be an extreme overreading of the principle to find that it prevents discovery into relevant matters unrelated to the record of agency decision (such as standing and court order compliance) or to

prevent information gathering where there has been a "strong showing of bad faith or improper behavior." *Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 138 (D. Md. 2019) (quoting *Dep't of Com. v. N.Y.,* 588 U.S. 752, 781 (2019)); *see also Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.) ("The fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so."). Once again, Defendants refuse to substantively address this standard.

This Court previously and correctly found that Defendants' argument lacks merit. Several judges on the Fourth Circuit reached the same conclusion, stating that, on remand, "the parties will be able to introduce further evidence" related to Defendants' Notice and other newly disclosed misconduct, "and the district court will be free to consider any future requests for appropriate relief or corrective action." *AFSCME v. SSA*, 172 F.4th at 371 n.8; *see also id.* at 375 n.2 (Wilkinson, J., concurring) ("The district court may assess [the whistleblower report], as well as all new revelations, when considering whether a permanent injunction is appropriate upon remand"). The Court should thus deny Defendants' motion on this point as well.

**IV. Defendants' cursory argument regarding the scope of Plaintiffs' discovery requests is unavailing.**

Defendants also make a cursory argument that Plaintiffs' discovery requests are overbroad. Mot. at 14–16. Plaintiffs previously addressed that argument in full, *see* ECF 207 at 11–12, and they incorporate that discussion here in the interest of judicial economy. It is worth noting, however, that Defendants' pending motion ignores one of the key reasons Plaintiffs were forced to seek the discovery detailed in their proposed requests: Defendants' rampant noncompliance with an order of this Court. Defendants' claim that Plaintiffs "seek discovery seemingly fishing for proof of non-compliance," Mot. at 15, is absurd. Defendants have admitted their noncompliance, but in doing raised additional questions about compliance that require answers. *See* ECF 207 at 9.

Plaintiffs seek discovery into the extent and details of that noncompliance and Defendants' candor to the Court. Such discovery is made necessary by, among other things, Defendants' repeated failure to explain the more than month-long delay between counsel learning of the inaccuracies detailed in the Notice and counsel choosing to inform Plaintiffs and the Court of the same.

### V. Newly revealed documents underscore both the extent of Defendants' misconduct and the harm it threatens, further evidencing the propriety of the limited discovery Plaintiffs seek.

In response to recent litigation challenging SSA's noncompliance with the Freedom of Information Act,[8] the agency this week produced 60 pages of records related to the disclosures in Defendants' self-styled Notice of Corrections to the Record. *See* Ex. A. The bulk of those records pertain to what Defendants' Notice describes as a "Voter Data Agreement," ECF 197 at 5, but which the document itself identifies as a "Voter Data Transfer Agreement," Ex. A at 11. The produced agreement is heavily redacted, with the names of the third-party organization and the relevant SSA DOGE Team member both obscured. *Id.* Even so, the agreement bears striking resemblance to one used by the Maricopa County Republican Committee, a partisan third-party organization, and appears to reference Arizona law. *Compare* Ex. A at 11*, with* Voter Data Agreement, MCRC 2025 v4.1, https://perma.cc/92GS-EB4Q. In the email transmitting the agreement, the third-party organization promised the SSA DOGE Team "rapid transmission" of data. Ex. A at 9.

While Defendants suggest that the Voter Data Transfer Agreement represents a single instance in which "a political advocacy group asked members of SSA's DOGE Team to analyze state voters rolls," Mot. at 8, the recently released documents—even in their heavily redacted state—reflect months of communication between the SSA DOGE Team and the unnamed third-

[8] *Democracy Forward Found. v. Soc. Sec. Admin.*, Case No. 1:26-cv-1188 (D. Md.).

party organization, which Defendants have described as a "political advocacy group" seeking to "find evidence of voter fraud" and "overturn election results," Notice at 5. *See* Ex. A at 9 (email dated March 24, 2025); *id.* at 58 (email dated June 19, 2025).

Also included in SSA's recent disclosures were the Hatch Act complaints referenced on page five of Defendants' Notice. Ex. A at 4–8, 18–22. These, too, were heavily redacted. The same is true of the March 3, 2025, email from a member of the SSA DOGE Team to DOGE personnel at the Department of Homeland Security and the Department of Labor. Ex. A at 61. In that email, the SSA DOGE Team attached a "password protected [E]xcel workbook" with "enriched data," including personally identifiable information on 971 beneficiaries. *Id*.

Even when heavily redacted, these documents make clear that the DOGE Team's actions in connection with the Voter Data Transfer Agreement far exceeded Defendants' off-handed description of it in their "Notice of Corrections." Without the additional information Plaintiffs seek in their proposed discovery requests, Plaintiffs and the Court will not be able to assess the full scope of data misuse by Defendants: neither Plaintiffs nor the Court have any greater insight into the scale and scope of improper data sharing nor its impermissible uses. And Defendants have still not identified the organization with which the DOGE Team entered the agreement. Assessing the injury Plaintiffs' members have suffered as a result of Defendants' unlawful agreement and subsequent non-disclosure thereof requires, at a minimum, the ability to review the full agreement, the full scope of activities undertaken by DOGE Team Members pursuant to that agreement, and whatever evidence SSA deemed sufficient to merit a Hatch Act referral.

## CONCLUSION

When it granted Plaintiffs' motion for limited discovery, the Court emphasized both its previous decision to "defer discovery until after disposition of the appeal" and the fact that "[t]he appeal has [now] been decided." Order, ECF 212, at 4. But Defendants' motion to rescind that

order as improvidently granted is wholly untethered to the Fourth Circuit's ruling. *See supra.* Instead, Defendants rehash arguments this Court has already rejected and advance a novel argument based on speculative future mootness, which they could have but chose not to include in previous briefing on Plaintiffs' requests. The motion is thus less like one to rescind an order as improvidently granted and more akin to a motion for reconsideration. And "the Fourth Circuit has said that a court should only revise an interlocutory order in limited circumstances, in order to promote efficiency, judicial economy, and finality." *Boshea v. Compass Mktg., Inc.*, No. CV ELH-21-309, 2023 WL 2743333, at *7 (D. Md. Mar. 31, 2023) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *Sejman v. Warner-Lambert Co, Inc.*, 845 F.2d 66, 68–69 (1988); *Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988)). None of those circumstances exist here. Defendants' motion is without merit, and there is no reason for this Court to rescind its prior ruling. The Court should deny Defendants' motion and permit discovery to proceed apace.

Dated: April 30, 2026

Respectfully submitted,

*<u>/s/ Alethea Anne Swift</u>*__________
Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston (Bar No. 31584)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org
*Counsel for Plaintiffs*