## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, *et al.*,

              Plaintiffs,

        v.

SOCIAL SECURITY
ADMINISTRATION, *et al.*,

              Defendants.

Case No. 1:25-cv-00596-ELH

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

    I.   The United States DOGE Service ..................................................................................... 2

    II.  Onboarding of the SSA DOGE Team ............................................................................. 2

    III. Plaintiffs' Amended Complaint ...................................................................................... 2

    IV. Relevant Events During the Pendency of the Stay .......................................................... 5

    V.  The Fourth Circuit's Decision and Ensuing Lift of Stay ................................................ 6

LEGAL STANDARD ................................................................................................................... 6

ARGUMENT ................................................................................................................................ 8

    I.   Claims One Through Six, which Challenge SSA's Grant of Data Access to the DOGE Team, Are Moot. ........................................................................................................ 8

          A.   Claims One Through Six, which Challenge SSA's Provision of Access to SSA Data to the DOGE Team, Are Moot Because There Is No Longer a DOGE Team. ....................................................................................................... 9

          B.   No Exception to Mootness Applies. ................................................................... 12

    II.  Plaintiffs' Remaining Claim, which Challenges the Appointment of Former Acting Commissioner Dudek, Should Also Be Dismissed for Lack of Jurisdiction. ................. 15

CONCLUSION ........................................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
705 F.3d 44 (1st Cir. 2013) ................................................................................ 11

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ................................................................................... *passim*

*Alvarez v. Smith*,
558 U.S. 87 (2009) ............................................................................................ 8

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) ............................................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 6

*Auto USA, Inc v. DHL Express (USA), Inc.*,
2017 WL 839525 (D. Md. Mar. 3, 2017) ......................................................... 16

*Beahn v. Gayles*,
550 F. Supp. 3d 259 (D. Md. 2021) .................................................................. 15

*Brown v. Mass Transit Admin.*,
2013 WL 1428527 (D. Md. Apr. 8, 2013) .......................................................... 7

*Buchanan v. Consol. Stores Corp.*,
125 F. Supp. 2d 730 (D. Md. 2001) .................................................................... 7

*Central Soya Co. v. Consol. Rail Corp.*,
614 F.2d 684 (7th Cir. 1980) ........................................................................... 13

*Chafin v. Chafin*,
568 U.S. 165 (2013) ...................................................................................... 8, 10

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) .............................................................................................. 8

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ......................................................................................... 9, 10

*CMR D.N. Corp. v. City of Phila.*,
703 F.3d 612 (3d Cir. 2013) ............................................................................. 11

ii

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022).................................................................................................. 12

*Eden, LLC v. Just.*,
  36 F.4th 166 (4th Cir. 2022) ................................................................................... 15

*FBI v. Fikre*,
  601 U.S. 234 (2024).................................................................................................. 10

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*,
  326 F.3d 924 (7th Cir. 2003) ................................................................................... 15

*Fleet Feet, Inc. v. NIKE, Inc.*,
  986 F.3d 458 (4th Cir. 2021) ................................................................................... 14

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024).................................................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)........................................................................................... *passim*

*Green v. Mansour*,
  474 U.S. 64 (1985).................................................................................................... 11

*Honig v. Students of Cal. Sch. for the Blind*,
  471 U.S. 148 (1985).................................................................................................. 10

*J.T. v. District of Columbia*,
  983 F.3d 516 (D.C. Cir. 2020) ................................................................................. 13

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ..................................................................................... 7

*Lighthouse Fellowship Church v. Northam*,
  20 F.4th 157 (4th Cir. 2021) ...................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................................. 16

*Maryland v. U.S. Dep't of Agric.*,
  151 F.4th 197 (4th Cir. 2025) .................................................................................. 16

*Mills v. Green*,
  159 U.S. 651 (1895).................................................................................................... 8

*Murphy v. Hunt*,
  455 U.S. 478 (1982) ..................................................................................... 12, 13

*Norfolk S. Ry. Co. v. City of Alexandria*,
  608 F.3d 150 (4th Cir. 2010) ............................................................................ 10

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ............................................................................................ 10

*Palm Beach Cnty.*,
  382 F.3d 1276 (11th Cir. 2004) ........................................................................ 15

