**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-00596 |

**PLAINTIFFS' NOTICE OF FACTUAL DEVELOPMENT**

Plaintiffs submit this notice to inform the Court of factual developments that became public today, bear on several issues relevant to this matter, and reinforce the justifications for Plaintiffs' Motion to Lift Stay and Authorize Limited Discovery, ECF 200, which is the subject of Defendants' pending Motion to Rescind, ECF 215. The developments are also relevant to Defendants' pending Motion to Dismiss, ECF 217, which incorrectly asserts that there are no longer any DOGE affiliates at SSA, and they underline the extent to which (1) Defendants and the Administration have attempted "to obscure DOGE's structure . . . including with respect to its work at SSA," *see* Pls.' Resp. to MTD, ECF 226, at 30[1]; and (2) discovery and injunctive relief are necessary to mitigate ongoing harm to Plaintiffs' members, *see id.* at 34–39.

At approximately 6:00 A.M. today, the Washington Post published an article titled *Trump officials planned to mark 2.7 million living people as dead, whistleblower claims*.[2] The article reports on and links to a whistleblower report by SSA senior executive Jeremiah Schofield dated

[1] Where applicable, citations in this filing refer to a document's ECF pagination.
[2] Meryl Kornfield, *Trump officials planned to mark 2.7 million living people as dead, whistleblower claims*, Wash. Post (June 5, 2026), https://perma.cc/8MJU-E4LX.

June 3, 2026. Ex. A. In a sworn declaration, Mr. Schofield describes his "personal knowledge and experience at the Social Security Administration ('SSA') regarding the Department of Government Efficiency ('DOGE') using SSA data for non-sanctioned purposes and introducing false information into the SSA's Privacy Act protected system of records." Ex. B ¶ 1. Three examples follow.

*First*, Mr. Schofield details his attendance at a series of meetings with DOGE personnel Antonio Gracias, Jon Koval, and Payton Rehling during February and March of 2025. *Id.* ¶¶ 11–16. Messrs. Gracias, Koval, and Rehling became "focused on the fact that a large number of individuals in the Numident system . . . who would be well over 100 years old did not have death dates assigned to their records." *Id.* ¶ 16. SSA's Office of the Inspector General "had found that none of the dead people without death dates were receiving benefits," and "[a]dding arbitrary death dates to the Numident is contrary to law, regulation, and policy." *Id.* ¶¶ 16–17. Nonetheless, DOGE personnel instructed SSA's Office of Enterprise Information Systems to add inaccurate dates of death to SSA records. ¶ 18. The unit complied. *Id.*

*Second*, in early April 2025, Mr. Schofield was "asked to develop a strategic approach to 'killing off'" more than 6,000 individuals at the behest of the Department of Homeland Security, despite the fact that "there was no reason to assume that the individuals . . . were dead." *Id.* ¶ 21. Mr. Schofield knew that doing so "would be contrary to law, regulation, and policy," and SSA leaders he consulted agreed. *Id.* ¶ 23. But after his team refused to carry out the illegal directive, they discovered that "unidentified staff in the Office of [the] Chief Information Officer [3] had in

[3] Michael Russo, who "introduced himself as a DOGE representative to multiple employees on multiple occasions," was named SSA Chief Information Officer in early February 2025. ECF 22-10, Flick Decl., ¶ 11. He remains in that role today.

fact applied a death date of March 8, 2025, in the Numident system for the 6,000+ people, who were then automatically added to the Death Master File." *Id.* ¶ 25.

*Third*, in late April 2025, DHS "provided SSA a list of 2.7 million names with a request to 'kill off' those individuals in the Numident system." *Id.* ¶ 27. Mr. Schofield and his colleagues reviewed a small sample of that list and "found that almost all of the individuals were *legitimate* SSN holders who were in the United States legally," with "[t]he vast majority" being U.S. citizens or lawful permanent residents. *Id.* Mr. Schofield raised the issue with Stephen Evangelista, the agency's Deputy Commissioner for Operations, and refused to carry out the directive. *Id.* ¶ 29. Mr. Evangelista had "numerous conversations with his counterparts at DHS, including Mr. Koval, who had apparently transferred to DHS after leaving SSA." ¶ 30. Mr. Evangelista eventually called Mr. Koval on speakerphone so that Mr. Schofield could hear the conversation. *Id.* ¶ 33. Per Mr. Schofield's declaration, *id.*,

> Mr. Evangelista asked Mr. Koval why DHS wanted to kill off the 2.7 million people on the list. Mr. Koval responded that doing so would have two possible outcomes, either of which would be welcomed by DHS. The result would either be (1) that the lives of these individuals would be ruined because of the real-life hardship that results from being "killed" in SSA systems and they would be driven to "self-deport," or (2) they would have to go to a local Social Security office, at which point SSA field office staff would send them to DHS offices where ICE or USCIS would detain them for deportation.

In addition to these examples, Mr. Schofield "was involved in other conversations from which [he] learned that DOGE may have been engaged in similar activities misusing SSA data with other agencies." *Id.* ¶ 35. For example, "DOGE was trying to use SSA data to prevent immigrants from receiving SNAP benefits and Medicare benefits." *Id.* He also personally observed Messrs. Gracias, Koval, and Rehling using laptops that "were not SSA-standard-issue Hewlett-Packard computers" while "working with SSA data, workflows, and master files" and was summoned to a meeting with the same individuals that, contrary to standard practice and perhaps

the Federal Records Act, was not calendared, *id.* ¶¶ 11, 13. When Mr. Schofield asked Messrs. Gracias, Koval, and Rehling what their roles were at SSA, "they cryptically responded that they were 'volunteers.'" *Id.* ¶ 13. Mr. Schofield's sworn statements on these points relate directly to (1) whether PII in SSA systems was accessed, used, and protected in accordance with existing security protocols, (2) whether that PII was exfiltrated to DOGE or other third parties, and (3) the unreliability of Defendants' own characterizations regarding an individual's status as a DOGE affiliate.

Dated: June 5, 2026

Respectfully submitted,

*/s/ Alethea Anne Swift*
Alethea Anne Swift (Bar No. 30829)
Mark B. Samburg (Bar No. 31090)
Simon C. Brewer (Bar No. 31813)
Ronald Fein*
Robin F. Thurston (Bar No. 31584)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
sbrewer@democracyforward.org
rfein@democracyforward.org*
rthurston@democracyforward.org
*Counsel for Plaintiffs*

*admitted *pro hac vice*