**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br><br>            Defendants. | Case No. 1:25-cv-00596-ELH |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**

## TABLE OF CONTENTS

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.      Plaintiffs' Claims Against SSA Are Moot............................................................. 3

      A.     Plaintiffs' Claims Against SSA Depend on the Existence of an SSA DOGE Team. ......................................................................................... 3

      B.     Plaintiffs' Claim that DOGE Is "Alive and Well" in Places Other than SSA Is Irrelevant to Claims Against SSA............................................... 5

      C.     Plaintiffs' Claims Are Not Redressable. ................................................... 6

II.     The Ultra Vires Claim Against the "DOGE Defendants" Is Also Moot. ......................... 12

III.    Plaintiffs Fail to Show that an Exception to Mootness Applies. ..................................... 13

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) .................................................................................................... 2, 13

*Am. Fed'n of Gov't Emps. v. Hawley*,
  543 F. Supp. 2d 44 (D.D.C. 2008) ................................................................................ 3

*Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*,
  820 F. Supp. 3d 260 (S.D.N.Y. 2025) ........................................................................ 16

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
  2026 WL 879518 (D.D.C. Mar. 31, 2026) .................................................................. 16

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
  778 F. Supp. 3d 56 (D.D.C. 2025) ................................................................................ 3

*Bell v. Univ. of Md. Coll. Park Campus Facilities Mgmt.*,
  2018 WL 3008325 (D. Md. June 14, 2018) .................................................................. 9

*Bennett v. Spear*,
  520 U.S. 154 ................................................................................................................... 3

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ....................................................................................................... 6

*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992) ......................................................................................... 6, 8, 9, 10

*Courthouse News Serv. v. Schaefer*,
  2 F.4th 318 (4th Cir. 2021) ......................................................................................... 15

*Davison v. Plowman*,
  247 F. Supp. 3d 767 (E.D. Va. 2017) ........................................................................... 9

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) .................................................................................... 11

*Eden, LLC v. Justice*,
  36 F.4th 166 (4th Cir. 2022) .................................................................................. 12, 14

*FBI v. Fikre*,
  601 U.S. 234 (2024) ..................................................................................................... 15

*Fleet Feet, Inc. v. NIKE, Inc.*,
  986 F.3d 458 (4th Cir. 2021) ....................................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................ 13, 14

*Genesis Healthcare, Inc. v. Becerra*,
   39 F.4th 253 (4th Cir. 2022) ................................................................................... 10, 11

*Incumaa v. Ozmint*,
   507 F.3d 281 (4th Cir. 2007) .......................................................................... 7-8, 13, 14

*Lineback v. Spurlino Materials, LLC*,
   546 F.3d 491 (7th Cir. 2008) .......................................................................................... 9

*Mills v. Green*,
   159 U.S. 651 (1895) ................................................................................................... 6, 8

*Nat'l Treasury Emp. Union v. Campbell*,
   654 F.2d 784 (D.C. Cir. 1981) ............................................................................. 6, 7, 15

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ...................................................................................................... 4, 5

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025) ...................................................................................................... 12

*Porter v. Clarke*,
   852 F.3d 358 (4th Cir. 2017) ........................................................................................ 13

*Reich v. Nat'l Eng'g & Contracting Co.*,
   13 F.3d 93 (4th Cir. 1993) ............................................................................................ 10

*SAE Prods., Inc. v. FBI*,
   589 F. Supp. 2d 76 (D.D.C. 2008) .................................................................................. 3

*Samma v. DoD.*,
   136 F.4th 1108 (D.C. Cir. 2025) ............................................................................ 13, 14

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .......................................................................................................... 11

*Spomer v. Littleton*,
   414 U.S. 514 (1974) .................................................................................................... 6, 7

*Stogsdill v. Azar*,
   765 F. App'x 873 (4th Cir. 2019) ................................................................................... 7

**Statutes**

5 U.S.C. § 552a(g) ................................................................................................................ 3

iii

## **Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 3

Fed. R. Civ. P. 65(d)(2).............................................................................................. 10

## **Regulations**

*Establishing and Implementing the President's "Department of Government Efficiency",* 90 Fed.
Reg. 8441, Exec. Order No. 14,158 §§ 1, 3(b) ("E.O. 14,158")................................... 11, 14, 15

## **Other Authorities**

Sophia Cai, *DOGE lead Steve Davis did not go quietly*, Politico (July 14, 2025),
https://perma.cc/LL4B-LSYA ............................................................................................ 9