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) ............................................................................ 14

*Pressley Ridge Schs. v. Shimer*,
  134 F.3d 1218 (4th Cir. 1998) ............................................................................ 6

*Princeton Univ. v. Schmid*,
  455 U.S. 100 (1982) ............................................................................................ 8

*Rhodes v. Stewart*,
  488 U.S. 1 (1988) .............................................................................................. 11

*Roe v. Wade*,
  410 U.S. 113 (1973) .......................................................................................... 12

*Samma v. U.S. Dep't of Def.*,
  136 F.4th 1108 (D.C. Cir. 2025) ...................................................................... 14

*Siegert v. Gilley*,
  500 U.S. 226 (1991) ............................................................................................ 6

*Snyder v. Maryland*,
  2023 WL 35249 (D. Md. Jan. 3, 2023) ............................................................ 16

*South Carolina v. United States*,
  912 F.3d 720 (4th Cir. 2019) ............................................................................ 16

*Spencer v. Kemna*,
  523 U.S. 1 (1998) .............................................................................................. 12

*SSA v. AFSCME*,
  605 U.S. ---, 145 S. Ct. 1626 (2025) .................................................................. 4

*Storer v. Brown*,
  415 U.S. 724 (1974) ........................................................................................... 12

*Sullivan v. Benningfield*,
  920 F.3d 401 (6th Cir. 2019) ............................................................................. 15

*Super Tire Eng'g Co. v. McCorkle*,
  416 U.S. 115 (1974) ...................................................................................... 12, 13

*Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*,
  995 F.2d 510 (4th Cir. 1993) ............................................................................. 11

*U.S. ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) ............................................................................... 7

*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018) ............................................................................................. 6

*United States v. W. T. Grant Co.*,
  345 U.S. 629 (1953) ........................................................................................... 15

*Velasco v. Gov't of Indon.*,
  370 F.3d 392 (4th Cir. 2004) ............................................................................... 7

*Weinstein v. Bradford*,
  423 U.S. 147 (1975) ...................................................................................... 12, 13

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ............................................................................................. 7

**Statutes and Rules**

5 U.S.C. § 3161 ...................................................................................................... 2

Fed. R. Civ. P. 12 ................................................................................................... 7

**Other Authorities**

13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
  *Fed. Prac. & Proc.* § 3533.7 (3d ed. Apr. 2026 update) ................................. 15

**INTRODUCTION**

Plaintiffs filed this action to enjoin the Social Security Administration's ("SSA") DOGE Team from accessing SSA records. Plaintiffs have now received that relief: SSA no longer has a DOGE Team (or even a DOGE-affiliated employee), and SSA terminated each former DOGE Team member's access to SSA records upon their departure from the Agency. Nor will "DOGE" plausibly regain access in the future: by operation of Executive Order, the DOGE Temporary Organization expires on July 4, 2026. And SSA has no future plans to have a DOGE Team. Accordingly, Plaintiffs cannot obtain prospective injunctive relief, and the Declaratory Judgment Act does not supply an independent basis for jurisdiction. In sum, the operative complaint is moot.

No exception to mootness applies. *First*, this case is not capable of repetition yet evading review. This case bears no similarity to the highly transient circumstances that courts have previously found to be capable of evading judicial review, such as a pregnancy, labor strike, or election campaign. Nor is there a reasonable expectation that the same controversy will recur, because Plaintiffs challenge particular, concrete access decisions that SSA made early last year—not an ongoing policy or regulation that continues to govern future conduct. *Second*, the voluntary cessation exception also does not apply because SSA did not voluntarily cease the challenged conduct to manipulate the Court's jurisdiction. To the contrary, the SSA DOGE Team members gradually left the Agency over the course of 2025 through January 2026, and SSA has no future plans to have another DOGE Team. Speculation that SSA could, nonetheless, hypothetically choose to establish a new DOGE Team at some undetermined point in the future for an unknown purpose does not suffice to establish Article III jurisdiction.

This case is moot, and the Court should dismiss it.