**INTRODUCTION**

Defendants demonstrated in their opening brief, ECF 217-1, that this case is moot because the Social Security Administration ("SSA") no longer has a DOGE Team (or even a DOGE-affiliated employee), and SSA terminated each former DOGE Team member's access to SSA records. *See* Second Decl. of Florence Felix-Lawson ¶¶ 4–8, ECF 217-2 ("Sec. Felix-Lawson Decl."). Plaintiffs attempt to avoid mootness by insisting that their claims do not depend on the existence of the SSA DOGE Team. *See* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF 226 ("Opp'n"). But Plaintiffs' own preliminary injunction motion says otherwise. There, Plaintiffs identified the challenged final agency action as SSA's decision to grant the SSA DOGE Team access to SSA records. *See* Pls.' Mem. ISO Mot. for Prelim. Inj. at 21, ECF 111-1 ("Pls.' Mem. ISO Prelim. Inj."). Unable to reconcile their current position with their prior characterization of the case, Plaintiffs pivot to evidence that DOGE is supposedly active elsewhere in the federal government. But this case concerns SSA and access to SSA systems. Evidence of DOGE activities outside of SSA, even if true, does nothing to preserve a live controversy here.

Plaintiffs have also received the relief they sought because the DOGE Team that existed at SSA no longer has access to SSA systems. This Court thus cannot grant Plaintiffs any effectual relief. Plaintiffs insist they are entitled to a follow-the-law injunction. But such an injunction is legally improper and would accomplish nothing anyway, because there is no DOGE Team or DOGE personnel at SSA to whom a follow-the-law injunction would apply. Plaintiffs likewise contend that their request for declaratory relief independently preserves a live controversy because they are challenging an "ongoing policy." But Plaintiffs identify no ongoing policy under which SSA continues to grant access to SSA systems. At most, they challenge an isolated decision that occurred more than a year ago. Declaratory relief would be an impermissible advisory opinion.

No exception to mootness applies. Plaintiffs do not even argue that the capable-of-repetition-yet-evading-review exception applies. Instead, Plaintiffs rely only on the voluntary cessation exception. But that argument fails. With the SSA DOGE Team members gradually and naturally leaving the agency, SSA did not voluntarily cease the challenged conduct to manipulate the Court's jurisdiction, as is required for the exception to apply. And there is no reasonable expectation that the same controversy will recur. Again, Plaintiffs challenge particular access decisions that have ended—not an ongoing policy or regulation that continues to govern current or future conduct. And SSA has provided sworn testimony that it has no future plans to have another DOGE Team. With no mootness exception, Plaintiffs claims are moot. It does not matter if Plaintiffs "vehemently . . . continue to dispute the lawfulness of the conduct that precipitated the lawsuit"; the fact remains that the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted).

## **ARGUMENT**

All of Plaintiffs' claims should be dismissed for lack of jurisdiction. For purposes of the mootness analysis, the six remaining claims[1] should be grouped into two: (1) the five claims against SSA, *see* Pls.' First Am. Compl. ¶¶ 98–124, ECF 17 ("Am. Compl."); (2) and the sixth *ultra vires* claim against the "DOGE Defendants," *see id.* ¶¶ 125–129. Neither group of claims presents a live case or controversy, and no exception to mootness applies.

---

[1] Plaintiffs consent to dismissal of their seventh claim, brought under the Appointments Clause, regarding Leland Dudek. *See* Opp'n at 3 n.10. ("Opp'n"). Therefore, Defendants do not address it here.

## I.    Plaintiffs' Claims Against SSA Are Moot.

Plaintiffs brought five claims against SSA—four under the APA, and one derivative Privacy Act Claim, which alleges (similar to the APA claims) that SSA "disclosed . . . personal records contained in systems of records under their control". *See* Am. Compl. ¶¶ 98–124; *see also, e.g.*, ECF 179 (Court Order on Plaintiffs' Request for Hearing) at 2 (acknowledging that Plaintiffs' suit "implicates the Administrative Procedure Act"). As discussed in the Motion to Dismiss, all five claims are moot, because they depend on the existence of an SSA DOGE Team, which no longer exists. Thus, this Court cannot grant any effectual relief to Plaintiffs.[2]