**BACKGROUND**

I.    **The United States DOGE Service**

On January 20, 2025, President Trump signed Executive Order 14,158, in which he established the "Department of Government Efficiency" ("DOGE") to "implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." 90 Fed. Reg. 8441, § 1 ("E.O. 14,158"). Specifically, in addition to renaming the U.S. Digital Service as the U.S. DOGE Service (*id.* § 3(a)), E.O. 14,158 established the "U.S. DOGE Service Temporary Organization" under 5 U.S.C. § 3161, which entity would "be dedicated to advancing the President's 18-month DOGE agenda," E.O. 14,158 § 3(b). The Executive Order granted the U.S. DOGE Temporary Organization an 18-month lifespan, directing that it would "terminate on July 4, 2026." *Id.* Finally, E.O. 14,158 required Agency heads to establish within their respective agencies a DOGE Team to implement the aforementioned "18-month DOGE agenda." *Id.* §§ 3(b), 3(c).

II.   **Onboarding of the SSA DOGE Team**

SSA has a "strong business need" to identify fraud and thereby ensure stewardship of agency funds. ECF 74-1 (Mar. 28, 2025, Dudek Suppl. Decl.) ¶ 7. Before President Trump issued E.O. 14,158, SSA employees were pursuing efforts, on an ongoing and daily basis, to identify and address fraud in agency programs, separate and apart from USDS. *Id.* Pursuant to E.O. 14,158, beginning in February 2025, SSA onboarded a DOGE Team. *See* Second Decl. of Florence Felix-Lawson ¶¶ 4–5 ("Sec. Felix-Lawson Decl.").

III.  **Plaintiffs' Amended Complaint**

Plaintiffs filed suit against SSA on February 21, 2025, ECF 1, and amended the Complaint approximately two weeks later, ECF 17 ("Am. Compl."). The Amended Complaint, which

2

remains operative, alleges that SSA violated the Administrative Procedure Act ("APA") by "open[ing] [SSA's] data systems to unauthorized personnel from the 'Department of Government Efficiency' (or 'DOGE') in violation of applicable laws." Am. Compl. ¶ 2; *see also, e.g.*, *id.* ¶ 101 (Count I, APA: "SSA Defendants have disclosed and continue to disclose personal records contained in systems of records under their control."); *id.* ¶ 108 (Count II, Privacy Act: same); *id.* ¶ 114 (Count III, APA: "SSA Defendants unlawfully permitted DOGE Defendants to access and inspect tax return information."); *id.* ¶ 122 (Count V, APA: "SSA Defendants have disclosed an unfathomable amount of sensitive, personally identifying information about the American public without acknowledging that SSA was changing its policies[.]").[1]

In support of Plaintiffs' standing to sue (characterized as "Harms to Plaintiffs"), the Amended Complaint further alleges that "[t]he decision to grant DOGE personnel access to the extensive records that SSA maintains . . . without obtaining or even requesting the consent of affected individuals like Plaintiffs' members . . . upends the reliance these members had on their data being secure." *Id.* ¶ 94.

---

[1] The Amended Complaint further asserts a catchall claim alleging *ultra vires* activity that is duplicative of Plaintiffs' first five claims (Count VI). Plaintiffs finally challenge Mr. Dudek's appointment as Acting Commissioner of the SSA and his authority to provide SSA DOGE Team members access to SSA information (Count VII). Mr. Dudek is no longer SSA's Acting Commissioner; he was replaced on May 7, 2025, by Commissioner Frank Bisignano. *See* Soc. Sec. Nat'l Press Off., SSA, *Press Release: Financial Services Industry Leader Frank Bisignano to be the 18th Commissioner of Social Security*, (May 7, 2025), https://www.ssa.gov/news/press/releases/2025/#2025-05-07.

As relief, the Amended Complaint asks the Court to "[d]eclare unlawful and fully enjoin" the "DOGE Defendants'" use of any information "contained in or obtained, derived, copied, or exported from SSA information systems or systems of record."  *See id.*, Prayer for Relief ¶¶ 1–7.