### A.    Plaintiffs' Claims Against SSA Depend on the Existence of an SSA DOGE Team.

To bring a proper APA claim, Plaintiffs must challenge a discrete, final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Plaintiffs themselves describe the alleged final agency action they are challenging as "SSA Defendants' decision to provide *the DOGE Team* with expansive access to SSA record systems without signed detail agreements, adequate training, completed background investigations, executive work forms, and/or actual need." *See* Pls.' Mem. ISO Prelim. Inj. at 21 (emphasis added). So Plaintiffs' pages-long explanation (*see* Opp'n at 20–24) about why their APA claims do not depend on SSA having a DOGE Team is refuted by

---

[2] Although Plaintiffs' Opposition does not seek different treatment of their derivative Privacy Act claim (Am. Compl. ¶¶ 105–10), which is moot for the same reasons as the other four claims against SSA, it fails for the additional, independent reason that an organization cannot bring a Privacy Act claim on behalf of its members. *See* 5 U.S.C. § 552a(g)(1); *SAE Prods., Inc. v. FBI*, 589 F. Supp. 2d 76, 83 (D.D.C. 2008); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 778 F. Supp. 3d 56, 88 (D.D.C. 2025) (dismissing a similar freestanding Privacy Act claim in another DOGE data-access case); *Am. Fed'n of Gov't Emps. v. Hawley*, 543 F. Supp. 2d 44, 49–50 & n.8 (D.D.C. 2008) (collecting cases and explaining that "the Privacy Act's text permits no . . . interpretation" other than that organizations do not fall within the scope of its civil right of action). Even assuming a proper plaintiff, such actions are only available if a plaintiff can establish (1) "actual damages" and (2) that the agency acted in an "intentional or willful" manner, neither of which Plaintiffs allege in their Amended Complaint. *See* 5 U.S.C.§ 552a(g)(4); Fed. R. Civ. P. 12(b)(6).

Plaintiffs' own prior representations. Plaintiffs identify no other discrete, final agency action by SSA that they are challenging. Nor could they. SSA does have any control over the U.S. DOGE Service ("USDS") or the soon-expiring DOGE Temporary Organization or any other federal agency or entity. And Plaintiffs cannot mount a generalized, "broad programmatic attack" on SSA's internal operations. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). By Plaintiffs' own admission, and with no other final agency action identified, Plaintiffs' claims against SSA depend on the existence of an SSA DOGE Team.

Plaintiffs also assert that "DOGE" is a "shell game," because its "affiliates" are allegedly "tangled in the oversight of individual government agencies." Opp'n at 30–33. But that argument again diverts attention from the claims that Plaintiffs have brought against SSA. Allegations that DOGE is a "shell game" is not a final agency action, nor is it relevant to the alleged decision to grant the now non-existent SSA DOGE Team access to SSA systems.

Plaintiffs go on to claim that "DOGE personnel are still employed at SSA[.]" *Id.* at 27. But that is wrong. Plaintiffs assert, based on the Flick declaration, that SSA's Chief Information Officer Michael Russo and SSA's General Counsel Mark Steffensen are "DOGE affiliates." *Id.* at 28 (citing Decl. of Tiffany Flick Decl. ¶ 9, ECF 22-10 ("Flick Decl.")). Flick believes Russo "appeared" to be "actually reporting to DOGE" because he "gave evasive answers about his work." Flick Decl. ¶ 22. Plaintiffs further claim that Steffensen is allegedly a "DOGE ally," and both he and Russo "continue to associate with DOGE." Opp'n at 29 n.29. These speculative statements do not defeat mootness.

For one, Flick retired from SSA before March 2025 and thus has no personal knowledge about whether "DOGE personnel" are still employed at SSA today. *See* Flick. Decl. ¶ 1, ECF 22-10. Second, Flick's statements, even if true, would still not make Russo or Steffensen "DOGE

affiliates." This Court defined the term "DOGE affiliate" in its Order granting a Preliminary Injunction as "any SSA employee . . . working on or implementing the DOGE agenda[.]" Order, ECF 147 ¶ 11(b). Neither Steffensen nor Russo were "hired to implement the President's DOGE agenda." Sec. Felix-Lawson Decl. ¶ 9. And Plaintiffs provide no evidence to the contrary. Instead, to keep their case alive, Plaintiffs ask this Court to greatly expand the definition of a "DOGE affiliate" to include anyone who has ever known, spoken with, or previously "associated" with DOGE or USDS. Such a theory would undoubtedly amount to a "broad programmatic attack" on SSA and would therefore fail. *See Norton*, 542 U.S. at 64.