This Court granted a preliminary injunction on April 17, 2025.  ECF 146 (Mem. Op.), 147 (Order).  Relevant here, the Court found that Plaintiffs had established "concrete injury" for Article III standing because, it determined, SSA had "provid[ed] the DOGE Team with access to the medical records and sensitive financial information of millions of people," "without adequate need."  ECF 146 at 84.[2]  Defendants appealed to the Fourth Circuit, ECF 148, which agreed to hear the merits of the appeal en banc.  *See* Order, *AFSCME v. SSA*, No. 25-1411, Dkt. 27 (4th Cir. May 6, 2025).  The Supreme Court granted a stay of the injunction on June 6, 2025.  *See SSA v. AFSCME*, 605 U.S. ---, 145 S. Ct. 1626 (2025) (Mem.).

Defendants then timely filed their Motion to Dismiss or for Summary Judgment.  ECF 168. In opposition, Plaintiffs continued to assert SSA's provision of data access to "DOGE" as the basis for their injury and their claims, contending that "SSA's alteration of its longstanding access policies in order to allow unfettered DOGE access to SSA systems" is "discrete, final agency action" under the APA, ECF 183 at 19–22, and that Plaintiffs had established a Privacy Act violation because the "access to records" that SSA provided its DOGE Team is not within that statute's need-to-know exception, *id.* at 22–28 (citation omitted).  Plaintiffs also sought "limited discovery."  ECF 187.  After an August 12, 2025, hearing, this Court denied Defendants' dispositive motion without prejudice and stayed further proceedings pending the Fourth Circuit's resolution of the appeal.  ECF 189.  The Court stated that Defendants "may file a renewed motion

---

[2] Record page citations refer to the ECF pagination in the upper right corner of the document.

to dismiss, due within three weeks of the Fourth Circuit's ruling [on Defendants' appeal of the preliminary injunction] . . . unless the date is otherwise extended." *Id.*[3]

## IV.    Relevant Events During the Pendency of the Stay

Both before and during the stay of district-court proceedings, beginning before the end of June 2025 and continuing through January 2026, SSA's eleven DOGE Team members all gradually left the Agency. *See* Sec. Felix-Lawson Decl. ¶ 7.  As part of the offboarding process of the DOGE Team members, SSA revoked all agency systems and data access.  *Id.* ¶ 6. Specifically, eight of the employees offboarded and had systems and data access revoked before the end of June 2025; three offboarded and had systems and data access revoked in September and October 2025; and the final remaining employee, Aram Moghaddassi, offboarded and had systems and data access revoked in January 2026.  *Id.* ¶ 7.

Then, on January 16, 2026, Defendants filed a Notice of Corrections to the Record based on information that SSA had shared with undersigned counsel in December 2025.  ECF 197. Plaintiffs subsequently filed a motion to lift the stay and seek discovery.  ECF 200.  Plaintiffs argued that Defendants' Notice of Corrections "supplie[d] . . . cause" to lift the stay, because the "revelations" therein "go to the heart of the claims and defenses in this case."  *Id.* at 1.  Defendants opposed the Renewed Motion for Discovery, noting, *inter alia*, that "Plaintiffs fail to establish an exception to the rule" that "'claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record.'"  ECF 204 at 10–11.  Defendants further argued that, if a case remains after the Fourth Circuit's ruling, the Court should resolve any

---

[3] Plaintiffs later withdrew their motion for discovery after Defendants opposed it, *see* ECF 191, ECF 194, ECF 195.

renewed motion to dismiss before permitting discovery. *Id.* at 18 (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).

**V.      The Fourth Circuit's En Banc Decision and Ensuing Lift of Stay**

On April 10, 2026, the Fourth Circuit, sitting en banc, vacated the Court's preliminary injunction, finding that Plaintiffs likely had standing but had failed to establish irreparable harm in the absence of preliminary relief. *See* Op., *AFSCME v. SSA*, No. 25-1411, Dkt. 75 (4th Cir. April 10, 2026). Four days later, this Court issued an order lifting the stay and granting Plaintiffs' Renewed Motion for Discovery, but it allowed Defendants to move to rescind the order as improvidently granted. ECF 212. Defendants filed a Motion to Rescind, emphasizing that they planned to move to dismiss the case as moot and "[t]he Court should decide whether a live controversy exists before authorizing discovery, not after." ECF 215. Plaintiffs have responded, ECF 216, and Defendants' Reply is due on May 14, 2026. Local Civ. Rule 105.2(a).