Plaintiffs also did not—and indeed cannot—dispute that Russo and Steffensen have decades of experience and were "hired as typical non-career SES appointees who report directly to the Commissioner of SSA, Frank J. Bisignano[.]" Sec. Felix-Lawson Decl. ¶ 9. Plaintiffs would have this Court ignore that evidence and instead view Russo and Steffensen as rogue employees secretly working for DOGE because of Plaintiffs' say-so. But the admissible evidence before this Court shows that they are qualified "typical non-career SES appointees" who have been engaged in the ordinary operations at SSA for over a year. *See id.* ¶ 9. Plaintiffs provide *no* evidence that Russo or Steffensen have acted improperly or in conjunction with DOGE while discharging their duties at SSA. *See* Opp'n at 28–30.

    B.    <u>Plaintiffs' Claim that DOGE Is "Alive and Well" in Places Other than SSA Is Irrelevant to Claims Against SSA.</u>

In support of Defendants' Motion to Dismiss, Felix-Lawson stated in a declaration that SSA's former DOGE Team members have now left the Agency, Sec. Felix-Lawson Decl. ¶¶ 6, 7, 8; that the former SSA DOGE Team members no longer have any access to SSA systems or data, *id.* ¶¶ 6, 7; and that SSA has no plans to utilize or onboard a DOGE Team in the future, *id.* ¶ 9. In response, Plaintiffs focus on the existence of DOGE in different parts of the federal government,

5

from the General Services Administration ("GSA") to the Office of Personnel Management ("OPM"). *See* Opp'n at 30, 38. But Plaintiffs' claims are about alleged harm from access to SSA systems and data. Their claims do not concern whether DOGE Teams remain at GSA, OPM, or other agencies.

Plaintiffs also raise a strawman argument, noting press reports—not cited or relied upon by Defendants—that "DOGE no longer existed [as of] November 2025" and then refuting those press reports with others asserting that "DOGE teams assigned to agencies are 'alive and well' and 'embedded' within those organizations." Opp'n at 25, 26 & n.22. Even if that were true, it does nothing to rebut the fact that SSA no longer has a DOGE Team and has no plans to have a DOGE Team in the future. *See* Sec. Felix-Lawson Decl. ¶¶ 4–8.

C.      Plaintiffs' Claims Are Not Redressable.

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation modified).

When a plaintiff's claims depend on the conduct or status of particular government employees, those claims become moot when those individuals leave their government position. *See, e.g.*, *Spomer v. Littleton*, 414 U.S. 514 (1974); *Nat'l Treasury Emp. Union v. Campbell*, 654 F.2d 784, 788 (D.C. Cir. 1981). Plaintiffs insist that it would be "absurd" for their claims to become moot merely because the SSA DOGE Team no longer exists. *See* Opp'n at 22. But that is precisely what the caselaw requires.

6

In *Spomer*, the plaintiffs alleged that a state's attorney was engaging in unconstitutional practices. 414 U.S. at 515–17. After a new state's attorney took office, the Supreme Court remanded for consideration of mootness, emphasizing that the record contained no "allegations that [the new state's attorney] intend[ed] to continue the asserted practices[.]" *Id.* at 521–22. Likewise, the D.C. Circuit in *Campbell* held certain claims moot because "the conduct challenged [was] personal" to a particular government defendant. 654 F.2d at 788. Thus, the plaintiffs' "request for injunctive relief [was] mooted when the defendant resign[ed]." *Id.*

The same principle applies here. Plaintiffs' claims are not directed at a policy governing access by all SSA employees to agency systems. Rather, Plaintiffs challenged "SSA Defendants' decision to provide *the DOGE Team* with expansive access to SSA record systems." Pls.' Mem. ISO Prelim. Inj. at 21(emphasis added). This Court similarly characterized the final agency action Plaintiffs are challenging as "the Agency's decision to allow *the DOGE Team* access to the PII of millions of Americans." Preliminary Inj. Mem. Op. & Order at 105, ECF 146 ("Mem. Op.") (emphasis added). The alleged injury thus depends on the presence of the particular DOGE Team members and their access to SSA systems. But those individuals are gone. *See also Stogsdill v. Azar*, 765 F. App'x 873, 879 (4th Cir. 2019) (finding claims moot where the final agency action challenged had ended and was replaced with new agency action). While this Court, in granting the preliminary injunction, previously found that the scope of access SSA had provided to the DOGE team was "a dramatic change in policy at SSA" (*See* Mem. Op. at 98), any such policy would only be applicable to SSA DOGE team members, who are no longer at SSA. So to the extent that the decision to provide the DOGE Team with expansive access could be construed as a change to SSA policy, that change ceased when there was no DOGE Team to whom it would apply. *See Incumaa*

7

*v. Ozmint*, 507 F.3d 281, 285–290 (4th Cir. 2007) (holding that the challenged policy, while unchanged, was mooted when the policy ceased to apply to plaintiff).