## LEGAL STANDARD

Federal courts have jurisdiction to resolve only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. Article III limits federal court jurisdiction to "actual, ongoing controversies." *Pressley Ridge Schs. v. Shimer*, 134 F.3d 1218, 1220 (4th Cir. 1998) (citation omitted). An actual, ongoing controversy must exist "at all stages of review," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted), and a plaintiff must have a "requisite personal interest" from the commencement of the litigation until its conclusion, *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000). Absent a case or controversy, "courts have 'no business' deciding legal disputes or expounding on law." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted). Thus, when a case "becomes moot at any point during the proceedings," it is "outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*,

584 U.S. 381, 385–86 (2018).  The government bears the burden of establishing mootness.  *See West Virginia v. EPA*, 597 U.S. 697, 719 (2022).  But the party asserting an exception to mootness bears the burden of establishing the exception.  *See, e.g.*, *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021).

Courts examine mootness under Federal Rule of Civil Procedure 12(b)(1).  A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": (i) a facial challenge, "asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction"; or (ii) a factual challenge, "asserting that the jurisdictional allegations of the complaint [are] not true, or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction." *Brown v. Mass Transit Admin.*, 2013 WL 1428527, at *2 (D. Md. Apr. 8, 2013) (Hollander, J.) (internal quotation marks omitted) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), and citing *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001)).  In a factual challenge to subject matter jurisdiction, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).  Moreover, the district court is "entitled to decide disputed issues of fact with respect to subject matter jurisdiction," *Kerns*, 585 F.3d at 192, "[u]nless the jurisdictional facts are intertwined with the facts central to the merits of the dispute," *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citation omitted).  In particular, "the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits." *Vuyyuru*, 555 F.3d at 348.

**ARGUMENT**

I.    **Claims One Through Six, which Challenge SSA's Grant of Data Access to the DOGE Team, Are Moot.**

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). That is true when an intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that *precipitated* the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (emphasis added) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)); *cf. Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (new policy superseding the challenged one made "the issue of the validity of the old regulation [ ] moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law'" (citation omitted)). Said another way, mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth*, 528 U.S. at 170 (quotation marks omitted).

SSA no longer has a DOGE Team or any DOGE-affiliated employees. *See* Sec. Felix-Lawson Decl. ¶¶ 4–8. The DOGE Temporary Organization will imminently expire. E.O. 14,158 § 3(b). Therefore, this Court cannot grant Plaintiffs effective injunctive relief. The case is moot.

8

A.    Claims One Through Six, which Challenge SSA's Provision of Access to SSA Data to the DOGE Team, Are Moot Because There Is No Longer a DOGE Team.

Plaintiffs' first six claims challenge SSA's alleged final agency action to grant its DOGE Team access to agency records. *See* Am. Compl. ¶¶ 2, 101, 114, 122. But any controversy over those claims has ended: SSA's former DOGE Team members have now left the Agency. *See* Sec. Felix-Lawson Decl. ¶¶ 6–8. The former DOGE Team members no longer have any access to SSA systems or data. *Id.* ¶¶ 6–7. SSA has no plans to utilize or onboard a DOGE Team in the future. *Id.* ¶ 9. Nor is there a non-speculative possibility of a future DOGE Team onboarding at SSA: the DOGE Temporary Organization, tasked with implementing the President's 18-month DOGE agenda, will expire on July 4 this year. E.O. 14,158 § 3(b). Plaintiffs' alleged past exposure to unlawful conduct does not, by itself, establish jurisdiction to seek prospective injunctive relief absent a *real* and *immediate* threat of future injury. *See City of L.A. v. Lyons*, 461 U.S. 95, 102–06 (1983). There is none.