Moreover, this case is moot because the Court cannot "grant 'any effectual relief whatever.'" *Church of Scientology*, 506 U.S. at 12 (quoting *Mills*, 159 U.S. at 653). The claims against SSA depend on the existence of an SSA DOGE Team, as explained above. The SSA DOGE Team no longer exists and no longer has access to SSA records. There is no credible evidence that DOGE is active within SSA. The Court thus cannot grant Plaintiffs any effectual relief. Despite this, Plaintiffs argue that there remains a live controversy because of their requests for injunctive and declaratory relief. *See* Opp'n at 34–41. But Plaintiffs cannot keep a case alive merely by claiming they are seeking relief; instead, they must explain how the requested relief will redress some continuing harm and is not merely advisory. Plaintiffs fail to make that showing.

Plaintiffs first assert that their claims are not moot because this Court could enjoin "the DOGE Defendants" from accessing or using PII and order them to "disgorge or delete all unlawfully obtained" data from SSA systems. Opp'n at 36. But other than granting the SSA DOGE Team access to SSA records, Plaintiffs have identified no other alleged final agency action by SSA they are challenging. The "DOGE Defendants" are not currently granted access to SSA systems of record containing PII, *see* Decl. of Leland Dudek ¶ 4, ECF 56-1 ("Dudek Decl."), so the Court cannot order SSA to do anything vis-à-vis the DOGE Defendants.

Plaintiffs point to Defendants' Notice of Corrections, wherein Defendants forthrightly notified the Court of an email to Steve Davis possibly containing PII that was sent by a now departed SSA DOGE team member. *See* ECF 197 at 2–3. But neither that email, nor the Notice, can defeat mootness. First, the Davis email does not provide a basis for relief. Although at the time of the email Davis was a senior advisor to Defendant U.S. DOGE Temporary Organization and a

DOGE-affiliated employee at the Department of Labor, Davis is not named in Plaintiffs' Amended Complaint and is not a DOGE Defendant. *See* Am. Compl. ¶ 27. It has also been widely reported that Davis no longer works within the federal government. *See* Sophia Cai, *DOGE lead Steve Davis did not go quietly*, Politico (July 14, 2025), https://perma.cc/LL4B-LSYA. So while this email to Davis may have violated SSA policy, the Court cannot enjoin Davis who is not a Defendant or even, it appears, a government employee. Second, the Notice of Corrections writ large does not provide a basis for relief. The SSA Defendants did exactly what they should have when they learned of errors in their earlier representations: they promptly notified the Court and parties, and they continue to examine their own operations. Plaintiffs use SSA's Notice as justification to continue the case and for discovery. Opp'n at 28–29. But discovery is not an end in and of itself; there still needs to be relief that a Court can grant at the end of the day. *See Church of Scientology*, 506 U.S. at 12. Where the DOGE Team no longer exists, there is simply no relief that can be afforded.

Alternatively, Plaintiffs assert that this Court may still "enjoin all Defendants from accessing, inspecting, disclosing, or using data in SSA systems of record 'for any purpose other than those permitted by the Privacy Act, a published System of Records Notice, the Internal Revenue Code, and the Federal Information Security Modernization Act.'" Opp'n at 36 (emphasis omitted) (citing Am. Compl. at 29). But that kind of "'follow the law' injunction is overbroad and unenforceable." *Bell v. Univ. of Md. Coll. Park Campus Facilities Mgmt.*, 2018 WL 3008325, at *5 n.1 (D. Md. June 14, 2018); *see also Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008); *Davison v. Plowman*, 247 F. Supp. 3d 767, 783 (E.D. Va. 2017). And Plaintiffs never explain how such a follow-the-law injunction would remedy their alleged harms anyway.

Plaintiffs rely on two cases in which courts found claims were not moot because of the existence of a partial injunctive remedy. *See* Opp'n at 35–36. Neither resembles this case, and both underscore why this case is moot. First, Plaintiffs cite *Church of Scientology*, where the IRS obtained audio tapes of conversations between church officials and their attorneys. 506 U.S. at 10–11. The Supreme Court held the case was not moot because a court could still provide a partial remedy "by ordering the Government to destroy or return any and all copies" of the tapes "in its possession." *Id.* at 13. Likewise, in *Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93, 94–95 (4th Cir. 1993), OSHA obtained occupational-injury information from a company. The court concluded that effectual relief remained available because it could order the information returned or destroyed. *See id.* at 98.