In their most recent filing, Plaintiffs try to keep this case alive by claiming that SSA's Chief Information Officer Michael Russo has been "associate[ed]" with "DOGE" and allegedly has had communications with the U.S. DOGE Service. *See* ECF 216 at 3. As a threshold matter, even if true, that would be irrelevant to the claims before the Court. The Amended Complaint targets a discrete, allegedly final agency action: SSA's decision to grant the SSA "DOGE Team" access to agency records. Mr. Russo is not, and has never been, a member of the SSA DOGE Team. *See* Sec. Felix-Lawson Decl. ¶ 9; ECF 118 (providing the list of the SSA DOGE Team members as of April 8, 2025, under seal). Moreover, Plaintiffs do not accurately characterize Mr. Russo's employment. Mr. Russo had prior association with DOGE before onboarding at SSA. Sec. Felix-Lawson Decl. ¶ 9. He has over 30 years of relevant work experience for his current position and is non-career Senior Executive Service (SES). *Id.* He was not hired as part of SSA's DOGE Team;

9

nor was he hired to implement the President's DOGE agenda. *Id.* Plaintiffs have never asserted that *any* SSA employee who has ever communicated with the U.S. DOGE Service cannot access SSA records. Nor could they; such a claim would be the definitional "broad programmatic attack" on agency operations. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Plaintiffs' claims are moot for the additional, related reason that this Court cannot grant Plaintiffs effectual relief. *See Chafin*, 568 U.S. at 172. When a complaining party has secured "all the relief he might have won in [the litigation]," "a federal court must dismiss the case as moot" to prevent courts from "tak[ing] up hypothetical questions that pique a party's curiosity or their own." *FBI v. Fikre*, 601 U.S. 234, 240–41 (2024); *see also Honig v. Students of Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985) ("No order of this Court could affect the parties' rights with respect to the injunction we are called upon to review."); *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) ("And the parties lack such an interest when, for example, our resolution of an issue could not possibly have any practical effect on the outcome of the matter.").

The Amended Complaint asks the Court to issue various prospective injunctions focused on the SSA DOGE Team's access to SSA data. Specifically, Plaintiffs request that this Court: (i) prohibit the SSA DOGE Team from accessing, inspecting, disclosing, or using information in SSA records, *id.*, Prayer for Relief ¶¶ 1–3; (ii) prohibit the SSA DOGE Team from installing, altering, accessing, or disclosing any SSA software or computer code, system of record, or software, *id.* Prayer for Relief ¶¶ 6–7; (iii) require Defendants to file a notice that the SSA DOGE Team no longer has access to agency records, *id.* Prayer for Relief ¶ 4; (iv) and require the SSA DOGE Team to disgorge or delete all unlawfully obtained data, *id.* Prayer for Relief ¶ 5. Although Plaintiffs "vehemently . . . continue to dispute the lawfulness of the conduct that precipitated the

10

lawsuit," the fact remains that the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91.

The fact that Plaintiffs also seek declaratory relief, Am. Compl. Prayer for Relief ¶¶ 1–2, does not change the outcome, because "a declaratory judgment that [defendants] violated federal law in the past" cannot "stand on its own feet as an appropriate exercise of federal jurisdiction." *Green v. Mansour*, 474 U.S. 64, 74 (1985); *see also ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) ("With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory."); *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013) (holding that declaratory relief is "by definition prospective in nature" and cannot be obtained for alleged past wrong); *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993) ("By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong.  Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment.").

For example, in *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988), the Supreme Court reversed a grant of declaratory relief involving government conduct in a prison, because such relief "could not in any way have benefited either plaintiff, one of whom was dead and the other released before the District Court entered its order."  That same reasoning applies here.  Because this "case [has become] moot before judgment [can] issue[], and the judgment therefore afford[s] the [P]laintiffs no relief whatsoever[,]" *id.*, declaratory relief here does not keep Plaintiffs' claims alive.  In sum, this case is moot because Plaintiffs now lack a personal interest in the case (i.e., the former SSA DOGE Team can no longer access Plaintiffs' records) and because the Court cannot grant Plaintiffs any effectual relief (i.e., the Court cannot enjoin a DOGE Team that no longer exists).

B.    No Exception to Mootness Applies.

There are two exceptions to mootness: (1) when the challenged conduct is "capable of repetition, yet evading review"; and (2) when a defendant voluntarily ceases its conduct and the challenged conduct can reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 190 (citation omitted). Neither exception applies here.

1. *The challenged conduct is not capable of repetition yet evading review.*

The "capable of repetition, yet evading review" exception applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted), when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again," *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (emphasis added).