Those cases reinforce, not undermine, mootness here. The SSA DOGE Team no longer exists, and SSA terminated the DOGE Team members' access to SSA systems. *See* Sec. Felix-Lawson Decl. ¶¶ 4–9. So, unlike in *Church of Scientology* and *Reich*, this Court cannot order the return or destruction of information from the individuals who previously had, but no longer have, access to it. And the former SSA DOGE Team members are not Defendants in this case; this Court cannot order non-parties who no longer work for SSA to do anything. *See* Fed. R. Civ. P. 65(d)(2) (dictating that an injunction "binds only" the parties; "the parties' officers, agents, servants, employees, and attorneys"; and "other persons who are in active concert or participation with" a properly enjoined person or entity).

As a final fallback, Plaintiffs contend that their claims are not moot because they "seek declaratory relief as to an ongoing policy." Opp'n at 39–40. It is true that the Fourth Circuit has recognized that an action seeking declaratory relief may remain live when it "seeks declaratory relief as to an ongoing policy." *Genesis Healthcare, Inc. v. Becerra*, 39 F.4th 253, 261 (4th Cir.

2022) (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)). For example, in *Genesis*, the court determined that, although certain audit findings were voided, the case was still not moot because an agency's "guidance and interpretation" of a disputed term still existed. *Id.* at 259–61 (citation omitted).

But Plaintiffs here are not challenging an ongoing policy. As Plaintiffs themselves described, the challenged action is "SSA Defendants' decision to provide the DOGE Team with expansive access to SSA record systems[.]" *See* Pls.' Mem. ISO Prelim. Inj. at 21. That is, at most, an "isolated agency action,"[3] not an ongoing policy. *See Del Monte Fresh Produce Co.*, 570 F.3d at 321. Unlike in *Genesis*, there is no reasonable likelihood that the challenged action will recur. Plaintiffs identify no new policy or guidance under which SSA continues to grant access to SSA systems. Plaintiffs' request for declaratory relief as to an isolated agency decision that occurred over a year ago does not keep this case alive, as courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Moreover, even if Plaintiffs' claims were challenging a then-existing policy applicable to DOGE Team members, the policy would be defunct as there is currently no DOGE Team at SSA and it is implausible to project the same confluence of events occurring again in the future. First, the President would need to issue a new Executive Order extending the lifespan of the U.S. DOGE Service Temporary Organization. *See Establishing and Implementing the President's "Department of Government Efficiency",* 90 Fed. Reg. 8441, Exec. Order No. 14,158 §§ 1, 3(b) ("E.O. 14,158"). Second, SSA would have to then reinstate a DOGE Team, even though it has "no future plans to

---

[3] Defendants still vigorously dispute that such a decision constitutes a discrete, final agency action.

have a DOGE Team, DOGE Team members, or DOGE detailees or affiliates working at SSA."
Felix-Lawson Decl. ¶ 10. Third, and only then, could SSA then theoretically decide to grant access
to such hypothetical persons to SSA data in the same manner as that which is challenged here.
This is unlikely, and a government's "mere ability to reimpose challenged restrictions is not
enough to show a reasonable chance of recurrence." *Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th
Cir. 2022).

In sum, the five claims against SSA are moot, and this Court should dismiss them under
Rule 12(b)(1) for lack of jurisdiction.

## II.   The Ultra Vires Claim Against the "DOGE Defendants" Is Also Moot.

The only claim Plaintiffs assert against the "DOGE Defendants," which is not asserted
against SSA, is their ultra vires claim. *See* Am. Compl. ¶¶ 125–129. The Supreme Court has
labeled ultra vires claims as a "Hail Mary pass" that "rarely succeeds." *Nuclear Regul. Comm'n v.
Texas*, 605 U.S. 665, 681–82 (2025) (citation omitted).