The first requirement is not met here because the challenged conduct was not too short to evade judicial review. *Compare Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126-27 (1974) (labor strike); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election campaign); *Roe v. Wade*, 410 U.S. 113, 125 (1973) (pregnancy), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). This Court, the Fourth Circuit, and the Supreme Court all considered aspects of this case. And after the Supreme Court's stay of the preliminary injunction, Defendants were prepared to move forward with summary judgment briefing while DOGE Team members were still at SSA.

The second requirement is not met here because there is no "reasonable expectation" that Plaintiffs will be "subjected to the same action again." *Weinstein*, 423 U.S. at 149. As a threshold matter, a reasonable expectation is more than "a mere physical or theoretical possibility." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). There must be a "demonstrated probability that the same

controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein*, 423 U.S. at 149) (quotation marks omitted). There is no reasonable expectation of a plaintiff facing the same action again when a dispute is "sharply focused on a unique factual context." *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (citation omitted).

Plaintiffs in this case challenge what they alleged was discrete, concrete agency action—SSA's decisions to grant access to members of its DOGE Team in early 2025—as opposed to an ongoing policy or regulation that continues to govern future conduct. *See Super Tire*, 416 U.S. at 124–25. The access Plaintiffs challenge has since been terminated. *See* Sec. Felix-Lawson Decl. ¶¶ 6–8. Considering that the 18-month DOGE agenda is also soon ending, as outlined in the originating Executive Order, it is not "reasonable" to expect that this group of Plaintiffs will be "subjected to the same action again." *Weinstein*, 423 U.S. at 149; *see Central Soya Co. v. Consol. Rail Corp.*, 614 F.2d 684, 689 (7th Cir. 1980) (holding case moot where any future recurrence would require "a chain of speculation" and mere possibility is "inadequate to support an assertion of federal jurisdiction"; noting that "[i]n order for the requirements of Article III to be satisfied, it is not enough . . . that a federal court may again be called upon to decide the legal issue raised in this litigation").

Although the U.S. DOGE Service (formally known as the U.S. Digital Service) does not have a fixed term, that does not alter the mootness analysis here. The U.S. Digital Service (now the U.S. DOGE Service) was established under the Obama Administration in August 2014 and has long existed to improve government technology. *See* Office of the Press Secretary, Press Release, *FACT SHEET: Improving and Simplifying Digital Services* (Aug. 11, 2014), https://obamawhitehouse.archives.gov/the-press-office/2014/08/11/fact-sheet-improving-and-simplifying-digital-services. The mere existence of USDS—a longstanding entity—cannot keep

13

this case alive, especially since there is no concrete evidence that DOGE Teams are being deployed to SSA now or are likely to be deployed to SSA in the future.

> 2.  *SSA did not voluntarily cease its conduct to manipulate the Court's jurisdiction, and the challenged conduct is unlikely to recur.*

The voluntary cessation exception to the mootness doctrine likewise does not apply. Courts apply this exception to prevent a scenario in which "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91. Put simply, this exception exists to "prevent 'a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'" *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (citation omitted); *see also Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 n.2 (4th Cir. 2021); *Samma v. U.S. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (noting that exception "does not apply *automatically* whenever the prospect of mootness is raised by a party's voluntary conduct" and that "courts have declined to apply the doctrine when the facts do not suggest any arguable manipulation of [the court's jurisdiction]" (emphasis added) (citation omitted)).

There is no evidence that the SSA DOGE Team left to "manipulate the court's jurisdiction" or "to strategically avoid judicial review by ceasing [the] challenged activity." *Samma*, 136 F.4th at 1114. To the contrary, the SSA DOGE Team gradually left, over an extended period of time, while Defendants continued to defend this litigation in this Court, in the Fourth Circuit, and in the Supreme Court of the United States. *See* Sec. Felix-Lawson Decl. ¶ 7; *supra* Background. These facts are not consistent with "manipulation." And the imminent expiration of the DOGE Temporary Organization is a creature of the Executive Order that established it—an Executive Order that predated Plaintiffs' lawsuit.