Plaintiffs characterize their ultra vires claim as challenging the DOGE Defendants' alleged
"direct[ion] and control[]" over "the use and administration of Defendants SSA's systems," which
purportedly resulted in the unlawful disclosure of personal SSA data. Am. Compl. ¶ 126. But the
premise of that claim no longer exists, if it ever existed in the first place. The DOGE Defendants
do not have access to SSA systems of record, *see* Dudek Decl. ¶ 4, the SSA DOGE Team members'
access has been revoked, *see* Sec. Felix-Lawson Decl. ¶ 7, and the SSA DOGE Team no longer
exists, *see* Sec. Felix-Lawson Decl. ¶¶ 4–8. The "DOGE Defendants" thus are not directing or
controlling any DOGE Team within SSA, nor are they directing or controlling the use or
administration of SSA's systems. Accordingly, there is no relief this Court could order against the

DOGE Defendants that would redress Plaintiffs' alleged injuries arising from alleged improper access to SSA systems.

### III.     Plaintiffs Fail to Show that an Exception to Mootness Applies.

There are two exceptions to mootness: (1) when the challenged conduct is "capable of repetition, yet evading review"; and (2) when a defendant voluntarily ceases its conduct and the challenged conduct can reasonably be expected to recur.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190–91 (2000). Plaintiffs do not dispute that the capable-of-repetition-yet-evading-review exception is inapplicable here. Plaintiffs solely invoke the voluntary cessation exception. That exception, however, also does not apply.

Courts apply the voluntary cessation exception to prevent a scenario in which "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 568 U.S. at 91. Put simply, this exception exists to "prevent 'a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'" *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (citation omitted); *see also Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 n.2 (4th Cir. 2021). For example, in *Incumaa*, the Fourth Circuit rejected application of the voluntary cessation exception because the defendants did not act "in an effort to avoid judicial review" and thus "this was not the kind of 'voluntary cessation' that the exception covers." 507 F.3d 281, 288; *see also Samma v. DoD.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (holding that the voluntary cessation exception "does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct," because "courts have declined to apply the doctrine when the facts do not suggest any arguable manipulation of [the court's jurisdiction]").

Plaintiffs here make little effort to argue that SSA disbanded its DOGE Team to manipulate the Court's jurisdiction. For good reason. The SSA DOGE Team dissolved gradually and naturally as its members departed over time, not as part of an effort to moot this litigation. *See* Sec. Felix-Lawson Decl. ¶ 7. Plaintiffs' principal claim of "manipulation" is that Defendants complied with the schedule set by this Court. Plaintiffs contend that Defendants should have raised mootness in February when the last SSA DOGE Team member left SSA. *See* Opp'n at 23–24. But this case was stayed at that time. *See* ECF 189. Once the stay was lifted (ECF 212), Defendants filed their motion to dismiss within three weeks, which is exactly what this Court ordered Defendants to do (ECF 189). Compliance with the Court's scheduling order is hardly evidence of judicial gamesmanship. With no evidence of manipulation, the voluntary exception does not apply. *See Incumaa*, 507 F.3d at 288; *Samma*, 136 F.4th at 1113.

Nor is the allegedly wrongful behavior "reasonably . . . expected to recur." *Friends of the Earth*, 528 U.S. at 189. A government's "mere ability to reimpose challenged restrictions is not enough to show a reasonable chance of recurrence." *Eden*, 36 F.4th at 172. The alleged conduct is not likely to recur because (1) SSA no longer has a DOGE Team or any DOGE-affiliated employees, Sec. Felix-Lawson Decl. ¶¶ 4–8; (2) SSA has no plans to have another team in the future, *id.*. ¶¶ 4–8; and (3) the DOGE Temporary Organization will expire within the next three weeks on July 4, 2026, E.O. 14,158 § 3(b).

Plaintiffs fail to show otherwise. Plaintiffs first assert that the cases "where the voluntary-cessation exception does *not* apply usually involve" the repeal of a challenged statute, expiration of challenged proposed legislation, or termination of a state emergency. Opp'n at 41–42. But Plaintiffs cite no authority suggesting those categories are exhaustive. For example, in *Campbell*, the D.C. Circuit rejected application of the voluntary-cessation exception and held certain claims

14

moot after the key government defendant left the agency, which paired with other factual developments destroyed "the basis for plaintiffs' claim for prospective relief." 654 F.2d at 788. The same is true here. The SSA DOGE Team—the basis for Plaintiffs' claims for prospective relief—ceases to exist because its members left SSA.