14

Nor is the allegedly wrongful behavior "reasonably . . . expected to recur." *Friends of the Earth*, 528 U.S. at 189; *see United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (case is moot when "there is no reasonable expectation that the wrong will be repeated" (citation omitted)). A government's "mere ability to reimpose challenged restrictions is not enough to show a reasonable chance of recurrence." *Eden, LLC v. Just.*, 36 F.4th 166, 172 (4th Cir. 2022). And "[v]oluntary cessation by government officials is approached with more solicitude than cessation by private actors." 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.* § 3533.7 (3d ed. Apr. 2026 update); *see also Beahn v. Gayles*, 550 F. Supp. 3d 259, 272 (D. Md. 2021) ("When, as here, it is a governmental authority that changes its policy, there is a presumption that it acts in good faith under the voluntary cessation exception."); *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 929 (7th Cir. 2003); *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019); *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004). The mere *possibility* that SSA could reinstate a new DOGE Team (although, as it attests, it has no plans to do) does not suffice to establish this exception. *See Eden, LLC*, 36 F.4th at 171 (rejecting voluntary cessation argument where likelihood of recurrence was "entirely speculative" and "highly unlikely"). And even if a DOGE Team were hypothetically reinstated at SSA in the future, any future grant of access to them would arise under different circumstances than the specific access decision challenged here.

## II. Plaintiffs' Remaining Claim, which Challenges the Appointment of Former Acting Commissioner Dudek, Should Also Be Dismissed for Lack of Jurisdiction.

Count VII should also be dismissed on jurisdictional grounds. *See* Am. Compl. ¶¶ 130–35. In this claim, Plaintiffs contend that SSA's then-Acting Commissioner, Leland Dudek, improperly granted SSA's DOGE Team access to SSA systems because Acting Commissioner Dudek "was purporting to act as an officer for purposes of the Appointments Clause" despite that

15

he was not presidentially appointed and Senate-confirmed. *Id.* ¶¶ 132–33. Plaintiffs seek to enjoin Mr. Dudek's direction or control of access to any SSA system. *See id.*, Prayer for Relief ¶ 3.

Mr. Dudek is no longer SSA's Acting Commissioner; he was replaced nearly a year ago, on May 7, 2025, by Commissioner Frank Bisignano. *See* Soc. Sec. Nat'l Press Off., SSA, *Press Release: Financial Services Industry Leader Frank Bisignano to be the 18th Commissioner of Social Security* (May 7, 2025), https://www.ssa.gov/news/press/releases/2025/#2025-05-07. This is a fact of which the Court may take judicial notice. *See Auto USA, Inc v. DHL Express (USA), Inc.*, 2017 WL 839525, at *3 (D. Md. Mar. 3, 2017) (Hollander, J.). Because Mr. Dudek has long since left SSA, Plaintiffs' seventh and final claim is also moot. *See Snyder v. Maryland*, 2023 WL 35249, at *2 (D. Md. Jan. 3, 2023) (Hollander, J.).

Plaintiff's Appointments Clause claim also fails on its face to satisfy the standing elements of injury, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). On injury, Plaintiffs do not plausibly allege that they were directly injured by Mr. Dudek's alleged improper appointment. *See South Carolina v. United States*, 912 F.3d 720, 726–27 (4th Cir. 2019) ("[A] plaintiff must establish a 'realistic danger of sustaining a direct injury'" that is not "speculative" or based on a "highly attenuated chain of possibilities." (citation omitted)). On causation, Plaintiffs also do not plausibly allege that Mr. Dudek's allegedly improper appointment influenced how he made access decisions. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("The plaintiff must also establish that the plaintiff's injury likely was caused or likely will be caused by" the allegedly unlawful conduct). And on redressability, SSA now operates under the supervision of a different Commissioner, and the Court cannot grant a prospective remedy based on a past grievance with no continuing consequences. *See Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197, 209 (4th Cir. 2025) ("Prospective relief must instead be

16

justified by prospective injury.").  For any one of these reasons, Plaintiffs' seventh claim should be dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims for lack of jurisdiction.

Dated: May 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

/s/ Marianne F. Kies
MARIANNE F. KIES
SAMUEL S. HOLT
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

17