Plaintiffs' reliance on *FBI v. Fikre*, 601 U.S. 234, 242 (2024) is misplaced. *See* Opp'n at 42–43. There, the plaintiff alleged that he had been placed on the No-Fly List for unconstitutional reasons. *Fikre*, 601 U.S. at 242. Although the government later removed the plaintiff from the list, the Supreme Court held the case was not moot because the government's declarations fell short "of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Id.* That concern is absent here. The SSA DOGE Team is gone. And the DOGE Temporary Organization, including its 18-month agenda, is set to expire in approximately three weeks. E.O. 14,158 § 3(b). Thus, unlike in *Fikre*, there is no realistic possibility that SSA would "do again in the future what will it is alleged to have done in the past." 601 U.S. at 242. Speculation that SSA could hypothetically choose to establish a new DOGE Team at some undetermined point in the future for an unknown purpose does not suffice to establish Article III jurisdiction.

Plaintiffs' reliance on *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 322–23 (4th Cir. 2021) is even further afield. There, the plaintiff sued court clerks over delays in obtaining access to court records. *Id.* The clerks argued that the case was moot because they had "minimized document-access delays." *Id.* at 323. The Fourth Circuit disagreed, explaining that improved performance was not the relief the plaintiffs sought because the challenged delays persisted. *Id.* at 322–23. This case is different. Plaintiffs here sought prospective relief to prevent DOGE personnel from accessing SSA systems. *See, e.g.*, Am. Compl. Requested Relief ¶ 2. The SSA DOGE Team

15

no longer exists and no longer has access to SSA systems. Unlike in *Schaefer*, Plaintiffs have received the very relief that they sought.

Finally, Plaintiffs rely on two out-of-circuit district court cases involving DOGE-access claims. *See* Opp'n at 45–46. Neither case is persuasive. In *Am. Fed'n of Gov't Emps., AFL-CIO v. OPM*, 820 F. Supp. 3d 260, 275 (S.D.N.Y. 2025), the court found a similar DOGE data access case not moot, noting that a "few DOGE agents" remained at OPM. Here, by contrast, SSA has submitted the opposite evidence, establishing that SSA no longer has a DOGE Team or any DOGE-affiliated employees and has no plans to have another team in the future. *See* Sec. Felix-Lawson Decl. ¶¶ 4–8. And in *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 2026 WL 879518, at *9 n.9 (D.D.C. Mar. 31, 2026), mootness was not even properly raised or argued, and the court there did not mention that the agency submitted a declaration attesting that it no longer has a DOGE Team or any DOGE-affiliated employees and had no plans to have another team in the future. Accordingly, neither of these non-binding decisions addresses a factual record resembling the one before this Court.[4]

In sum, the voluntary-cessation exception does not apply. Defendants did not dissolve the SSA DOGE Team to manipulate the Court's jurisdiction, and there is no reasonable likelihood that the same alleged unlawful conduct will recur. Plaintiffs' claims are therefore moot and should be dismissed for lack of jurisdiction.[5]

---

[4] Plaintiffs also wrongly contend that Defendants have said one thing publicly and another in court. *See* Opp'n at 44. Plaintiffs reach that conclusion by conflating public statements about DOGE activities elsewhere in the federal government with litigation statements concerning the status of DOGE within SSA. The relevant question here is not whether DOGE Teams or DOGE personnel exist somewhere in government; it is whether the SSA DOGE Team members or other DOGE personnel are working within SSA and have access to SSA records—they do not.

[5] Nothing in Plaintiffs' June 5, 2026, "Notice" (ECF 233) affects the outcome of Defendants' Motion to Dismiss. Indeed, the Notice has nothing to do with the Motion to Dismiss at all, except

## **CONCLUSION**

For the reasons stated here and in Defendants' opening brief, the Court should dismiss all

claims as moot.


Dated: June 15, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        ELIZABETH J. SHAPIRO
                                        Deputy Branch Director
                                        Civil Division, Federal Programs Branch

                                        /s/ James A. Ryan
                                        JAMES A. RYAN
                                        Trial Attorney
                                        Civil Division, Federal Programs Branch
                                        United States Department of Justice
                                        1100 L Street NW
                                        Washington, DC 20005
                                        Telephone: (202) 598-5453
                                        James.A.Ryan2@usdoj.gov

                                        *Attorneys for Defendants*

---

to the extent it claims (without any explanation) that "DOGE affiliates" remain at SSA (*id.* at 1). Defendants have explained at length why that assertion is false, including with respect to Russo and Steffensen. Moreover, and although not relevant to this Motion, the Notice does not actually identify any new factual developments—everything in it was previously disclosed during the course of this litigation. Defendants reserve the right to respond in full to the Notice at the appropriate time. But that time is not now, because Plaintiffs' various accusations of wrongdoing last year are not properly before the Court, which lacks jurisdiction to consider them.